**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC CITIZEN, INC.,<br>  1600 20th Street NW<br>  Washington, DC 20009,<br><br>STATE DEMOCRACY<br>DEFENDERS FUND,<br>  600 Pennsylvania Avenue SE<br>  #15180<br>  Washington, DC 20003,<br><br>and<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br>  80 F Street NW<br>  Washington, DC 20001,<br><br>          Plaintiffs,<br><br>          v.<br><br>DONALD J. TRUMP,<br>in his official capacity as President<br>of the United States,<br>  1600 Pennsylvania Ave., NW<br>  Washington, DC 20500,<br><br>and<br><br>OFFICE OF MANAGEMENT<br>AND BUDGET,<br>  725 17th Street, NW<br>  Washington, DC 20503<br><br>          Defendants. | Civil Action No. 1:25-cv-164 |

**COMPLAINT**

1.    Plaintiffs Public Citizen, Inc., State Democracy Defenders Fund (SDDF), and American Federation of Government Employees (AFGE) bring this action seeking declaratory, injunctive, and mandamus relief against Defendants Donald J. Trump, in his official capacity as president of the United States, and the Office of Management and Budget (OMB), an agency of the United States, to ensure that the so-called "Department of Government Efficiency" (DOGE) complies with the requirements established by the Federal Advisory Committee Act (FACA), 5 U.S.C. §§ 1001 et seq.

2.    On the campaign trail, then-candidate Trump proposed creating a "government efficiency commission," which he described as a "task force," to "audit" federal regulatory and spending programs and propose "drastic reforms." As envisioned by Mr. Trump, this "efficiency" commission would not be led by federal officers or employees, but by business executives led by Elon Musk, the world's wealthiest individual.

3.    After winning the 2024 presidential election, president-elect Trump put his idea for a private-sector-led efficiency task force into motion. Within a week of the election, Mr. Trump identified Mr. Musk and billionaire investor Vivek Ramaswamy as the individuals who would lead his government efficiency commission, which Mr. Trump officially christened as the Department of Government Efficiency (DOGE).

4.    Despite the name, DOGE is not and was never intended to be a department of the United States government. Congressionally established agencies such as the Department of Defense or the Department of Health and Human Services

are led by federal officers who have been confirmed by the Senate under the constitutionally required process. Mr. Trump has explained that DOGE will provide "advice and guidance from outside of Government," "partnering with the White House and Office of Management & Budget to drive large scale structural reform."

5.      The advice and guidance that Mr. Trump has charged DOGE with producing is sweeping and consequential: DOGE is to "pave the way for [his] Administration to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies." At the same time, DOGE—the members of which currently do not represent the interests of everyday Americans—will be recommending cuts to government agencies and programs that protect health, benefits, consumer finance, and product safety. Its work and recommendations thus may endanger Plaintiffs and the hundreds of thousands of everyday people whom they represent.

6.      FACA authorizes an administration to establish and use commissions or task forces to obtain advice and recommendations from the private sector on a variety of topics, including advice and recommendations concerning regulatory or fiscal matters. Indeed, Presidents Reagan, Clinton, and Obama each established advisory commissions in accordance with FACA to solicit advice and recommendations on spending cuts from individuals outside the government.

7.      While FACA permits the use of advisory committees, it imposes various guardrails to prevent them from turning into vehicles for advancing private interests in the federal decision-making process and secretly influencing federal officials'

3

exercise of policymaking discretion. Those guardrails include the requirements that advisory committee have a fair balance in viewpoints represented, that they do not meet in secret, and that their records and work product be made available for public inspection. FACA also prohibits advisory committees from meeting or taking any action until a charter for the advisory committee has been filed, specifying, among other things, the nature of the committee's work and duties and the federal official to whom the committee is responsible.

8.     As of the date of the filing of this complaint, President Trump has chosen Messrs. Musk and Ramaswamy to lead DOGE, named two other individuals to DOGE, specified that DOGE and OMB should be partners in DOGE's work, and directed DOGE to complete its recommendations by July 4, 2026. President Trump has not, however, acknowledged that DOGE will operate as an advisory committee subject to FACA, that a charter for DOGE must be filed before DOGE can meet or take action, that DOGE's membership must be fairly balanced, or that DOGE is subject to FACA's transparency requirements. President Trump's refusal to regard DOGE as an advisory committee has continued in the face of Plaintiffs' requests that he acknowledge FACA's applicability to DOGE and appoint representatives of Plaintiffs to DOGE to advance FACA's fair-balance requirement.

9.     DOGE's operations during the transition period were shrouded in secrecy. Media reporting indicates that DOGE took steps outside of public view to begin operating immediately after President Trump's inauguration, and that DOGE will be embedded within the White House, OMB, and other federal agencies very soon

thereafter. Operating without complying with FACA, DOGE has already begun developing recommendations and influencing decision-making in the new administration, even though its membership lacks the fair balance required by FACA and its meetings and records are not open to public inspection in real time.

## JURISDICTION AND VENUE

10.     This Court has statutory jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely, FACA, 5 U.S.C. 1001 *et seq.*, and the APA, 5 U.S.C. §§ 702, 706; and under 28 U.S.C. § 1361, because this action seeks to compel officers or employees of the United States to perform duties imposed on them by FACA.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (e)(1)(A) because defendants are officers and agencies of the United States and because defendants reside in Washington, D.C.

## PARTIES

12.     Plaintiff Public Citizen, Inc., is a non-profit, public-interest research, litigation, and advocacy organization based in Washington, D.C., with members and supporters in all 50 states. Public Citizen advocates before Congress, regulatory agencies, and the courts to advance the interests of its members on a wide range of consumer-protection issues. Since its founding in 1971, Public Citizen has worked to hold the government and corporations accountable to the people, including by focusing on research and advocacy with respect to regulation of health, safety, consumer finance, and the environment.

13.     Plaintiff State Democracy Defenders Fund (SDDF) is a nonprofit organization that seeks to defend and strengthen democracy while ensuring that Americans are free to exercise their fundamental rights. SDDF works to advance pro-democracy goals such as promoting a government that is free of conflicts of interests, self-dealing, and corruption.

14.     Plaintiff American Federation of Government Employees (AFGE) represents approximately 800,000 workers in nearly every agency of the federal and D.C. governments, spread across over 900 local unions. AFGE's members include nurses, correctional officers, doctors, Social Security professionals, Transportation Security Officers, law enforcement officers, and park rangers, among others. On behalf of its membership, AFGE fights for dignity, safety, and fairness on the job so government can more effectively serve the American people.

15.     Defendant Donald Trump is President of the United States.

16.     Defendant OMB is a federal agency within the meaning of FACA, 5 U.S.C. § 1001(3), and the Administrative Procedure Act (APA), 5 U.S.C. § 551(1), that is headquartered in Washington, D.C.

## STATUTORY FRAMEWORK

17.     Congress enacted FACA in 1972 to address the "numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government." 5 U.S.C. § 1002(a). Congress declared that "standards and uniform procedures should govern the establishment, operation, administration, and duration of advisory committees," that "Congress and the public should be kept informed with respect to

the number, purpose, membership, activities, and cost of advisory committees," and that "the function of advisory committees should be advisory only, and all matters under their consideration should be determined, in accordance with law, by the official, agency, or officer involved." *Id*. § 1002(b)(4)–(6).

18.    In enacting FACA, Congress sought to curb "[o]ne of the great dangers in the unregulated use of advisory committees"—that "special interest groups may use their membership on such bodies to promote their private concerns." H.R. Rep. No. 92-1017, at 6 (1972). The House Report on FACA gave as an example a committee on industrial wastes "organized by several national business organizations at the request of" OMB. *Id*. At meetings with government officials, "only representatives of industry were present," and not any "representatives of conservation, environment, clean water, consumer, or other public interest groups." *Id*. FACA was intended to prohibit "[t]his lack of balanced representation of different points of view and the heavy representation of parties whose private interests could influence [the committee's] recommendations." *Id*.

19.    FACA defines an "advisory committee" to mean "a committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as 'committee') that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the federal government and that is—(i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies." 5 U.S.C.

§ 1001(2)(A). Excluded from the definition are committees composed wholly of full-time, or permanent part-time, officers and employees of the federal government, and those created by the National Academy of Sciences or the National Academy of Public Administration. These exclusions do not apply here.

20.     FACA applies to "each advisory committee" unless the advisory committee is created by a statute that specifically provides otherwise or the advisory committee is established or utilized by the Central Intelligence Agency, the Federal Reserve System, or the Office of the Director of National Intelligence, if certain national security findings are made. 5 U.S.C. § 1003(a). These exceptions do not apply here.

21.     Advisory committees created by the President, agency heads, or other Federal officials must have (1) a clearly defined purpose; (2) a membership that is fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee; (3) appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment. 5 U.S.C. § 1004(b), (c).

22.     An advisory committee cannot meet or take any action until an advisory committee charter has been filed. The charter must contain "(A) the committee's official designation; (B) the committee's objectives and the scope of its activity; (C) the period of time necessary for the committee to carry out its purposes; (D) the agency or official to whom the committee reports; (E) the agency responsible for providing

the necessary support for the committee; (F) a description of the duties for which the committee is responsible, and, if the duties are not solely advisory, a specification of the authority for the duties; (G) the estimated annual operating costs for the committee in dollars and person-years; (H) the estimated number and frequency of committee meetings; (I) the committee's termination date, if less than 2 years from the date of the committee's establishment; and (J) the date the charter is filed." 5 U.S.C. § 1008(c).

23.    FACA requires advisory committee meetings to be transparent. Advisory committee meetings must be "open to the public." "[T]imely notice of each meeting shall be published in the Federal Register," and other types of public notice must be given, in accordance with regulations of the General Services Administration, "to insure that all interested persons are notified of each meeting in advance." Interested persons must also "be permitted to attend, appear before, or file statements with any advisory committee." 5 U.S.C. § 1009(a).

24.    FACA requires "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee" to be made "available for public inspection," and directs detailed minutes to be kept of committee meetings. 5 U.S.C. § 1009(b), (c). Meetings must be attended by a federal officer or employee designated for that purpose, and only such an officer or employee may call or approve the holding of an advisory committee meeting. *Id*. § 1009(e), (f). Transcripts of advisory committee meetings must be made available to the public. *Id*. § 1010.

**FACTS**

**DOGE'S ESTABLISHMENT AND OPERATIONS**

25.     On August 12, 2024, then-candidate Trump was interviewed by billionaire entrepreneur Elon Musk on X, the social media site formerly known as Twitter that is now owned by Mr. Musk. During the interview, Mr. Musk proposed to Mr. Trump the idea of establishing a "government efficiency commission that tries to make the spending sensible so the country lives within its means just like a person does" and to ensure that "the taxpayers' hard-earned money is spent in a good way." Mr. Musk offered "to help out on such a commission … if it were formed." Mr. Trump responded to this proposal by saying "I'd love it."[1]

26.     Mr. Musk's suggestion that Mr. Trump establish a commission to examine federal spending was consistent with Mr. Trump's preexisting plans for creating a business-executive-led commission for that purpose. Reporting published after the X interview revealed that Mr. Trump "and his advisers [had] been talking for months about forming a commission led by prominent business executives to comb through the government books to identify thousands of programs to cut." Mr. Trump was interested, if elected, in establishing a "'blue ribbon' commission of top executives to eliminate wasteful federal spending … modeled after the Grace Commission, a Reagan-era panel that recommended billions of dollars in spending cuts."[2] The Grace Commission, formally called the Executive Committee of the President's Private

---

[1] https://www.rev.com/transcripts/elon-musk-and-donald-trump-interview.

[2] Jeff Stein & Trisha Thadani, *Trump eyes plan that may give Elon Musk role in auditing U.S. agencies*, The Washington Post, Sept. 2, 2024.

Sector Survey on Cost Control in the Federal Government, was established "in accordance with the provisions of the Federal Advisory Committee Act" and included up to 170 "members appointed by the President from among citizens in private life." Exec. Order 12369 (June 30, 1982), 47 Fed. Reg. 28899 (July 2, 1982); Exec. Order 12398 (Dec. 31, 1982), 48 Fed. Reg. 377 (Jan. 5, 1983).

27.    Mr. Trump formally announced his intent to establish a "Government Efficiency Commission" in a September 9, 2024, speech to the Economic Club of New York. He explained that the commission would be "tasked with conducting a complete financial and performance audit of the entire federal government and making recommendations for drastic reforms." He expected that the commission's "first order of business" would be to "develop an action plan to totally eliminate fraud and improper payments within six months." Mr. Trump also confirmed that Mr. Musk had agreed to "head up" this "task force."[3]

28.    One week after winning the 2024 election, president-elect Trump put his plans for a government efficiency commission into motion. He announced, in a post on the social media website Truth Social, that "Elon Musk, working in conjunction with American Patriot Vivek Ramaswamy, will lead the Department of Government Efficiency." Mr. Trump explained that he expected Messrs. Musk and Ramaswamy's work on DOGE to "pave the way for my Administration to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and

---

[3] https://www.econclubny.org/documents/10184/109144/20240905_Trump_Transcript.pdf.

restructure Federal Agencies." Mr. Trump also stated that DOGE "will provide advice and guidance from outside of Government, and will partner with the White House and Office of Management & Budget to drive large scale structural reform, and create an entrepreneurial approach to Government never seen before."[4] Mr. Trump's Truth Social post also established an end date for DOGE's work. He stated that "[t]heir work will conclude no later than July 4, 2026."

29. On December 4, 2024, Mr. Trump announced that William ("Bill") Joseph McGinley would serve as Counsel to DOGE. Mr. Trump stated that "Bill will work with Elon Musk, Vivek Ramaswamy, and their team of incredible pioneers at DOGE, to rebuild a U.S. Government that truly serves the People." Mr. Trump also stated that McGinley "will partner with the White House and the Office of Management and Budget to provide advice and guidance to end the bloated Federal Bureaucracy" and "will be at the forefront of my Administration's efforts to make our Government more efficient and more accountable."[5] On December 22, 2024, Mr. Trump announced that Katie Miller would also be joining DOGE.[6]

30. None of the four individuals named by Mr. Trump to DOGE have a background in consumer advocacy, anti-corruption and ethics policy, or representing the interests of government workers.

---

[4] https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.

[5] https://truthsocial.com/@realDonaldTrump/posts/113595819146944245.

[6] https://truthsocial.com/@realDonaldTrump/posts/113698968253776860.

31.    Mr. Musk, the world's richest individual, is a corporate executive whose companies earn revenue from federal contracts. Mr. Ramaswamy is also a billionaire investor who founded a biotech firm that stands to benefit from weaker federal drug regulation. Ms. Miller's background is handling press relations. Mr. McGinley has primarily worked as an attorney.

32.    On November 20, 2024, Messrs. Musk and Ramaswamy co-authored an opinion published in the Wall Street Journal, in which they confirmed that "President Trump has asked the two of us to lead a newly formed Department of Government Efficiency." They described themselves as "entrepreneurs" and "outside volunteers, not federal officials or employees." They explained that the DOGE team "will work in the new administration closely with the White House Office of Management and Budget."

33.    Messrs. Musk and Ramaswamy also described what they understood to be the type of advice that Mr. Trump has asked DOGE to provide the White House and OMB. Asserting that most "government enforcement decisions and discretionary expenditures aren't made by the democratically elected president or even his political appointees but by millions of unelected, unappointed civil servants within government agencies," they explained that President Trump has asked them to "cut the federal government down to size."

34.    Messrs. Musk and Ramaswamy promised to pursue "regulatory rescissions, administrative reductions, and cost savings." They promised that DOGE would "present [a] list of regulations to President Trump" so that he could take

"executive action" to "pause the enforcement of those regulations and initiate the process for review and recission."

35.    Messrs. Musk and Ramaswamy promised to "identify the minimum number of employees required at an agency" to achieve a "mass head-count reductions across the federal bureaucracy."

36.    Messrs. Musk and Ramaswamy stated that "DOGE will help end federal overspending by taking aim at the $500 billion plus in annual federal expenditures that are unauthorized by Congress or being used in ways that Congress never intended" and that DOGE would "identify[] pinpoint executive actions that would result in immediate savings for taxpayers."

**VIOLATIONS OF FACA AND HARM TO PLAINTIFFS**

37.    DOGE is an advisory committee charged by Mr. Trump with providing advice or recommendations to the President and to one or more federal agencies regarding regulatory and fiscal matters. DOGE thus has an organized structure, a membership of non-governmental employees, and a specific purpose.

38.    In the period between the 2024 election and the inauguration, DOGE began taking actions to enable it to begin carrying out its charge upon Mr. Trump being sworn in. During the transition period, DOGE representatives had "preliminary interviews" with officials at more than a dozen federal agencies.[7] DOGE has plans to embed representatives in federal agencies. Other DOGE personnel would

---

[7] Faiz Siddiqui et al., *DOGE is dispatching agents across U.S. government*, Washington Post, Jan. 10, 2025.

be located within the Executive Office of the President at the U.S. Digital Service. "DOGE is also expected to have an office" at OMB.[8]

39.     According to media reports, individuals involved in DOGE have sought to maintain "secrecy" about its activities. Such individuals have conducted "much of its communication ... on Signal, the encrypted messaging app,"[9] and have not made those communications available to the public.

40.     On November 20, 2024, Public Citizen sent a letter to President Trump's transition co-chairs advising them that DOGE would be an advisory committee subject to FACA's accountability and transparency requirements. Public Citizen did not receive a response to the November 20 letter.

41.     On January 13, 2025, Public Citizen's co-presidents, Lisa Gilbert and Robert Weissman, sent a letter to President Trump's transition co-chairs requesting that they be appointed to DOGE as voices for the consumers and the public who would be affected by DOGE's work. They explained that, in light of Public Citizen's work since its founding in 1971 to hold the government and corporations accountable to the people, they have a direct interest in DOGE's mission of advising the administration on, and making recommendations regarding, the federal government's regulatory and spending policies. They observed that DOGE lacked balance in points of view because individuals associated with DOGE generally came from corporate backgrounds. In particular, Gilbert and Weissman explained that DOGE lacked any members with a

_____

[8] Theordore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times, Jan. 12, 2025.

[9] *Id.*

background in representing the interests of consumers and the public. The letter explained that appointing individuals with such a background was needed to enable compliance with FACA's requirement that advisory committees be fairly balanced in terms of the points of view represented. Public Citizen has not received a response to the January 13 letter.

42.     On January 16, 2025, SDDF's Executive Chair Ambassador Norman Eisen (ret.) and its Chief Ethics and Anticorruption Officer Virginia Canter requested appointment to DOGE as voices for the interests of good government and anti-corruption. The letter explained that ethics and anti-corruption expertise is needed on DOGE because of the conflicts of interest and structural issues DOGE faces. The letter also explained that DOGE should not focus only on eliminating rules and spending without considering the integrity and efficient administration of government operations to benefit all Americans, including anti-corruption measures to protect against policies and practices that benefit a small minority of individuals at the expense of the vast majority of the public.

43.     SDDF did not receive a direct response to its request. On January 16, 2025, the New York Times reported that SDDF's request for an appointment had been rejected. In explaining the rejection, DOGE member and Mr. Trump's transition spokesperson Katie Miller explained that "President Trump's Truth [Social post] made clear we have no room in our administration for Democrats."[10]

---

[10] David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, N.Y. Times, Jan. 16, 2025.

44.    On January 16, 2025, AFGE's president Dr. Everett B. Kelley requested that an AFGE representative be appointed to DOGE for the voices of the thousands of federal workers who would be affected by DOGE's recommendations. Dr. Kelley explained that AFGE has a deep knowledge of the federal government and many of the issues faced by its agencies and employees, along with the essential functions they perform. The letter noted that AFGE's experience would allow it to enhance DOGE's effectiveness by providing insight into bureaucratic challenges and by identifying practical solutions to streamline processes, reduce waste, and improve operations. Dr. Kelly also noted that AFGE would be an important voice for advocating for the resources that government employees need to effectively perform their duties while supporting fair treatment, equitable pay, and safe working conditions. AFGE has not received a response to Dr. Kelly's letter.

45.    Defendants have not acknowledged that DOGE is an advisory committee under FACA. Defendants have not filed, or caused to be filed, a charter for DOGE, as required by FACA.

46.    On information and belief, Defendants do not intend to (1) acknowledge that DOGE is an advisory committee under FACA, (2) ensure that DOGE will be fairly balanced in terms of points of view expressed and the functions to be performed, or (3) take steps to prevent DOGE's advice and recommendations from being improperly influenced by administration officials or any special interest.

47.    On information and belief, Defendants (1) will allow DOGE to meet without a charter being filed, (2) will not ensure that advance notice of meetings are

published in the Federal Register, and (3) will not permit interested members of the public to attend DOGE meetings.

48.    On information and belief, Defendants (1) will not ensure that DOGE makes available to the public the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by DOGE, (2) will not ensure that DOGE makes minutes and transcripts of meetings available, and (3) will allow DOGE to meet without the meeting being called or attended by a designated Federal officer or employee.

49.    On information and belief, Defendants do not intend to appoint representatives to DOGE that will ensure a fair balance of views.

50.    Defendants' refusal to acknowledge that DOGE is an advisory committee under FACA and to comply with FACA's requirements directly affects Plaintiffs' missions and their advocacy, and deprives them of access to information and meetings.

51.    Public Citizen was established to hold the government and corporations accountable to the people, including by focusing on research and advocacy with respect to strong, smart regulation of health, safety, consumer finance, and the environment. Public Citizen's mission will be directly affected by DOGE's work. Public Citizen advocates for the enactment and implementation of regulatory and spending programs that benefit consumers and the public. Public Citizen has an organizational interest in having its representatives on DOGE and in having access

to information so that it can identify, understand, and comment on recommendations developed by DOGE to constrain federal regulatory efforts or limit federal expenditures that promote health, safety, or the environment.

52.     SDDF was established to defend and strengthen democracy while ensuring that Americans are able to freely exercise their fundamental rights. SDDF seeks to advance pro-democracy goals such as promoting a government free from conflicts of interest, self-dealing and corruption. As currently structured, DOGE presents the risk of financial conflicts, self-dealing, and corruption because Mr. Musk and Mr. Ramaswamy are corporate investors whose financial interests could be implicated by changes to the federal government's regulatory or fiscal policy made as a result of the recommendations that they will furnish the administration. SDDF therefore has an organizational interest in being represented on DOGE so that it can detect potential conflicts of interest, and in having access to DOGE records and information to help enable it to detect potential conflicts.

53.     AFGE represents federal workers who will be directly affected by DOGE and its mission. Messrs. Musk and Ramaswamy have expressed their intention to achieve spending cuts by reducing the federal workforce by recommending changes to their working conditions and through other means. AFGE therefore has an organizational interest in having the viewpoints of federal workers represented on DOGE, and in being able to view DOGE records and attend and participate in meetings in which recommendations concerning the federal workforce will be addressed.

54.    Defendants' failure to subject DOGE to the requirements of FACA harms Plaintiffs' interests in two ways. First, by refusing to comply with FACA's fair-balance requirement, Defendants have denied Plaintiffs an opportunity to be fairly considered for DOGE as voices for the interests of consumers and public interest, persons interested in protecting government from corruption and self-dealing, and representatives of government employees, all of whom will be affected by the advice and recommendations that DOGE develops regarding the administration's regulatory and spending policy. The lack of fair balance harms Plaintiffs by depriving them of the opportunity to ensure that their viewpoints are represented in DOGE's membership.

55.    Second, by refusing to recognize DOGE as an advisory committee, Defendants shield DOGE's records from public inspection and permit DOGE to meet and conduct business without complying with FACA's prior-notice and public-participation requirements. This violation will deny Plaintiffs access to information about DOGE's work, advice, and recommendations and deny Plaintiffs the ability to participate in DOGE meetings and present their views to DOGE on regulatory and fiscal reforms that DOGE should consider.

### COUNT I
### (Violation of FACA)

56.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

57.    DOGE is an advisory committee under FACA because it is a "committee, board, commission, council, conference, panel, task force, or other similar group"

established or utilized by President Trump or OMB "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A).

58.    By failing to file a charter for DOGE, or failing to cause such a charter to be filed, Defendants have not complied with FACA's non-discretionary requirement under 5 U.S.C. § 1008(c). The consequence of Defendants' failure to file a charter that reflects DOGE's status as an advisory committee is to prevent Plaintiffs from exercising their rights under 5 U.S.C. §§ 1009 & 1010 to obtain DOGE documents and attend and participate in DOGE meetings. In these respects, President Trump has violated a non-discretionary duty required by FACA, and, under the Administration Procedure Act (APA), OMB has unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id.* § 706(2)(A).

59.    By failing to ensure that DOGE is fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee, Defendants have failed to comply with FACA's non-discretionary requirement under 5 U.S.C. § 1004. Therefore, President Trump has violated a non-discretionary duty required by FACA, and, under the APA, OMB has unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id.* § 706(2)(A).

60.    OMB's failure to comply with FACA in relation to DOGE is "final agency action for which there is no other adequate remedy in a court," and therefore is "subject to judicial review." *Id.* § 704; *see id.* § 702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.      Declare that Defendants' creation and administration of DOGE violates FACA, and that DOGE is therefore unlawful;

2.      Enjoin Defendants from utilizing DOGE as an advisory committee unless and until Defendants comply with FACA;

3.      Through the named Defendants, enjoin DOGE from meeting, advising Defendants, and otherwise conducting DOGE business unless and until Defendants comply with FACA;

4.      Order Defendants to file a charter for DOGE;

5.      Order Defendants to comply with the fair-balance requirements of FACA;

6.      Order Defendants to ensure that DOGE complies with its other FACA duties, including the duty to provide advance notice of DOGE meetings in the Federal Register; to allow the public to participate in meetings, and to provide public access, to the extent required by FACA, to all records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents that have been made available to, or prepared for or by, DOGE;

7.      Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

8.      Grant any other relief this Court deems appropriate.

Dated: January 20, 2025

Respectfully submitted,

/s/ Nandan M. Joshi
Nandan M. Joshi (DC Bar No. 456750)
Nicolas Sansone (DC Bar No. 1686810)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Norman L. Eisen (DC Bar No. 435051)
State Democracy Defenders Fund
600 Pennsylvania Avenue SE
#15180
Washington, DC 20003