# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC CITIZEN, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00164-JMC |
| JERALD LENTINI , *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF GOVERNMENT EFFICIENCY , *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00166-JMC |
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00167-JMC |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.   Plaintiffs Cannot Demonstrate That Expedited Discovery Is Warranted Here. ........................ 4

    A.   Plaintiffs' Requests Come Far In Advance Of The Typical Discovery Process. ......... 5

    B.   No Request For Emergency Injunctive Relief Is Pending. ......................................... 9

    C.   Plaintiffs Fail To Articulate A Specific Or Legitimate Purpose For Expedited Discovery ................................................................................................................. 11

    D.   The Proposed Discovery Requests Are Inappropriate Because They Are Extremely Broad In Scope. ....................................................................................... 12

    E.   Plaintiffs' Proposed Discovery Is Burdensome Because It Seeks To Depose Senior White House Personnel. ................................................................................. 15

II.   If The Court Orders Expedited Discovery, Defendants Request A Stay Of That Order. ........ 17

CONCLUSION ...................................................................................................................... 18

## INTRODUCTION

Plaintiffs Jerald Lentini, Joshua Erlich, and National Security Counselors, Inc., bring this Motion for Expedited Discovery, ECF No. 20 ("Mot."), from the Executive Branch, including the White House, seeking extraordinary relief and on an expedited timeframe before this Court has even had a chance to adjudicate the Government's forthcoming motion to dismiss (which is not due for weeks).[1]

This Federal Advisory Committee Act ("FACA") case asserts the existence and operation of an alleged federal advisory committee that does not exist and has never operated. Defendants' Motion to Dismiss deadline has not yet come due, but when it does, Defendants will explain why Plaintiffs' claims fail numerous threshold requirements and fail to state a claim, and why this case should be dismissed. Plaintiffs' rushed attempt to sidestep the normal procedures for civil discovery may be rejected on that basis alone. Furthermore, Plaintiffs filed their Complaint eight weeks ago and have yet to seek any emergency relief. Nevertheless, Plaintiffs state that this expedited discovery is necessary in light of their anticipated motion for a preliminary injunction. But Plaintiffs' own delay belies the urgency of their request, which fails to articulate any specific purpose for the requested depositions. And close analysis of the factors under which courts in this District analyze motions for expedited, pre-answer discovery does Plaintiffs' request no favors.

Federal courts also hold litigants to an extremely high standard before ordering discovery into the White House; at a minimum, Plaintiffs must demonstrate a real need for such material, exhaust other alternatives, and make a clear effort at strictly limiting any request. That is particularly true here, where the Plaintiffs seek invasive discovery against the President's senior

---

[1] These consolidated cases originally consisted of three civil actions, *Public Citizen v. Trump*, No. 25-cv-164-JMC, *American Public Health Association v. Trump*, No. 25-cv-167-JMC, and *Lentini v. Trump*, No. 25-cv-166-JMC. Only the *Lentini* Plaintiffs bring this motion. The *Public Citizen* plaintiffs voluntarily dismissed their case on March 3, 2025. ECF No. 21.

1

advisors in a way explicitly prohibited by the Supreme Court. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 386 (2004). Plaintiffs have failed to meet this high burden. For all of these reasons, the Court should deny Plaintiffs' motion.

## BACKGROUND

Plaintiffs filed this lawsuit on January 20, 2025, alleging a violation of FACA based on President Trump's announcement of the Department of Government Efficiency in his inaugural address. *Lentini v. Dep't of Gov't Efficiency*, No. 1:25-cv-166-JMC (D.D.C.), ECF No. 1. The premise for Plaintiffs' premature suit was refuted within hours, however, when the President's Executive Order *Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order 14,158, 90 Fed. Reg. 8441, 8441 (Jan. 20, 2025), made clear that the Department of Government Efficiency is, in fact, a part of the government—not an advisory committee at all.

Plaintiffs should have dropped their lawsuit following the Executive Order, as their fellow plaintiffs in *Public Citizen* did. Instead, over three weeks later, on February 13, 2025, Plaintiffs filed the Amended Complaint. *Lentini v. Dep't of Gov't Efficiency*, No. 1:25-cv-166-JMC (D.D.C.), ECF No. 10. The Amended Complaint brings six causes of action under the FACA, Mandamus, the Administrative Procedures Act, and the Declaratory Judgment Act, all alleging that the "Department of Government Efficiency" or "DOGE" is a federal advisory committee, and thus required to comply with the requirements of FACA, 5 U.S.C. §§ 1001-16, by, among other things, filing an advisory committee charter, publishing public notice of meetings or staff, and not being inappropriately influenced by special interests. Am. Compl. ¶¶ 99-166. The gravamen of Plaintiffs' claims is that DOGE is an advisory committee that is separate and distinct from any entity in the federal government, including the United States DOGE Service and the United States DOGE Service Temporary Organization established by the Executive Order (which Plaintiffs collectively

refer to as "USDS"), and that it is led by Elon Musk, who is not the USDS Administrator. *Id*. ¶¶ 7, 99-102. Plaintiffs allege that DOGE "continues to operate outside of" the federal government. *Id*. ¶ 104.

On February 4, Defendants filed a motion to consolidate this lawsuit with two other lawsuits that brought nearly identical claims alleging that DOGE is required to comply with FACA but has failed to do so, and this Court consolidated the cases on February 18. *See Public Citizen v. Trump* No. 1:25-cv-164-JMC (D.D.C.), Feb. 18, 2025 Minute Order.

Defendants' deadline to respond to the operative Complaints, as ordered by the Court, is April 11, 2025. *See Public Citizen v. Trump* No. 1:25-cv-164-JMC (D.D.C.), Mar. 14, 2025 Minute Order. No other action has occurred in this litigation, and Plaintiffs have not sought preliminary or emergency relief. Because Defendants' motion to dismiss deadline has not yet come due, this Court has not had an opportunity to assess whether Plaintiffs' Amended Complaint fails to state a claim or whether it has jurisdiction as to any of the Defendants or claims. But prior to providing Defendants and the Court time to brief and decide whether the operative complaint is meritorious, and prior to any Rule 26(f) conference, Plaintiffs submitted a Motion for Expedited Discovery, seeking to depose three high-level government officials within the Executive Office of the President ("EOP"): Elon Musk, Senior Advisor to the President; Joshua Fisher, Director of the Office of Administration; and Amy Gleason, Acting USDS Administrator. ECF No. 20. Plaintiffs state that they seek discovery into "the illegal composition of DOGE and the discrepancies between [DOGE's] membership and the individuals affiliated with USDS." Mot. at 1.

**ARGUMENT**

Expedited discovery is not the norm, especially when it is sought weeks before Defendants' deadline to respond to the Complaint. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). It is particularly unusual where that discovery reaches into the inner workings of the White

3

House. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 388 (2004) (rejecting requested discovery into White House for purposes of ascertaining whether FACA's disclosure requirements applied to alleged advisory committee). The upshot is that to justify such an extraordinary measure, a plaintiff must—at bare minimum—demonstrate a real and legitimate need for the material sought, exhaust other alternative sources of information, and make an effort to closely tailor any request accordingly. On all fronts, Plaintiffs have not come close to doing so here.

## I. Plaintiffs Cannot Demonstrate That Expedited Discovery Is Warranted Here.

Courts in this District examine motions for expedited discovery under a "reasonableness" standard. *See Guttenberg*, 26 F. Supp. 3d at 97–98; *see also, e.g.*, *Pinson v. U.S. Dep't of Just.*, No. 18-cv-486-RC, 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) (applying reasonableness test outlined in *Guttenberg*).[2] Under this approach, courts primarily examine five factors, although the list of factors is not exhaustive: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005)). Thus, expedited discovery, as Plaintiffs here request, is "not the norm[,]" *Guttenberg*, 26 F. Supp. 3d at 97, and is reserved for exceptional circumstances. *See, e.g.*, *Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 (D.D.C. 2015) (permitting

---

[2] The alternative test is one announced in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), but Courts in this District have recently rejected entirely the *Notaro* test in favor of the good-cause standard, which is "more suited to the application of the Court's broad discretion in handling discovery." *Guttenberg*, 26 F. Supp. 3d at 97–98. Plaintiffs have also not evoked the *Notaro* standard. *See* Mot. at 8. As such, Defendants similarly apply the reasonableness standard.

limited, expedited discovery when it is needed to determine the identities of Doe defendants); *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 3 (D.D.C. 2010).

These factors weigh heavily against the expedited discovery Plaintiffs request. Plaintiffs' motion comes well in advance of when discovery would typically be available in civil litigation, and before Defendants have been able to litigate any of their motion to dismiss arguments (factor 5). There is no pending preliminary injunction motion, even though Plaintiffs filed this lawsuit eight weeks ago (factor 1). The purpose of the discovery sought also goes entirely to the merits of Plaintiffs' claims (factor 3), and, because it seeks discovery of high-level White House personnel the scope of these requests far exceeds what would be proper (factor 2). Finally, the requested discovery, which consists of Plaintiffs' request for three depositions of White House personnel to take place in a matter of weeks, would place enormous burdens on Defendants, with no corresponding benefits to the resolution of the case (factor 4). Accordingly, the Court should deny Plaintiffs' motion.

### A. Plaintiffs' Requests Come Far In Advance Of The Typical Discovery Process.

*Guttenberg* explains that the "most important" consideration in the Court's reasonableness analysis is whether the "plaintiffs' request for expedited discovery comes 'well in advance of typical discovery.'" 26 F. Supp. 3d at 99; *see also Humane Soc'y of U.S. v. Amazon.com, Inc.*, No. 07-623-CKK, 2007 WL 1297170, at *2 (D.D.C. May 1, 2007) (denying request for expedited discovery that was made in advance of motion to dismiss deadline); *True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734-RBW, 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014) (finding expedited discovery prior to resolution of motion to dismiss "premature"). Expediting discovery in the face of a dispositive motion drains resources, burdens the Defendants, and creates inefficiencies as it requires "expend[ing] significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Guttenberg*, 26 F. Supp. 3d at 99

5

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up)); *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability which "likely would eliminate the need for the District Court to examine a complete administrative record").

Indeed, "[a]s courts in this district have repeatedly emphasized, 'discovery typically occurs *after* the resolution of motions to dismiss,' because 'requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim'" is inefficient. *In re Quinteros*, No. 19-br-195-SMT, 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021) (emphasis added), *aff'd sub nom. Matter of Quinteros*, No. 21-cv-7087, 2022 WL 3970927 (D.C. Cir. Sept. 1, 2022) (quoting *Attkisson*, 113 F. Supp. 3d at 165). Rightly so: A party should not be able to engage in intrusive discovery to prove up a complaint until such time as a Court has had an opportunity to determine whether the facts as alleged in the complaint, if taken as true, state a viable legal claim. "At the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery." *Guttenberg*, 26 F. Supp. 3d at 99.

So too here. Defendants' motion to dismiss, which is not due for weeks, will be based on threshold legal arguments for dismissal that do not require any factual development. First, as the Government will argue in detail, Plaintiffs have failed to plead a legally valid FACA claim. They have failed to allege the elements of a FACA claim and as a result their Complaint must be dismissed. At the onset, Plaintiffs fail to satisfy numerous threshold requirements. They cannot sue

6

directly under FACA (Counts I-VI), because the Act lacks a private right of action. *See Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54, 66 (D.D.C. 2017). As to the some of the defendants, Plaintiffs cannot sue under the APA (Count V), because those defendants are not an "agency" subject to its cause of action: the President is not an agency subject to the APA, *see Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), and neither is the White House Office (of which Elon Musk, sued in his official capacity, is a member) or the Executive Office of the President as a stand-alone entity, *see Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). Nor can plaintiff satisfy the stringent standards required to invoke this Court's mandamus jurisdiction (Counts I-IV). Such jurisdiction exists only when a mandatory duty is "clear and indisputable," a narrowly defined standard that is even more narrowly defined when mandamus is sought against the President or his closest advisors, as here. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 949 (D.C. Cir. 2019). Plaintiffs have also failed to allege facts that would state a valid FACA claim. To be subject to FACA, a committee must satisfy numerous necessary (though not sufficient) elements, including (1) having sufficient indicia of formality and structure; (2) being formally enacted or utilized (i.e., controlled) by the government; and (3) having non-governmental members with a vote or veto over the committee's collective recommendations. *Am. Oversight v. Biden*, No. 20-cv-00716-RJL, 2021 WL 4355576, at *1 (D.D.C. Sept. 24, 2021). As Defendants will explain in their forthcoming motion to dismiss, Plaintiffs fail to adequately plead any of these requirements.

Because there are substantial doubts as to whether Plaintiffs have adequately pled viable FACA claims, this Court should not order discovery until it has assessed the merits of Defendants' forthcoming motion. *See Guttenberg*, F. Supp. 3d at 99; *Sibley v. U.S. Supreme Ct.*, 786 F. Supp.

7

2d 338, 346 (D.D.C. 2011) ("It is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.").

Furthermore, both the Federal Rules of Civil Procedure and the Local Rules of this Court provide that, absent unusual circumstances not present here, discovery should not proceed before the parties have conferred as required by Federal Rule of Civil Procedure 26(f). The Federal Rules provide that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Similarly, this Court's Local Rules mandate that, "[e]xcept in categories of proceedings exempted from initial disclosure . . . , or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)." Local Civ. R. 26.2(a).

Plaintiffs' request for expedited discovery thus "arrives before this Court has held an initial scheduling conference with the parties pursuant to Federal Rule of Civil Procedure 16(b) and discussed the parameters of discovery." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018). "Generally such expedited discovery is not permissible, though the Court may grant an exception." *Id*. at 102. As explained below, Plaintiffs fail to justify an exception.

Moreover, the Court's Local Rules establish that civil cases in which "defendants have not yet answered" are exempt from "[t]he requirements of" Rule 26(f)." Local Civ. R. 16.3(b). Therefore, in this District, when a motion to dismiss deadline has not yet come due—and therefore the defendants have not yet answered—the defendants are not required to participate in a Rule 26(f) conference and, accordingly, are not required to participate in discovery. The Local Rules

8

establish the sensible general rule that discovery should not proceed when a motion to dismiss could yet dispose of the case. *See Chavous v. Dist. of Columbia Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing the "eminently logical" principle that "discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending") (citation omitted).

Additionally, this Court should decline to allow Plaintiffs to take discovery in support of their APA claim. *See* Am. Compl. ¶¶ 147-45. The Court must generally base its review in an APA case "on the full administrative record that was before the [agency] at the time [it] made its decision," not on a record generated by the parties through the discovery process. *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (second alteration in original) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

### B. No Request For Emergency Injunctive Relief Is Pending.

Plaintiffs concede *Guttenberg*'s first factor weighs against them, as there is no preliminary injunction motion pending. *See* Mot. at 9. This concession is significant. Requests for expedited discovery typically arise out of the need to support such a motion. *See, e.g.*, *Guttenberg*, 26 F. Supp. 3d at 97 ("Plaintiffs also move for expedited discovery so they can make a record to support their pending motion for a preliminary injunction"); *see also Ent. Tech. Corp. v. Walt Disney Imagineering*, No. CIV.A. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003); *Onan Corp. v. United States*, 476 F. Supp. 428, 434 (D. Minn. 1979). Plaintiffs assert that they are similarly situated to a party moving for a preliminary injunction, arguing they require the discovery to "[g]arner[] support for that anticipated preliminary injunction motion." Mot. at 9. But the difference is actually significant for several reasons.

First, Plaintiffs' failure to move for preliminary relief confirms that are seeking discovery for the impermissible purpose of figuring out whether they have a cause of action in the first place.

9

Plaintiffs' Amended Complaint is based on speculation that, even though the U.S. DOGE Service is a government entity and Elon Musk is a government employee, Mr. Musk is still secretly orchestrating an advisory committee *outside* of government to offer the same advice that he is already entitled to offer *within* the government. *See* Am. Compl. ¶¶ 7, 83–102, 104. Plaintiffs' request for discovery is nothing less than a fishing expedition to substantiate their unsupported claim.

Second, a "demonstrated lack of urgency in seeking expedited discovery" weighs against permitting it. *See Guttenberg*, 26 F. Supp. 3d at 98. Plaintiffs waited over six weeks to seek expedited discovery and have not sought any emergency relief in the first eight weeks since they filed their Complaint, a delay that itself undermines any entitlement to preliminary relief. *See Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (holding that delay of thirty-six days before filing for preliminary injunctive relief was "dilatory action" that failed to clear the high bar needed to show entitlement to relief); *see also Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a delay of forty-four days before bringing action for injunctive relief was "inexcusable," and "bolstered" the "conclusion that an injunction should not issue," particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm). This fact alone easily distinguishes this case from others on which Plaintiffs may seek to rely, such *New Mexico v. Musk*, No. 25-429-TSC, slip op. at 5 (D.D.C. March 12, 2025), ECF No. 29. In that case, the court weighed heavily the fact that "[a]lthough Plaintiffs have not yet filed their preliminary injunction motion, they promptly sought injunctive relief in the form of a TRO." *Id*. at 5. And also in that case, the Defendants "[did] not argue that the technical absence of a pending preliminary injunction weighs against discovery." *Id*. Unlike in *New Mexico*, Plaintiffs here have not moved with any urgency or sought any expedited

10

relief, and thus this factor weighs strongly against discovery here. *See Guttenberg*, 26 F. Supp. 3d at 98-99 (finding a "lack of urgency" weighs against granting expedited discovery).

Third, pre-motion discovery would deprive Defendants of a full opportunity to effectively oppose the relief sought here. Without a pending preliminary injunction motion, Defendants cannot critique whether the information sought is for a purpose germane to Plaintiffs' request for emergency relief or how the scope aligns with the type of relief Plaintiffs seek. Plaintiffs should not be able to use expedited discovery to develop a preliminary injunction motion that has not been, and indeed may never be, filed, at which point Defendants will no longer be able to object to whether the discovery was necessary to support and properly tailored to Plaintiffs' motion for preliminary relief.[3]

### C. Plaintiffs Fail To Articulate A Specific Or Legitimate Purpose For Expedited Discovery.

Plaintiffs do not come close to shouldering their burden in justifying intrusive discovery on the Executive Branch. Courts consider carefully a litigant's purported reasons for seeking expedited discovery. *See Attkisson*, 113 F. Supp. 3d at 164 ("In considering whether good cause exists to grant a motion for expedited discovery, the Court also assesses the purpose of the motion."); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005) (noting that federal courts should consider "the purpose for requesting the expedited discovery") (citation omitted); 8A Wright & Miller, Federal Practice and Procedure § 2046.1, at 290–91 (3d ed. 2010)

---

[3] Plaintiffs also state that "the parties are in the middle of negotiating a briefing schedule[]" for the preliminary injunction motion," Pls.' Mot. at 9, but this characterization is inaccurate. Although counsel for Plaintiffs expressed interest in negotiating a preliminary injunction motion briefing schedule the parties have not engaged in negotiations over such a schedule.

11

("In general, decisions whether to grant or deny leave for early discovery depend on the specific justifications offered in support of the application.").

Plaintiffs' motion claims the facts they seek to discover are "tied directly to the substance of their claims against Defendants and, in particular, the illegal composition of DOGE and the discrepancies between its membership and the individuals affiliated with USDS." Pls.' Mot. at 1. The purpose of the discovery, according to Plaintiff, is to "[g]arner[] support" for an anticipated preliminary injunction motion, *id*. at 9, and is necessary "because of the Government's shifting public explanations of Musk's role in DOGE," *id*. at 11. But Plaintiffs have not met their burden to explain, with requisite clarity, the specific purpose that the requested discovery would serve in furtherance of their foreshadowed preliminary injunction motion. Instead, they seek depositions on general, open-ended topics like "the evolution of DOGE and hos Musk, USDS, agency DOGE teams, and Defendant agencies interact with each other." *Id.* at 10. That request is not designed to fill a particular gap in a preliminary injunction motion but rather is merits discovery to determine whether Plaintiffs have a claim in the first place.

### D. The Proposed Discovery Requests Are Inappropriate Because They Are Extremely Broad In Scope.

Courts disfavor broad expedited discovery, especially discovery requests that cut to the merits of a plaintiff's case. *Guttenberg*, 26 F. Supp. 3d at 98; *see also True the Vote*, 2014 WL 4347197, at *7; *see, e.g.*, *Attkisson*, 113 F. Supp. 3d at 163 (explaining that expedited discovery is "inappropriate" to prove ultimate merits of the case, and instead should be narrowly tailored to issue of preliminary relief). As outlined above, the breadth of Plaintiffs' request does not match any permissible purpose. Across their motion, Plaintiffs never articulate a justification for why this expedited discovery is necessary for any reason specific to their forthcoming preliminary

injunction motion and instead appear to concede that the discovery is "tied directly to the substance of their claims against Defendants." Mot. at. 1.

Expedited discovery that seeks "relatively broad discovery on issues going to the merits of the case" that is not "narrowly tailored to reveal information related to the preliminary injunction" should not be authorized. *Guttenberg*, 26 F. Supp. 3d at 98; *see also Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631-RBW, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); *Attkisson*, 113 F. Supp. 3d at 162. Plaintiffs do not even attempt to explain why their discovery requests are narrowly tailored. Instead, they rely solely on an order issued in a different case, which raises entirely different legal claims, and in an entirely different litigating posture. Mot. at 10 (citing only an order issued in *AFL-CIO v. Department of Labor*, No. 1:25-cv-00339-JDB, slip op. at 4 (D.D.C. Feb. 27, 2025), ECF No. 48, in support of this prong, and not citing to any applicable caselaw). Courts reject requests for expedited discovery that "are not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98; *cf. New Mexico*, ECF No. 29 at 7 (noting that the parties agreed that the purpose of Plaintiffs' expedited discovery requests "target information relevant to Plaintiffs' claims for injunctive relief" and the information was "narrowly tailored" to "that specific purpose.").

Notably, Plaintiffs seek to depose the President's senior advisors and individuals within the Executive Office of the President. In light of the "special nature of the President's constitutional office and functions" and "the singular importance of [his] duties," separation-of-powers principles require particular "deference and restraint" in the conduct of litigation involving the President. *Nixon v. Fitzgerald,* 457 U.S. 731, 751–56 (1982); *see Cheney*, 542 U.S. at 382-88. And at minimum, what those principles preclude is expedited discovery reaching a sitting President concerning his official duties. *See Trump v. United States*, 603 U.S. 593, 617–19 (2024). So too

13

the work immediately surrounding him, involving those senior advisors and aides who are necessary for the President to be able to execute his office with dispatch. *See Cheney*, 542 U.S. at 369-70 ("[T]he Judiciary must afford Presidential confidentiality the greatest possible protection, recognizing the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties.").

Relatedly, Plaintiffs make no effort at all to tailor their discovery request to account for the various governmental privileges that circumscribe discovery requests that involve the Executive Branch. In fact, Plaintiffs do not even acknowledge these doctrines. This too is reason enough to reject their motion. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" (emphasis added)); *see also United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 34–35 (D.D.C. 2012) ("KB should not be allowed to engage in a fishing expedition, requiring the United States to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence."). For instance, Plaintiffs seek to depose one of the President's Senior Advisors—Elon Musk. Mot. at 1. But much of the information Plaintiffs seek from Mr. Musk would be squarely covered by the presidential communications privilege, which is a "presumptive privilege for [p]residential communications, [and] preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). Simply put, a plaintiff cannot demand—especially in the sort of categorical, reaching fashion that Plaintiffs do here—to depose one of President's Senior Advisors with respect to a given policy initiative. *In re Sealed Case*, 121 F.3d 729, 754 (D.C. Cir. 1997). And Plaintiffs did not even attempt to condition their discovery request in light of this settled doctrine. As the Supreme Court has observed, "there is

14

sound precedent in the District of Columbia itself for district courts to explore other avenues" before requiring the White House to comply with discovery requests. *Cheney*, 542 U.S. at 390. In *Cheney*, the Court specifically held that the Executive Branch should not have to "bear the burden" of invoking privilege to whittle down an otherwise broad request for discovery in an attempt to ascertain whether a group was subject to FACA. 542 U.S. at 388. Instead, the burden is on the plaintiff to show that discovery is not only necessary, but proper, and consistent with all applicable privileges. *Id*. at 388–89. And what is plain from Plaintiffs' motion is that they have not even attempted to make that showing or explore other avenues for obtaining information.

In sum, the breadth of the discovery Plaintiffs seek belies Plaintiffs' contention that they seek only limited, expedited discovery for permissible purposes. Instead, their expedited discovery is an attempt to leapfrog the normal course of civil litigation to reach the merits of the case before the court can address Defendants' threshold arguments.

### E. Plaintiffs' Proposed Discovery Is Burdensome Because It Seeks To Depose Senior White House Personnel.

Plaintiffs' proposed discovery, which seeks three depositions of White House personnel, is burdensome, not tailored to the specific claims at issue in this case, and treads into the inner workings of the White House. Plaintiffs do not acknowledge this at all, treating their discovery motion as wholly routine. But that is the fundamentally wrong analytical framework under the Constitution and precedent.

Litigation against the President, who is a named defendant here—is different from garden variety litigation. The separation of powers "should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney*, 542 U.S. at 385. Among other things, what this means is that before a litigant demands discovery of the White House, it must "satisfy his burden of showing the propriety of the requests"—*e.g.*, that there is a compelling "need" for such

15

material, that "other avenues" are unavailable to obtain relevant material, and that no alternatives are "available." *Id*. at 389–90; *see e.g.*, *Lardner v. U.S. Dep't of Justice*, No. 03-cv-0180, 2005 WL 758267, at *9 (D.D.C. Mar. 31, 2005) ("[A] court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings"). More, it is not the Executive who "shall bear the burden" of showing that a discovery request is too broad; there is an effective presumption against such discovery, which falls to a plaintiff to shoulder with particularity. *Cheney*, 542 U.S. at 388.

This principle holds even greater force with respect to depositions. It is well-settled that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). This is because the "duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). That of course includes not only the President, but his senior advisors (like Elon Musk). *See Cheney*, 542 U.S. at 383; se*e also, e.g.*, *Am. Historical Ass'n v. Nat'l Archives & Records Admin*., 402 F. Supp. 2d 171, 182 (D.D.C. 2005). And it includes USDS and its administrator, which is "established in the Executive Office of the President," 90 Fed. Reg. at 8441, as well as Joshua Fisher, who Plaintiffs seek to depose, and who is the Director of the Office of Administration "within the Executive Office of the President," Pls.' Mot. at 2. Importantly, in the *New Mexico* case, which also sought expedited discovery into the inner workings of DOGE, the court refused to allow the scope of that discovery to include depositions. *See New Mexico Order*, ECF No. 29 at 12 (holding that the court "will not permit Plaintiffs to notice depositions at this time" even though Plaintiffs had "agree[d] not to seek to

16

depose . . . Musk" and "recogniz[ing] that depositions impose a heavier burden than written discovery") (citing *In re Cheney*, 544 F.3d at 314).

The D.C. Circuit, in particular, has closely guarded these constitutional lines, and has regularly granted mandamus relief for far-reaching discovery requests like this one, where the plaintiffs have failed to exhaust other sources or establish a clear need for the specific information sought. *See, e.g.*, *Cheney*, 544 F.3d 311; Order, *In re United States*, No. 14-5146 (D.C. Cir. July 24, 2014) (per curiam) (staying deposition of Secretary of Agriculture); *In re U.S. Department of Education*, 25 F.4th at 701 ("Although district courts have occasionally ordered such depositions, circuit courts have issued writs of mandamus to stop them when asked to, generally finding that the circumstances before them were not extraordinary.") (collecting cases); *cf. In re Department of Commerce*, 139 S. Ct. 360 (2018) (No. 18A375) (staying deposition of Commerce Secretary). And the Supreme Court has ordered relief in cases where lower courts did not police the principle with sufficient vigor. *See, e.g.*, *In re Department of Commerce*, 139 S. Ct. 360 (2018) (No. 18A375) (staying deposition of Commerce Secretary); *In re Department of Commerce*, 139 S. Ct. 566 (2018) (No. 18-557) (treating petition for writ of mandamus as petition for writ of certiorari and granting petition).

As such, the Court should not order expedited discovery where discovery is not needed to resolve Defendants' forthcoming motion, especially where Plaintiffs seek discovery into the inner workings of the White House.

## II. If The Court Orders Expedited Discovery, Defendants Request A Stay Of That Order.

If the Court orders expedited discovery notwithstanding all of the above, the Government respectfully requests a stay of that order for at least fourteen days, so that it may consider seeking emergency appellate relief.

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' Motion for Expedited Discovery.

DATED: March 17, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS (D.C. Bar No. 988057)
Senior Trial Counsel
ANNA L. DEFFEBACH (D.C. Bar. No. 241346)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 305-0878
Facsimile: (202) 616-8470
Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*