## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-00164 (JMC) |
| | * | |
| DONALD J. TRUMP, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JERALD LENTINI, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-00166 (JMC) |
| | * | |
| DEPARTMENT OF GOVERNMENT EFFICIENCY, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-00167 (JMC) |
| | * | |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR EXPEDITED DISCOVERY

Defendants have a vision for this case, but in order for the case to go as planned, everything must go just as Defendants plan. In order for Defendants to prevail in this case, they need the Court to ignore the ample public record and focus only on Defendants' words. No information can be allowed to reach the Court which has not been carefully curated by Defendants to support their narrative. And most importantly for Defendants' plan, not only must the Court allow Defendants to dictate what information the Court receives, the Court must allow Defendants to dictate *when* the Court receives it.

Plaintiffs Jerald Lentini, Joshua Erlich, and National Security Counselors (collectively "*Lentini* Plaintiffs") also have a vision for this case and a litigation plan. However, in stark contrast to Defendants' plan, the *Lentini* Plaintiffs' plan requires the Court to review *all* the relevant information and reach its own conclusions based on a full and thorough understanding of *all* the evidence. This Motion serves to further their objectives.

In a case in which one side cannot keep its story straight between its arguments in court and its public statements, the choice is clear. In a case in which the only individuals who can definitively answer the most basic of questions about how one of the most powerful organizations in or around the federal Government is acting are the individuals allegedly making the decisions, the choice is clear. This is that case, and the choice is clear.

## ADDITIONAL BACKGROUND

The entire thrust of this Motion has been to get a definitive answer to one question: What *is* the Department of Government Efficiency ("DOGE")? On the one hand, every public statement made about the leadership of DOGE agrees that Elon Musk ("Musk") is in charge of DOGE. On the other hand, every time the Government is required to file a sworn declaration on the subject, Musk is a simple advisor with no role in DOGE. This case as a whole hinges on the

Court's ability to reconcile these two positions. Plaintiffs' forthcoming motion for a preliminary injunction hinges particularly on the Court's ability to determine the precise nature of Musk's interactions with the organization. Therefore, Plaintiffs include herein more recent examples of public statements by authoritative sources attesting to Musk's leadership role. First, the Court should consider the following examples of Congressional statements on the matter:

- U.S. Senate Majority Leader John Thune: "On his first day in office, President Trump issued an executive order establishing the U.S. Department of Government Efficiency (DOGE) Service to eliminate waste, identify fraud, modernize federal technology and software, and maximize government efficiency and productivity. He appointed Elon Musk to head this new agency, which did not require confirmation by the U.S. Senate." (Email from Thune to [redacted], attached as Ex. A.)[1]

- U.S. Member of Congress Mariannette Miller-Meeks: "On February 4th, 2025, the White House announced that Elon Musk had been granted special government employee status to serve as the de facto leader of DOGE." (Email from Miller-Meeks to [redacted], attached as Ex. B.)

- U.S. Member of Congress Troy Nehls: "Mr. Elon Musk is the head of DOGE, which is committee to exposing waste, fraud, and abuse within the federal government. . . . As the head of DOGE, Mr. Musk and his team will enhance

---

[1] Identifying information has been redacted from individual pieces of Congressional correspondence to protect the identities of the non-party individuals who provided them to the undersigned and avoid retaliation against those individuals. The undersigned is willing to provide the identifying information he has to the Court *ex parte* and *in camera* upon request.

government efficiency and ensure your hard-earned tax dollars are not wasted but used responsibly." (Ltr. from Nehls to [redacted], attached as Ex. C.)

- U.S. Member of Congress Mark Messmer: "As you know, President Donald Trump has appointed Elon Musk to head the Department of Government Efficiency in order to audit federal agencies and their financial records to cut back on wasteful government spending." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 12:58 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkj4ezflnf23 (last accessed Mar. 18, 2025) (including screenshot of email message).

- U.S. Senator Tom Cotton: "President Trump asked Elon Musk, the prominent entrepreneur and industrialist, to head DOGE and find waste and abuse in government spending. Mr. Musk is a 'special government employee,' a longstanding legal status in the federal workforce used by multiple presidents of both parties." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 2:07 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkjaa6swf523 (last accessed Mar. 18, 2025) (including screenshot of email message).

- U.S. Member of Congress Chuck Fleischmann: "Elon Musk, who holds a high-level security clearance, serves as the head of DOGE and leads this initiative to enhance government productivity." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 2:12 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkjaicrzd523 (last accessed Mar. 18, 2025) (including screenshot of email message).

- U.S. Member of Congress Marie Gluesenkamp Perez: "The Department of Government Efficiency (DOGE), led by Elon Musk, is a presidential advisory commission aimed at combating inefficiencies and wasteful spending in the federal government. As head of an advisory commission, Mr. Musk does not require confirmation by the U.S. Senate." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 2:22 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkjb2xlsa523 (last accessed Mar. 18, 2025) (including screenshot of email message).

- U.S. Member of Congress Mike Bost: "President Trump implemented DOGE as a presidential advisory commission to review areas of government waste and recommend cuts that will protect your taxpayer dollars. Many presidents have formed similar advisory commissions on topics ranging from Supreme Court reforms to combatting opioids. This commission, headed up by Elon Musk, offers a visionary approach towards tackling the bloated bureaucracy." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 2:37 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkjbvimgpn23 (last accessed Mar. 18, 2025) (including screenshot of email message).

- U.S. Senator John Kennedy: "As you know, President Trump picked Elon Musk to head the Department of Government Efficiency, also known as DOGE." Anna Bower (@annabower.bsky.social), BlueSky (Mar. 16, 2025 2:49 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3lkjck4avg523 (last accessed Mar. 18, 2025) (including screenshot of email message).

These statements were all made by U.S. Senators and Members of Congress who *support DOGE*. They serve as clear evidence that the prevailing view of DOGE's *allies* in Congress is that, regardless of whether they call it an office or a commission, they all agree that *Musk is in charge*.[2]

This sentiment is echoed in the statements of DOGE's allies elsewhere. On 6 March 2025, Missouri Attorney General Andrew Bailey wrote an open letter to DOGE requesting its assistance. In that letter, Mr. Bailey referred to Amy Gleason ("Gleason") as the "Acting Administrator" of DOGE—her official title—and referred to Musk as "Chair" of DOGE—a title traditionally reserved for advisory committees and boards. Anna Bower (@annabower.bsky.social), BlueSky (Mar. 6, 2025 7:57 PM), at https://bsky.app/profile/annabower.bsky.social/post/3ljqsh7gtgs2o (last accessed Mar. 18, 2025) (including screenshot of letter).

Finally, the *Lentini* Plaintiffs would be remiss if they failed to draw the Court's attention to Judge Chuang's opinion issued on 18 March 2025 in the case *J. Does 1-26 v. Musk*, which devotes numerous pages to the discussion of Musk's role vis-à-vis DOGE, ultimately concluding that Musk is in charge of DOGE and is directing it to take actions. No. 25-462, 2025 WL 840574, at *2-7, 10-11, 14, 17-18 (D. Md. Mar. 18, 2025). Because this opinion was issued as

---

[2] In fact, it has been widely reported that Musk has been inviting officials to call him on his cell phone to discuss DOGE. Annie Grayer, *et al.*, *Republicans push Musk to let Congress vote on DOGE cuts*, CNN (Mar. 5, 2025), *at* https://www.cnn.com/2025/03/05/politics/musk-doge-republicans/index.html (last accessed Mar. 19, 2025) ("Musk gave out his cell phone number during the closed-door meeting to GOP senators and told them he wants to work more closely with them."); Nikki McCann Ramirez & Asawin Suebsaeng, *Trump's cabinet sure seems pissed about Elon Musk*, Rolling Stone (Mar. 7, 2025), *available at* https://www.rollingstone.com/politics/politics-news/musk-spars-trump-cabinet-officials-1235291830/ (last accessed Mar. 19, 2025) (reporting that, in a confrontation with Transportation Secretary Sean Duffy, Musk "offer[ed] him his phone number").

this Reply was being drafted, Plaintiffs will not extract examples from it but will instead simply commend it to the Court's attention.

All of this evidence—and the evidence listed in Plaintiffs' Motion—stands in stark contrast to the claims made by the Government in this case and others that Musk has no formal relationship with the United States DOGE Service ("USDS"), which the Government also confusingly refers to as "DOGE." Judge Chuang specifically referred to one such claim from Joshua Fisher ("Fisher"), the Director of the White House Office of Administration, *id.* at *3, and Gleason submitted a declaration in another case on 14 March stating unequivocally: "Elon Musk does not work at USDS. I do not report to him and he does not report to me. To my knowledge, he is a Senior Advisor to the White House." Gleason Decl., Dkt. #20-2, ¶ 6 (filed Mar. 14, 2025), *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-511 (D.D.C.). Tellingly, while Gleason then proceeded to describe the operations of the USDS in significant detail, she failed to explain why Musk keeps taking credit for USDS's actions and why the President and other government officials keep referring to him as the head of DOGE.[3] It is *this* reason that expedited discovery is both necessary and warranted in this case, and nothing in Defendants' Opposition sufficiently refutes that need.

## ARGUMENT

Because nothing in Defendants' Opposition significantly detracts from the *Lentini* Plaintiffs' motion, they will simply respond to the most noteworthy contentions in roughly the order in which Defendants make them.

---

[3] Gleason's declaration also fails to explain how she is serving as the Acting USDS Administrator in the Executive Office of the President while simultaneously serving as an "Expert/Consultant" for the Department of Health and Human Services. *See* Appointment Aff., Dkt. #65-1 (filed Mar. 18, 2025) (confirming Gleason's HHS appointment), *AFL-CIO v. Dep't of Labor*, No. 25-339 (D.D.C.).

Defendants' first major line of attack involves their complaint that they "have [not] been able to litigate any of their motion to dismiss arguments." (Defs.' Opp'n Pls.' Mot. Expedited Discovery, Dkt. #28, at 5 (filed Mar. 17, 2025) [DOGE's Opp'n].) This complaint is repeated multiple times, but the most honest iteration of it is the first: "Defendants' Motion to Dismiss deadline has not yet come due." (*Id.* at 1.) In other words, Defendants are asking this Court to conclude that because they have not *had* to file a motion to dismiss yet, they have not been *able* to file one. Put more simply, they are claiming that the fact that their absolute deadline for filing a motion to dismiss is not until April—*at their request*—means that anything that happens before that deadline is premature because it is so prejudicial. But any harm from them not filing their motion to dismiss yet is entirely self-inflicted, because they could have filed one much earlier and could in fact file one tomorrow if they so chose. However, Defendants do not want to be hurried.[4]

What is most remarkable about this argument is that it is made in the same brief in which Defendants consistently attack the *Lentini* Plaintiffs for not filing this Motion *sooner*, or even for not seeking a Temporary Restraining Order ("TRO") or preliminary injunction *already*. (*See, e.g.*, *id.* at 1 ("Plaintiffs filed their Complaint eight weeks ago and have yet to seek any emergency relief.").) To Defendants, the *Lentini* Plaintiffs' delay in filing a motion is worthy of scorn, while their own delay in filing a motion is demonstrably reasonable because "it was not

---

[4] Additionally, Defendants make a deliberately false statement about scheduling in an attempt to cast aspersions at the *Lentini* Plaintiffs: "Although counsel for Plaintiffs expressed interest in negotiating a preliminary injunction motion briefing schedule the parties have not engaged in negotiations over such a schedule." (*Id.* at 11 n.3.) The *Lentini* Plaintiffs will correct this misstatement. When the undersigned proposed incorporating a preliminary motion into the briefing schedule the parties proposed to the Court, Defendants' counsel responded, "[W]e believe it is not necessary to include a separate schedule and are prepared to brief any PI motion on the default deadlines imposed by the local rules." Because the *Lentini* Plaintiffs were satisfied with this response, they agreed to the proposed schedule filed as Dkt. #27. It is unclear why Defendants have characterized this as "the parties have not engaged in negotiations."

due yet." However, the *Lentini* Plaintiffs' reason for not seeking a TRO or preliminary injunction previously—or requesting expedited discovery to support such a motion—is both banal and understandable. The *Lentini* Plaintiffs were willing to allow this case to take the normal course for the first several weeks while they learned more details about the DOGE organization, and they only changed their position when Defendants, led by Musk, commenced their campaign of destruction through the Executive Branch workforce while insisting in sworn declarations that Musk had nothing to do with DOGE. At that point the changing situation warranted greater urgency, and the *Lentini* Plaintiffs took more aggressive steps as soon as possible. This also answers Defendants' argument that the lack of a pending preliminary injunction motion is dispositive: the *Lentini* Plaintiffs simply do not wish to burden the Court with a preliminary injunction motion based solely on public reports—however voluminious—if they can help it, so they filed this Motion first.

      Defendants' next related argument focuses on the purported importance of their forthcoming motion to dismiss, but they grossly oversell what is a very basic argument they intend to make. Defendants argue that "Plaintiffs have failed to lead a legally valid [Federal Advisory Committee Act ("FACA")] claim" (*id.* at 6), but obscure the fact that the bulk of this forthcoming argument will simply focus on their claim that the advisory committee described by the *Lentini* Plaintiffs as DOGE "does not exist and has never operated." (*Id.* at 1; *see also id.* at 2 ("The premise for Plaintiffs' premature suit was refuted within hours, however, when the President's Executive Order . . . made clear that the Department of Government Efficiency is, in fact, a part of the government—not an advisory committee at all.").) This is *exactly* the contention that Plaintiffs' proposed discovery is supposed to explore, and Defendants' admission

that they intend to rely heavily on their own declarations to support this contention severely undercuts their objection to discovery into these questions.

Moreover, Defendants oversell the relevance of the governing case law. After listing a series of objections that they plan to raise in their motion to dismiss—each of which only addresses a few counts (*id.* at 7)—Defendants cite to two cases for the same premise: "It is well settled that discovery is generally considered inappropriate while a motion that *would be thoroughly dispositive of the claims in the Complaint* is pending." *Sibley v. U.S. Supreme Ct.*, 786 F. Supp. 2d 338, 346 (D.D.C. 2011) (emphasis added); *Chavous v. Dist. of Cola. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (same). However, once the Court discounts the self-serving declarations that Defendants are certain to rely on, just as Judge Chuang did, it will not be able to say that any of the arguments outlined in Defendants' Opposition (DOGE's Opp'n at 7) "would be thoroughly dispositive of the claims in the Complaint."

Defendants' next major argument attempts to mischaracterize the scope of the proposed depositions as "reaching a sitting President concerning his official duties" (*id.* at 13) and analogizing this case to "requiring the United States to produce vast amounts of potentially sensitive information . . . [which] would be squarely covered by the presidential communications privilege." (*Id.* at 14.) This is a bridge too far for Defendants. The *Lentini* Plaintiffs seek to depose three officials—two undeniably involved with DOGE and/or USDS and the third whose declaration about Musk's professional authorities and responsibilities keeps being cited by the Government in court—about matters *related to DOGE*, not related to any interactions or communications with President Trump or "the inner workings of the White House." (*Id.* at 17.) There are unlikely to be any topics of conversation which would arguably implicate the

presidential communications privilege, but if there are, that is a subject that is more properly broached during the depositions themselves. Furthermore, since the topics of the deposition will focus on *authorities* and *who did what*, there is little chance that they would delve into "their reasons for taking official actions." (*Id.* at 16.) In the context of the forthcoming preliminary injunction motion, the *Lentini* Plaintiffs do not have any significant interest in probing Musk, Gleason, and Fisher about *why* they made certain decisions; they are only interested in *who* made the decisions and *how* they were implemented.

Defendants' last substantive argument attempts to extend the traditional immunity of senior officials from deposition to Musk, Gleason, and Fisher, but that too overextends the relevant law. As the cases cited by Defendants show, the courts generally only concern themselves with depositions of the heads of agencies and the like. Gleason bears the title of Acting Administrator of DOGE but appears to wield significantly less authority, especially since she is being sent to another agency as a "consultant." Fisher is arguably the seniormost official the *Lentini* Plaintiffs wish to depose, but even he is not the equivalent of a head of a cabinet-level agency. As for Musk, give the Government's repeated insistence that he is not the head of any body and wields no official authority whatsoever, he is not covered by any such umbrella either.

Defendants end their Opposition with a request that any order for discovery be stayed for at least fourteen days "so that [they] may consider seeking emergency appellate relief." (*Id.* at 17.) Such a stay is unwarranted, especially when Defendants are continuing to allow Musk to wield DOGE like a chainsaw on the federal workforce. However, due to the realities of scheduling depositions on short notice, the *Lentini* Plaintiffs will agree not to conduct any depositions for seven days after the entrance of a favorable order. In the last month Defendants'

counsel have proven more than adept at seeking appellate review of any kind of decision within days; doing so within seven days would not prove a challenge.

Numerous courts have ordered pre-motion-to-dismiss discovery in the past month in numerous DOGE-related cases, and several other comparable motions are currently pending. The Court should follow the lead of those courts across the country and order Defendants to make Musk, Gleason, and Fisher available for deposition within twenty calendar days of the Order.

Date:   March 19, 2025

                                            Respectfully submitted,

                                             /s/ Kelly B. McClanahan
                                            Kelly B. McClanahan, Esq.
                                            D.C. Bar #984704
                                            National Security Counselors
                                            1451 Rockville Pike
                                            Suite 250
                                            Rockville, MD  20852
                                            501-301-4672
                                            240-681-2189 fax
                                            Kel@NationalSecurityLaw.org

                                            *Counsel for* Lentini *Plaintiffs*