# Morgan Lewis

**Jody C. Barillare**
Partner
+1.302.574.7294
jody.barillare@morganlewis.com

March 19, 2025

**VIA ECF**

Hon. Todd M. Hughes
U.S. District Court for the District of Delaware

Re:   *Arnold v. X Corp.*, No. 1:23-cv-528
      <u>Discovery Dispute re: Deposition of Elon Musk</u>

Your Honor:

Consistent with this Court's standing discovery order involving discovery disputes § (g)(iii) and instructions from chambers, Respondents X Corp., X Holdings Corp., and Elon Musk respectfully submit the following three-page letter outlining the issues in dispute and Respondents' position on those issues.

Respectfully submitted,

*/s/ Jody C. Barillare*

Jody C. Barillare (#5107)

**Morgan, Lewis & Bockius** LLP

1201 N. Market Street, Suite 2201
Wilmington, DE  19801          **T** +1.302.574.3000
United States                   **F** +1.302.574.3001

Ex. D

Page 1

Respondents submit this letter opposing Plaintiffs' request to depose Elon Musk and seeking a protective order. Plaintiffs cannot satisfy the requirements to justify an "apex deposition" of X Corp.'s highest-ranking corporate executive, who is also a high-ranking government official. They have not identified any relevant, unique, non-repetitive personal knowledge they seek from Musk. Plaintiffs' counsel already possesses a transcript of a full-day deposition of Musk covering the layoffs that are the subject of this case. And Plaintiffs' counsel will himself depose Musk in the next two weeks in related arbitrations about issues relevant to this case. In addition to showing no need for Mr. Musk to be deposed a third time, Plaintiffs have not completed less intrusive discovery, *e.g.*, written requests to Musk or depositions of lower-ranking officials. Their failure to exhaust non-apex discovery and their counsel's public statements suggest Plaintiffs do not seek to depose Musk to develop new, relevant facts but to harass him—an abuse of the discovery process. Respondents request that the Court issue a protective order precluding this cumulative apex deposition or, at the very least: (i) delay decision on the protective order until after the pending motion to dismiss and motions to quash and (ii) strictly limit any deposition to defined, necessary topics and two hours at most.

### I. Background

As the Court knows, this case is proceeding in parallel with other cases and arbitrations arising from the same reorganization and layoffs beginning in November 2022. Many former employees are represented by Lichten & Liss-Riordan, P.C. ("LLR"), which deposed Musk for a full day on May 9, 2024, covering all relevant topics here: including layoffs, severance, alleged promises and contracts, the Merger Agreement, and alleged discrimination. By agreement, that transcript is being used in all LLR cases, and has been provided to Plaintiffs' counsel Mr. Cohen for use in his cases.

Nevertheless, Plaintiffs' counsel sought to depose Musk for seven hours on the same topics in his clients' bellwether arbitrations. An arbitration panel permitted only a two-hour deposition limited to non-cumulative topics. *See* Exhibit A (Panel Order). Then, Plaintiffs served a seven-hour deposition notice on Musk in this litigation—effectively seeking 16 hours of testimony total. *See* Exhibit B (Notice).

This extraordinary request is in keeping with Mr. Cohen's public letter to Musk posted on Twitter on December 1, 2022, which addressed Musk as "Chief Twit," accused Musk of "breaking [his] word and screwing over [his] ex-employees," threatened personal liability, and stated: "deposing you will be a joy." Exhibit C (Cohen Letter) at 1-2.

Sure enough, this case named Musk as a defendant. Musk moved to dismiss, and Magistrate Judge Burke recommended dismissal of seven claims in full and an eighth in part, including because the complaint does "not plead that *Musk himself* made a false representation." ECF No. 121 at 8. Musk has objected to the aspect of the R&R recommending not to dismiss Plaintiffs' veil-piercing claim, ECF No. 134, and this Court has scheduled argument for next month. *See* ECF Nos. 141, 142.

Despite having access to two Musk depositions and not yet deposing *any* other X Corp. witnesses, Plaintiffs' counsel now seeks the "joy" of deposing Musk multiple times. Ex. C at 2.

### II. The Court Should Issue A Protective Order.

Under the apex doctrine, "courts have held that depositions of high-ranking corporate and governmental officers will be allowed only upon a showing that those officers have particularly relevant information to offer that is not equally available from other, less burdensome sources." *Brit. Telecomms. PLC v. IAC*, 2020 WL 1043974, at *8-9 (D. Del. 2020) (citing cases) (quashing deposition of CEO given alternative source of information); *United Therapeutics Corp. v. Liquida Techs., Inc.*, 2024 WL 4791943, at *2 (D. Del. 2024) (doctrine "generally bars the deposition of a high-ranking official" if the official has no unique first-hand knowledge *or* there is an alternative source). The apex doctrine "recognizes that depositions of high-level officers severely burden[] those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *Jessen v. Model N, Inc.*, 2024 WL 3371433, at *2 (D.N.J. 2024). The party seeking the deposition

Page 2

must show (1) that the executive has direct, unique, relevant knowledge and (2) the information cannot "be obtained from lower-level employees or through less burdensome means, such as interrogatories." *Ford Motor Co. v. Edgewood Props., Inc.*, 2011 WL 677331, at *2. (D.N.J. 2011); *United States v. Medtronic, Inc.*, 2018 WL 11145993, at *1 n.1 (E.D. Pa. 2018) (both factors "must be satisfied to justify the deposition of an apex witness"). Courts also consider whether the deposition is sought "for an improper purpose, such as harassment." *LivePerson, Inc. v. [24]7.Ai, Inc.*, 2018 WL 1319424, at *2 (N.D. Cal. 2018). In making these inquiries, courts in this circuit apply "a rebuttable presumption that a high-level official's deposition represents a significant [and undue] burden." *U.S. ex rel. Galmines v. Novartis Pharms. Corp.*, 2015 WL 4973626, at 82 (E.D. Pa. 2015).

Plaintiffs here cannot overcome the presumption, so the Court should not "depart from the general rule against permitting the [apex] deposition." *United Therapeutics*, 2024 WL 4791943, at *3.

**A. Claimants have not shown that Musk has unique, non-duplicative knowledge of relevant facts.** A party seeking an apex deposition first must show that the executive's testimony would not be "duplicative" of information the party already possesses. *Koken v. Lexington Ins. Co.*, 2005 WL 6051364, at *1 (E.D. Pa. 2005) (barring apex deposition as "duplicative, harassing, and unduly burdensome"). An apex deponent's knowledge must not only be relevant and firsthand, but "unique." *Medtronic*, 2018 WL 11145993, at *1 n.1. Any deposition here would be plainly duplicative because Plaintiffs possess a 377-page transcript of Musk's prior seven-hour deposition covering all potentially relevant information known to Musk. Plaintiffs' counsel also was granted leave to depose Musk for an additional two hours by a panel of three arbitrators in connection with employee layoff and severance-related issues. *See* Ex. A. No more testimony is needed.[1]

Plaintiffs have indicated they seek information from Musk to support a veil-piercing claim. A motion to dismiss that claim is currently pending before this court, with oral argument scheduled for April 2025. At the very least, the Court should wait until it resolves that motion before resolving the Musk deposition issue—since a dismissed claim can provide no basis for a third apex deposition. Even if not dismissed, there is no indication that Musk has *unique* knowledge regarding veil-piercing, which depends on whether the corporation is essentially "a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). It is patently absurd to contend that X Corp., which runs one of the most prominent social media platforms and is backed by some of the most sophisticated venture capital firms, is such a "sham entity designed to defraud investors and creditors." *Id.* In any event, the relevant factors concern the maintenance of separate corporate formalities and records, capitalization, commingling of assets, and so on, none of which is uniquely within Musk's knowledge. *E.g.*, *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-30 (D. Del. 2008).

Setting aside the veil-piercing claim, Plaintiffs' counsel has identified no relevant topic about which Musk has not already testified or that counsel could not discover elsewhere. That is reason enough to deny this apex deposition.[2]

**B. Plaintiffs have not completed less intrusive means of discovery, much less shown they cannot obtain needed information from other witnesses.** When the information being sought "could have been obtained from other available witnesses," or through interrogatories, plaintiffs "will not be permitted to depose [the] highest ranking executive[]." *Jessen*, 2024 WL 3371433, at *6 (quoting *Younes v. 7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. 2015)) (granting protective order); *Reif v. CNA*, 248 F.R.D. 448, 452-54 (E.D. Pa. 2008) (plaintiff "must demonstrate the information can only be obtained from" the CEO and must "first depose lower level employees" and show they "could not provide the necessary information"). Here, Plaintiffs are seeking to depose

---

[1] Even without reference to the apex doctrine, the deposition would be "unreasonably cumulative or duplicative," and the information "can be obtained from some other … less burdensome" source. Fed. R. Civ. P. 26(b)(2)(C)(i).

[2] Nor is Plaintiffs' counsel's claim that he would have deposed Musk better than LLR did persuasive. He has already been granted two additional hours to cure any alleged deficiencies. *See* Ex. A.

Page 3

X Corp.'s highest ranking official first—before they depose any lower-level employees, and before submitting interrogatories to Musk. They clearly have not exhausted other, less intrusive means of discovery.[3] And again, simply using the 9 hours of Musk deposition testimony they already have access to is clearly less intrusive than ordering another deposition. *See Reif*, 248 F.R.D. at 452 (citing case denying deposition where plaintiff already had copy of "prepared statement" from the apex witness).

And the presumed undue burden from a deposition is heightened because Musk is not only X Corp.'s (and other companies') highest executive, but he is a high-ranking government official. *Cf. Apple v. Samsung*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (weighing "a person's degree of 'apex-ness' in relation to these factors"). The White House has designated Musk a "special government employee" in charge of Establishing and Implementing the President's Department of Government Efficiency ("DOGE"). 90 FR 8441, https://tinyurl.com/26vey9vr. Such "high level government officials [must be] permitted to perform their official tasks without disruption" by depositions, given their "greater duties and time constraints than other witnesses." *Johnson v. Att'y Gen. of N.J.*, 2015 WL 4915611, at *3 (D.N.J. 2015). This rule raises Plaintiffs' bar under the apex doctrine, which they clearly have not met.

**C. There is palpable risk of harassment here.** Plaintiffs have not satisfied either requirement necessary to justify an apex deposition. Both requirements ultimately serve to deter depositions that would harass or unjustifiably burden executives and government officials. *See, e.g., In re Transpac. Passenger*, 2014 WL 939287, at *5 (N.D. Cal. 2014). All available evidence suggests that Plaintiffs seek to depose Musk for an improper purpose, which the Court should not indulge.

At the meet and confer, Plaintiffs' counsel would not agree to limit the topics of the deposition, no matter whether information is available elsewhere or whether *Musk already testified on a topic*. That is evidence of an intent to harass. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 n.3 (N.D. Cal. 2017). Counsel also indicated that he seeks to ask Musk about such irrelevant topics as DOGE employees. And Counsel failed to agree to a meaningful time limit, conceding his goal to circumvent the arbitration panel's 2-hour limit (Ex. A) to obtain a full additional day.

Moreover, counsel is a prolific Twitter user who has a personal axe to grind with Musk—which was profiled in the New York Times. *See* John Leland, *How a Profane Joke on Twitter Spawned a Legal Army*, N.Y. Times (May 26, 2024), https://tinyurl.com/3kvr4fxs ("[Mr. Cohen] blames Mr. Musk for what he considers the deterioration of a platform that had once allowed his group of square pegs to find one another and to thrive. 'In a very large sense, he broke our home,' Mr. Cohen said. 'So there would be a certain poetic justice,' he added, 'to get a victory for these clients.'"). And Mr. Cohen's public letter tweeted at Musk states a desire to depose Musk for the "joy" of it—an improper purpose. Ex. C at 2; *see* Cohen Dec. 1, 2022 Tweet, https://tinyurl.com/yx7mxuwt (suing Musk "[wi]ll be fun as hell"). It is difficult to imagine a case where the apex doctrine more clearly applies.

### III. Any Decision On This Deposition Should Come After Other Pending Decisions.

This deposition is not only premature because Plaintiffs have not exhausted other discovery, but it should await the Court's decision on (i) pending motions to quash third-party subpoenas and (ii) the motion to dismiss, which could make veil-piercing irrelevant and thus improper for discovery from anyone. There is no reason to rush to depose Musk before these decisions. *See* ECF No. 50.

### IV. Conclusion

Respondents respectfully request a protective order as discussed above.

---

[3] Plaintiffs may respond that they have sought depositions from certain third-party "Musk advisors" but their motions to quash are pending before this Court. At most, that shows the Court should resolve those motions *before* considering whether to order Musk's deposition. But that argument is also misdirection, given that Plaintiffs have not exhausted information-gathering from X Corp. employees. *See First Fid. Bancorp. v. Nat'l Union Fire Ins. Co.*, 1992 WL 46881, at *4 (E.D. Pa. 1992) (must depose other employees first).