**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JERALD LENTINI, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-00166-JMC *consolidated into* Case No. 1:25-cv-164 |
| DEPARTMENT OF GOVERNMENT EFFICIENCY, *et al.*, | |
| *Defendants*. | |
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-00167-JMC *consolidated into* Case No. 1:25-cv-164 |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

I.      Statutory Background ...................................................................................... 2

II.     This Litigation................................................................................................... 3

        A.      *Lentini* Action....................................................................................... 3

        B.      *APHA* Action ....................................................................................... 5

STANDARD OF REVIEW .......................................................................................... 6

ARGUMENT ............................................................................................................... 8

I.      Neither FACA nor the Declaratory Judgment Act provides a private right of action ......... 8

II.     Plaintiffs fail to establish a "clear and indisputable" right to relief and, therefore,
        have not demonstrated jurisdiction or stated a valid claim for mandamus...................... 10

        A.      Plaintiffs fail to allege that a de facto advisory committee called "DOGE"
                was established or utilized by the President or a federal agency. .......................11

        B.      Plaintiffs fail to allege that DOGE has a sufficient degree of formality to
                implicate FACA. .................................................................................. 14

        C.      Plaintiffs fail to allege that "DOGE" includes non-federal employees with
                a vote or veto over the group's conclusions............................................ 17

III.    Plaintiffs fail to allege final agency action or the existence of an advisory
        committee and have thus not stated a valid claim under the APA. .............................. 20

        A.      Non-agency defendants are improper defendants for APA claims. ...................... 21

        B.      Plaintiffs fail to allege reviewable final agency action. ................................ 22

        C.      Plaintiffs fail to adequately allege a violation of the APA for all the same
                reasons that their mandamus claims failed. ............................................ 24

IV.     Plaintiffs' claims are nonjusticiable and unconstitutionally impinge on the
        President's Article II powers............................................................................ 25

i

A.    FACA's fair balance and inappropriate influence provisions are not justiciable. ............................................................................................. 25

B.    Ruling in the Plaintiffs' favor would interfere with the President's Article II right to confidentially receive advice and information. ................................... 28

CONCLUSION ............................................................................................................ 31

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ........................................................................ 9

*Am. Chemistry Council, Inc. v. Nat'l Acad. of Scis.*,
  No. CV 23-2113 (JDB), 2024 WL 1141465 (D.D.C. Mar. 15, 2024) ........................ 9

*Am. Hosp. Ass'n v. Burwell*,
  812 F.3d 183 (D.C. Cir. 2016) ........................................................................ 10

*Am. Oversight v. Biden*,
  No. CV 20-00716 (RJL), 2021 WL 4355576 (D.D.C. Sept. 24, 2021) ............... 7, 8, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 7, 18

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, ("*AAPS*"),
  997 F.2d 898 (D.C. Cir. 1993) ............................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 7

*Bennett v. Spear*,
  520 U.S. 154 (1997) ..................................................................................... 23

*Byrd v. EPA*,
  174 F.3d 239 (D.C. Cir. 1999) ............................................................... 11, 12, 13

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ..................................................................................... 29

*Colo. Env't Coal. v. Wenker*,
  353 F.3d 1221 (10th Cir. 2004) ..................................................................... 27, 28

*Competitive Enter. Inst. v. Podesta*,
  643 F. Supp. 3d 121 ..................................................................................... 22

*CREW v. Leavitt*,
  577 F. Supp. 2d 427 (D.D.C. 2008) ................................................................. 17

*Ctr. for Arms Control & Non-Proliferation v. Pray*,
  531 F.3d 836 (D.C. Cir. 2008) .......................................................................... 8

*Ctr. for Biological Diversity v. Tidwell*,
  239 F. Supp. 3d 213 (D.D.C. 2017) .................................................................. 9

*Ctr. for Pol'y Analysis on Trade & Health v. Off. of U.S. Trade Representative*,
  540 F.3d 940 (9th Cir. 2008) ........................................................................... 26

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................................ 21

*Democracy Forward Found. v. White House Off. of Am. Innovation*,
  356 F. Supp. 3d 61 (D.D.C. 2019) .................................................................. 12

*Dennis v. United States*,
  339 U.S. 162 (1950) ........................................................................................ 12

*Doe v. Shalala*,
  862 F. Supp. 1421 (D. Md. 1994) ............................................................... 26, 27

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  944 F.3d 945 (D.C. Cir. 2019) .................................................................. 10, 20

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  464 F. Supp. 3d 247 (D.D.C. 2020) ............................................................... 8, 9

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*,
  466 F. Supp. 3d 100 (D.D.C. 2020) ................................................................ 22

*Fertilizer Inst. v. EPA*,
  938 F. Supp. 52 (D.D.C. 1996) ............................................................. 26, 27, 28

*Food & Water Watch v. Trump*,
  357 F. Supp. 3d 1 (D.D.C. 2018) ............................................................ *passim*

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ........................................................................................ 21

*Freedom Watch, Inc. v. Obama*,
  807 F. Supp. 2d 28 (D.D.C. 2011), *subsequent determination*, 859 F. Supp. 2d 169
  (D.D.C. 2012) .............................................................................................. 9, 21

*Grigsby Brandford & Co. v. United States*,
  869 F. Supp. 984 (D.D.C. 1994) ..................................................................... 16

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................................ 25

*Hooranian v. Anderson,*
    No. CV 10-6286-VBF MAN, 2011 WL 717158 (C.D. Cal. Feb. 4, 2011) .............................. 19

*In re Cheney,*
    406 F.3d 723 (D.C. Cir. 2005) ......................................................................8, 10, 11, 17

*Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n,*
    105 F.4th 627 (4th Cir. 2024) .............................................................................. 22

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ........................................................................................... 30

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.,*
    219 F. Supp. 2d 20 (D.D.C. 2002) ......................................................... 20, 22, 23, 24

*Jud. Watch, Inc. v. U.S. Dep't of Com.,*
    736 F. Supp. 2d 24 (D.D.C. 2010) ..................................................................... 8, 12

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
    726 F.3d 208 (D.C. Cir. 2013) .............................................................................. 22

*Kissinger v. Reps. Comm. for Freedom of the Press,*
    445 U.S. 136 (1980) ........................................................................................... 22

*L. Xia v. Tillerson,*
    865 F.3d 643 (D.C. Cir. 2017) .............................................................................. 15

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr,*
    496 F. Supp. 3d 116 (D.D.C. 2020) ......................................................................... 9

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ............................................................................................. 22

*Ord v. Dist. of Columbia,*
    587 F.3d 1136 (D.C. Cir. 2009) .............................................................................. 7

*Physicians for Soc. Resp. v. Wheeler,*
    359 F. Supp. 3d 27 (D.D.C. 2019), *rev'd on other grounds*, 956 F.3d 634
    (D.C. Cir. 2020) ................................................................................................ 27

*Pub. Citizen v. HHS*,
    795 F. Supp. 1212 (D.D.C. 1992) ......................................................................... 27

*Pub. Citizen v. U.S. Dep't of Just.,*
    491 U.S. 440 (1989) ...................................................................................... *passim*

*Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria* for *Food*,
   ("*Microbiological*"), 886 F.2d 419 (D.C. Cir. 1989) ............................................... 25, 26, 27, 28

*Renne v. Geary*,
   501 U.S. 312 (1991) ........................................................................................................ 6

*Ross v. United States*,
   460 F. Supp. 2d 139 (D.D.C. 2006) ............................................................................... 9

*Sculimbrene v. Reno*,
   158 F. Supp. 2d 26 (D.D.C. 2001) ............................................................................... 22

*Sec. Indus. & Fin. Mkts. Ass'n v. Commodity Futures Trading Comm'n*,
   67 F. Supp. 3d 373 (D.D.C. 2014) ................................................................................. 6

*Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico*,
   437 F. Supp. 3d 119 (D.P.R. 2020) .............................................................................. 19

*Sierra Club v. Jackson*,
   813 F. Supp. 2d 149 (D.D.C. 2011) ............................................................................... 6

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*,
   264 F. Supp. 3d 262 (D.D.C. 2017) ............................................................................... 7

*Trudeau v. Fed. Trade Comm'n*,
   456 F.3d 178 (D.C. Cir. 2006) ..................................................................................... 22

*United States v. Espy*,
   145 F.3d 1369 (D.C. Cir. 1998) ................................................................................... 21

*United States v. Nixon*,
   418 U.S. 683 (1974) ..................................................................................................... 29

*Van Beek v. AG-Credit Bonus Partners*,
   No. C05-475RJB, 2008 WL 1701738 (D. Idaho Apr. 9, 2008), *aff'd*, 316 F. App'x 554
   (9th Cir. 2008) ............................................................................................................. 19

*VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*,
   992 F.3d 1097 (D.C. Cir. 2021) ..................................................................................... 8

*Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ............................................................................... 7

*Zaidan v. Trump*,
   317 F. Supp. 3d 8 (D.D.C. 2018) ................................................................................. 21

**Constitutional Provisions**

U.S. Const. art. II .................................................................................................... 28

**Statutes**

5 U.S.C. § 704............................................................................................ 20, 22, 23

5 U.S.C. § 706 ............................................................................................................ 20

5 U.S.C. § 1001...............................................................................................11, 12, 16, 17

5 U.S.C. § 1002 ............................................................................................................ 2

5 U.S.C. § 1004.................................................................................................... 2, 25, 26, 27

5 U.S.C. § 1008 ............................................................................................................ 2

5 U.S.C. § 1009 ............................................................................................................ 2

5 U.S.C. § 1013 ............................................................................................................ 2

28 U.S.C. § 1331 ......................................................................................................... 9

28 U.S.C. § 1361 ......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 41 ........................................................................................................ 3

**Executive Materials**

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025)........................................ 12

**Other Authorities**

Michael J. Mongan, *Judicial Review Under the Federal Advisory Committee Act*,
    58 Stan. L. Rev. 895 (2005) .................................................................................... 29

## INTRODUCTION

The law requires certain essential elements to form an advisory committee subject to the Federal Advisory Committee Act ("FACA")—actual establishment or utilization, fixed membership, regular meetings, collective deliberation, and non-federal participation with vote or veto power. Plaintiffs fail to plead that what they call the Department of Government Efficiency ("DOGE") advisory committee exists, much less that it contains any of these essential elements. These claims are a plain mismatch, and this Court should thus dismiss for lack of jurisdiction and for failure to state a claim.

Plaintiffs hastily filed their now-consolidated suits on January 20, 2025 (the day of President Trump's inauguration), relying on pre-inauguration statements and speculation about what DOGE might become. But contrary to their speculation, President Trump that same day acted by executive order and converted the U.S. Digital Service into the U.S. DOGE Service (USDS), an entity housed within the Executive Office of the President. By the terms of the Executive Order, USDS is composed of only federal employees working with various agencies—precisely the kind of entity that FACA does not cover. As a result, neither set of Plaintiffs claims that USDS is subject to FACA.

Instead, Plaintiffs in both consolidated actions imagine a different entity called "DOGE" that they say is operating in the shadows and outside the government yet subject to FACA's requirements. But the plaintiffs fail to show on the face of their complaints that this separate entity exists or that it has the required elements of an advisory committee subject to FACA. Thus, Plaintiffs fail to establish jurisdiction or state a claim for mandamus relief. For the same reasons, Plaintiffs also fail to state a valid APA claim. Further, FACA's fair balance and inappropriate influence provisions are not justiciable, and Plaintiffs' claims would unconstitutionally impinge

on the President's Article II powers and duties. The complaints, in their entirety, should be dismissed.

## BACKGROUND

### I. Statutory Background

In 1972, Congress enacted FACA to address the growing cost and number of committees, boards, commissions, panels, and councils set up to advise the President and federal agencies. *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 453–54 (1989); 5 U.S.C. § 1002. As the Supreme Court observed, "FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals[.]" *Pub. Citizen*, 491 U.S. at 453.

To accomplish these goals, FACA imposes numerous requirements on the creation and operation of an advisory committee. Before an advisory committee can meet or take any action, it must (1) file a detailed charter either with the Administrator of the General Services Administration in the case of a committee reporting to the President or with the head of the agency to which it reports, and (2) designate a federal officer or employee to chair or attend each meeting of the advisory committee. 5 U.S.C. §§ 1008(c), 1009(e), 1013(b). An advisory committee must be "fairly balanced in terms of the points of view represented and the functions to be performed," and "not be inappropriately influenced by the appointing authority or by any special interest." 5 U.S.C. § 1004(b)(2), (3). Each such committee must (1) give advance notice in the Federal Register of any meeting; (2) hold all meetings open to the public; (3) keep detailed minutes of each meeting and copies of all reports received, issued, or approved by the advisory committee; and (4) make certain records available to the public for inspection and copying at a single location. 5 U.S.C. § 1009(a)–(c).

But Congress did not intend FACA "to cover every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Pub. Citizen.*, 491 U.S. at 453–54. Nor could Congress do this anyway, given the "serious separation-of-powers concerns inherent in legislation that imposes requirements on executive decision-making[.]" *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 10 (D.D.C. 2018). To avoid these potential constitutional problems, "courts interpret FACA narrowly." *Id.* "The executive may, of course, consult with private advisors or stakeholders without triggering FACA." *Id.*

## II.    This Litigation

On inauguration day, January 20, 2025, three sets of Plaintiffs sued, claiming that the "Department of Government Efficiency" or DOGE was subject to and violated FACA. *See Pub. Citizen Inc. v. Trump*, Case No. 1:25-cv-164 ("*Public Citizen Inc.*"), ECF No. 1; *Lentini v. DOGE*, Case No. 1:25-cv166 ("*Lentini*"), ECF No. 1; *Am. Pub. Health Ass'n v. OMB*, Case No. 1:25-cv-167 ("*APHA*"), ECF No. 1. The government moved to consolidate these three cases, *Pub. Citizen Inc.*, Mot. to Consolidate Cases, ECF No. 10, and this Court granted the motion. *Id.* at Min. Order on 2/18/2025. After consolidation, the *Public Citizen* Plaintiffs voluntarily dismissed their case. *Pub. Citizen Inc.*, Notice of Dismissal, ECF No. 21. This leaves only the *Lentini* action and the *APHA* action.[1]

### A.    *Lentini* Action

In February 2025, the *Lentini* Plaintiffs filed an amended complaint, naming as defendants the Office of Management and Budget ("OMB"), Office of Personnel Management ("OPM"), "DOGE", the Executive Office of the President, Elon Musk, Russell Vought in his official capacity, and President Donald Trump. *Lentini*, Amended Complaint ("Am. Coml."), ECF No. 10. They

---

[1] Because *Public Citizen* voluntarily dismissed its complaint before any response was due, *see* Fed. R. Civ. P. 41(a)(1)(A), it is not reflected in the caption of the consolidated action.

bring six causes of action under FACA, the APA, the Mandamus Act, the Declaratory Judgment Act, and the All Writs Act. *Id.* Four of their causes of action allege that "DOGE" is an advisory committee and seek mandamus relief to compel the defendants to (1) require "DOGE" to be viewpoint balanced and free from "inappropriate influence" from President Trump; (2) file an "advisory committee charter" for "DOGE"; (3) allow public notice of meetings and public access to the records of "DOGE"; and (4) designate a federal officer to serve as the "Designated Federal Officer" for "DOGE." *Id.* at ¶¶ 103–146. One cause of action seeks review under the APA, claiming that by allegedly failing to comply with FACA, Defendants are acting arbitrarily and capriciously and not in accordance with law. *Id.* at ¶¶ 147-156. The final cause of action seeks a declaratory judgment that "DOGE" is an advisory committee violating FACA. *Id.* at ¶¶ 157–166.

In support of their claims, the *Lentini* Plaintiffs allege that DOGE was established in November 2024 and that it continues to function in its original November 2024 form. *Id.* ¶ 7. The gravamen of their claims is that DOGE is an advisory committee that is separate and distinct from any entity in the federal government, including the United States DOGE Service and the United States DOGE Service Temporary Organization (collectively "USDS"). *Id.* ¶¶ 7, 107–108. The *Lentini* Plaintiffs claim that "DOGE" is led by Elon Musk and "operate[s] outside of" the federal government. *Id.* at ¶ 104.

The *Lentini* amended complaint largely focuses on speculation about DOGE that circulated during the transition period (November 2024 to early January 2025). *Id.* ¶¶ 1–83. The *Lentini* Plaintiffs allege that, in November 2024, then-President-Elect Trump "intended to appoint [Elon] Musk and . . . Vivek Ramaswamy to lead [DOGE]." *Id.* ¶ 32 (citation omitted). They also claim that during this time, Mr. Ramaswamy and Mr. Musk wrote that DOGE intended to work "closely" with OMB. *Id.* ¶¶ 35–36. The Plaintiffs also cite a tweet from attorney Mark Paoletta in which

he expressed excitement about working with DOGE if he became OMB General Counsel. *Id.* ¶ 42. The amended complaint also references a New York Times article from January 12, 2025, that reported that "DOGE is . . . expected to have an office in [OMB]." *Id.* ¶ 45 (citation omitted).

The amended complaint vaguely suggests that "numerous individuals," beyond Mr. Musk and Mr. Ramaswamy, were directly affiliated with DOGE during the transition period, but identify only a few by name, including Mark Andreessen, William McGinley, and Vinay Hiremath. *Id.* ¶ 40–57. Notably, the amended complaint fails to identify any actions or statements by these individuals in connection with DOGE on or after January 20, 2025. *Id.* ¶¶ 1–166. The *Lentini* Plaintiffs allege that some of the individual Plaintiffs sought appointments with DOGE but have not yet received a response. *Id.* ¶¶ 62–74.

Starting in paragraph 83, the *Lentini* Plaintiffs detail their short account of any post-inauguration activities. *Id.* ¶¶ 83–102. Almost all these allegations aim to link Mr. Musk to DOGE. *See id.* ¶¶ 90–97.

The *Lentini* Plaintiffs sought early discovery in this case, which Defendants opposed. Pls.' Mot. for Expedited Disc., ECF No. 20; Defs.' Opp'n to Pls.' Mot. for Expedited Disc., ECF No. 28. This Court denied Plaintiffs' request for early discovery, finding that the Court was "particularly hesitant to order the sort of unusual discovery Plaintiffs have requested . . . at such an early stage and before [the motion to dismiss] is resolved." Order at 4, ECF No. 31.

### B. *APHA* Action

The Plaintiffs in *APHA* sued OMB, the acting director of OMB in his official capacity, and DOGE. *APHA*, Complaint ("Compl.") ¶¶ 20–22, ECF No. 1. They assert three causes of action under the APA and one cause of action under the Mandamus Act. *Id.* ¶¶ 109–128. They claim that the agency Defendants' failure to comply with FACA constitutes "final agency action" that is arbitrary and capricious and not in accordance with the law in violation of the APA. *Id.* ¶ 122.

And they seek through mandamus an order compelling DOGE to comply with FACA. *Id.* ¶¶ 123–128.

The *APHA* Plaintiffs have not updated their complaint since filing suit, meaning that their allegations focus entirely on events before inauguration. *See id.* ¶¶ 1–128. Like the *Lentini* amended complaint, the *APHA* complaint largely describes ideas about DOGE that circulated during the transition period. *Id.*

The *APHA* complaint describes DOGE as a "de facto advisory committee" that operates in the "shadow[s]" and "outside the government." *Id.* ¶¶ 3, 9, 22, 44. They claim that DOGE is led by unelected billionaires that communicate "in secret." *Id.* ¶¶ 3, 9. To support this characterization, the *APHA* Plaintiffs note that then-President-elect Trump considered tapping Elon Musk and Vivek Ramaswamy to lead DOGE's efforts. *Id.* ¶ 6, 46. They also list several individuals, including William McGinley, Brad Smith, and Steve Davis, who were allegedly linked in some way to the concept of DOGE before January 20, 2025. *Id.* ¶¶ 47–53.

## STANDARD OF REVIEW

Defendants move to dismiss both cases for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

"On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction," *Sierra Club v. Jackson*, 813 F. Supp. 2d 149, 154 (D.D.C. 2011), and a court should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted). At the same time, the Court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 398–99 (D.D.C. 2014) (quoting

*Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)). But the Court "may consider documents outside the pleadings to assure itself that it has jurisdiction." *Id.* (citation omitted). If the Court's jurisdiction "does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* (citation omitted).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" and rise above speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted). A court may also consider judicially noticeable documents or facts without converting the motion to dismiss into a motion for summary judgment. *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 264 (D.D.C. 2017).

Establishing mandamus jurisdiction requires a court to scrutinize the sufficiency of the pleadings, as well as the availability of an alternative remedy. At least one district court in this circuit has dismissed a FACA suit because the plaintiff's deficient pleadings precluded them from establishing mandamus jurisdiction. *See Am. Oversight v. Biden*, No. CV 20-00716 (RJL), 2021 WL 4355576, at *5–7 (D.D.C. Sept. 24, 2021). And another court in this circuit similarly dismissed a FACA suit for lack of jurisdiction because the plaintiffs failed to establish the necessary criteria for an advisory committee. *See Food & Water Watch*, 357 F. Supp. 3d at 10–16.

7

This precedent indicates that, though the merits and jurisdiction may merge in the mandamus context, the inquiry ultimately remains jurisdictional. In the end, because Plaintiffs have failed to establish on the face of their complaints the existence of an advisory committee subject to FACA, the Court can dismiss the mandamus claims on either jurisdictional grounds or failure to state a claim grounds, as Defendants are moving under both Rule 12(b)(1) and Rule 12(b)(6).

Claims based on the purported existence of a committee subject to FACA, particularly those involving the President, are routinely resolved based on the adequacy of the pleadings, *i.e.*, without discovery and at the motion to dismiss stage. *See, e.g., In re Cheney*, 406 F.3d 723, 730 (D.C. Cir. 2005) (en banc) (judgment for defendant appropriate based on declaration attached to papers; and reversing district court order directing discovery); *Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 838–39 (D.C. Cir. 2008) (affirming government's motion to dismiss on FOIA claim on basis that commission was exempt from FACA); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 464 F. Supp. 3d 247 (D.D.C. 2020) (granting motion to dismiss and dismissing mandamus claim against presidential advisory commission); *Am. Oversight v. Biden*, No. CV 20-00716 (RJL), 2021 WL 4355576, at *9 (D.D.C. Sept. 24, 2021) (granting motion to dismiss FACA claims); *Food & Water Watch*, 357 F. Supp. 3d 1 (D.D.C. 2018) (granting motion to dismiss and denying motion to compel discovery); *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 736 F. Supp. 2d 24 (D.D.C. 2010) (granting motion to dismiss on basis that FACA did not apply to council in question); *but see VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097 (D.C. Cir. 2021) (reversing order granting motion to dismiss FACA case).

## ARGUMENT

### I.    Neither FACA nor the Declaratory Judgment Act provides a private right of action.

Plaintiffs bring claims under FACA, the Mandamus Act, the APA, the All Writs Act, and the Declaratory Judgment Act. But there is consensus in this district that "FACA does not supply

an independent cause of action and therefore does not establish the Court's subject matter jurisdiction." *Am. Chemistry Council, Inc. v. Nat'l Acad. of Scis*., No. CV 23-2113 (JDB), 2024 WL 1141465, at *5 (D.D.C. Mar. 15, 2024) (citing *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 464 F. Supp. 3d 247, 265 (D.D.C. 2020), and *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 220–21 (D.D.C. 2017)); *see also Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32 (D.D.C. 2011), *subsequent determination*, 859 F. Supp. 2d 169 (D.D.C. 2012). Similarly, Plaintiffs' claims under the Declaratory Judgment Act or the All Writs Act likewise do not independently establish the Court's jurisdiction, and those claims should be dismissed for lack of jurisdiction. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." (cleaned up)); *Ross v. United States*, 460 F. Supp. 2d 139, 151 (D.D.C. 2006) ("It is well-settled that 'the [All Writs] Act itself is not a grant of jurisdiction.'").

Therefore, a Court may review a FACA claim only through another jurisdiction-conferring statute, "typically, the Mandamus Act, 28 U.S.C. § 1361, or the federal question statute, *id.* § 1331, the latter of which is satisfied when a party brings an APA claim against a federal agency." *Am. Chemistry Council, Inc*., 2024 WL 1141465, at *5; *See also Dunlap*, 464 F. Supp. 3d at 265; *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 125–26 (D.D.C. 2020). Thus, unless Plaintiffs can establish jurisdiction through the APA or the Mandamus Act, all of their claims must be dismissed. As described below, Plaintiffs fail to establish jurisdiction for mandamus relief or the APA. And in any event, Plaintiffs have failed to establish the existence of an advisory committee at all, meaning that all their claims should be dismissed for failure to state a claim.

## II.    Plaintiffs fail to establish a "clear and indisputable" right to relief and, therefore, have not demonstrated jurisdiction or stated a valid claim for mandamus.

Plaintiffs in both actions bring a total of five mandamus claims.  Mandamus relief is "a drastic and extraordinary remedy reserved for really extraordinary causes."  *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 949 (D.C. Cir. 2019) (citation omitted).  "[T]o show entitlement to mandamus, [the Plaintiffs] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate remedy exists."  *Id.* (citation omitted).  "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  These requirements are also narrowly defined.  *See In re Cheney*, 406 F.3d at 727–29, 829 (en banc).

To begin, Plaintiffs in both actions are claiming that "DOGE" is an advisory committee that is operating in secret and outside the federal government.  *Lentini*, Am. Compl. ¶¶ ¶¶ 7, 107–108; *APHA*, Compl. ¶¶ 22.  In essence, both sets of Plaintiffs claim that what they refer to as DOGE is a "de facto" advisory committee, rather than one formally established or utilized by the President or an agency.  But a "de facto" advisory committee is "at a minimum . . . difficult to prove," *Food & Water Watch*, 357 F.3d at 11, and any finding that one exists with respect to any group of people that advises the President would be constitutionally dubious, *see infra* Part IV.  The D.C. Circuit has also found that "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch."  *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"), 997 F.2d 898, 914 (D.C. Cir. 1993).  Thus, in addition to establishing the strict requirements for mandamus relief, Plaintiffs here face an even higher hurdle in attempting to establish the existence of a de facto advisory committee in this context.  They do not come close to clearing that hurdle.

10

To determine whether Plaintiffs have a clear and indisputable right to relief, Plaintiffs need to first establish that a de facto advisory committee called DOGE exists and meets all the criteria for an advisory committee.  In this circuit, there are at least three necessary criteria a group must satisfy before FACA applies: (1) the committee must be "established or utilized" by the President or an agency, *Food & Water Watch*, 357 F. Supp. 3d at 10; (2) the committee must have a sufficient degree of formality that includes an organized structure, a fixed membership, and a unified approach to providing advice, *AAPS*, 997 F.2d at 914; and (3) the committee must include non-federal employees with a vote or a veto over the committee's conclusions, *In re Cheney*, 406 F.3d at 728 (en banc).

Plaintiffs in both actions have not pled that *any* of these criteria exist.

### A. Plaintiffs fail to allege that a de facto advisory committee called "DOGE" was established or utilized by the President or a federal agency.

FACA defines an advisory committee as a committee "established or utilized" by the President or by one or more federal agencies.  5 U.S.C. § 1001(2)(A).  But FACA exempts from this definition any group comprised entirely of federal employees or officers.  *Id.* at § 1001(2)(B)(i).  And in addition to this exemption, courts "narrowly" interpret the words "established or utilized."  *Food & Water Watch*, 357 F. Supp. 3d at 10 (citation omitted); *see also Pub. Citizen*, 491 U.S. at 452–53, 463 (rejecting a "literalistic reading" of the terms "establish" and "utilize" because Congress could not have intended FACA to apply "to any group of two or more persons, or at least any formal organization, from which the President or an Executive agency seeks advice").  A committee is "established" when it has been "actually formed" by the executive or agency (and not by some other entity).  *Byrd v. EPA*, 174 F.3d 239, 245 (D.C. Cir. 1999).  And a committee is "utilized" if the executive or agency exercises "strict" and "actual" management

and control over the group's membership and mission.  *Id.*; *Food & Water Watch*, 357 F. Supp. 3d at 10; *Jud. Watch*, 736 F. Supp. 2d at 32.

Plaintiffs in both consolidated actions fail to allege that a de facto advisory committee called "DOGE," allegedly operating outside of the federal government, has been "established" or "utilized" by the President or any federal agency.  Their claims rest on speculation and outdated assumptions rather than relevant facts.

Contrary to the speculation that circulated pre-inauguration, on January 20, 2025, President Trump by executive order formally converted the U.S. Digital Service into the U.S. DOGE Service ("USDS")—an entity that is now housed within the Executive Office of the President.  90 Fed. Reg. 8441, §§ 3(a), 4 ("the EO").[2]  USDS is charged with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems."  *Id.*  By the terms of the Executive Order, the USDS is composed entirely of federal "employees" who are either hired or assigned to work within various agencies.  *Id.* § 3(c).  USDS's structure is incompatible with the definition of an advisory committee under FACA, which does not apply to a group of federal employees.  *See* 5 U.S.C. § 1001(2)(B).  To get around this reality, Plaintiffs in both actions do not contend that USDS is an advisory committee.  Instead, they attempt to conjure a separate entity—a group called "DOGE" operating outside the government—that they say has been established or utilized by the current administration.  *See Lentini*, Am. Compl. ¶¶ 7, 99–102 (alleging that "DOGE" is operating outside the government and separate from USDS); *APHA*, Compl. ¶¶ 3, 44 (claiming that DOGE operates

---

[2] The Court can take judicial notice of facts in Executive Orders.  *See Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 69 n.6 (D.D.C. 2019); *Dennis v. United States*, 339 U.S. 162, 169 (1950) (explaining that the Court could "[o]f course" take notice of a particular Executive Order relevant to the case).

"outside [the] government" under a "shroud of secrecy"). But neither of the operative complaints provides any factual basis for such a claim.

The *APHA* complaint is made up of wholly irrelevant allegations about then-President-elect Trump's transition period. *See APHA*, Compl. ¶¶ 1–98. The complaint contains no allegations after January 20, 2025, meaning they rely completely on outdated theories about what DOGE *might* have become rather than what it actually is. Allegations predating President Trump's time in office are facially invalid, because FACA only applies to advisory committees established or utilized by a sitting President or a federal agency, not to groups that may (or may not) have existed for the benefit of a President-Elect. The *APHA* Plaintiffs set forth no facts showing that President Trump, while in office, or any Executive Branch agency "actually formed" or exercised management or control over an advisory committee operating outside the government. Thus, the *APHA* complaint facially fails to establish the first necessary criterion under FACA. *See Byrd*, 174 F.3d at 245.

The *Lentini* Plaintiff, for their part, did amend their complaint to include some allegations post January 20, 2025. *See Lentini*, Am. Compl. ¶¶ 83–102. But those allegations are cursory and irrelevant. Their post-inauguration allegations primarily consist of posts on X (formerly Twitter) in which Mr. Musk purportedly takes credit for the Trump administration's efforts to reduce the size and cost of government. *Id*. Even if true, these allegations do not show that an advisory committee was ever established or utilized, as Mr. Musk alone cannot constitute a one-man advisory committee. *See AAPS*, 997 F.2d at 911, 913 (indicating that an advisory committee must include a group of people). Notably, in their post-inauguration allegations, Plaintiffs fail to identify any other individual besides Mr. Musk who is allegedly affiliated with this supposed advisory

committee that Plaintiffs claim was established or utilized post-inauguration. *See Lentini*, Am. Compl. ¶¶ 83–102.

In sum, neither set of plaintiffs can demonstrate on the face of their complaint that an advisory committee operating outside the government has ever been established or utilized by President Trump or one of his executive agencies. Their FACA claims rest on speculation and outdated pre-inauguration allegations. That is a far cry from alleging a clear and indisputable right to relief. On this basis alone, this Court should dismiss all the mandamus claims.

### B. Plaintiffs fail to allege that DOGE has a sufficient degree of formality to implicate FACA.

Even assuming *arguendo* that whatever Plaintiffs mean by "DOGE" was not wholly comprised of federal employees, Plaintiffs still fail to allege that it has a sufficient degree of formality for FACA to apply. To implicate FACA, an advisory group must have an "organized structure," "a fixed membership," and provide advice as a collective body rather than as a collection of individuals. *AAPS*, 997 F.2d at 913–14; *Food & Water Watch*, 357 F. Supp. 3d at 11. In short, a group must have a sufficient degree of "formality" for FACA to apply. *AAPS*, 997 F.2d at 914.

This circuit has recognized the degree of formality as a "continuum." *Id.* at 915. "At one end one can visualize a formal group of a limited number of private citizens who are brought together to give publicized advice as a group." *Id.* These "would seem to be covered by the statute." *Id.* "At the other end of the continuum is an unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with one each other." *Id.* That type of arrangement "does not trigger FACA." *Id.*

14

Both sets of Plaintiffs fail to plead any of the requisites of formality and structure. Their allegations, at best, describe informal discussions and an uncertain mix of people tied to a pre-inauguration concept. The law requires more, which Plaintiffs fail to provide.

Starting with *Lentini*, the Plaintiffs there claim that "a group of people having an internal conversation within the White House . . . trying to be able to drive a messaging piece led by a person who is not in charge of the relevant government office[3] is an advisory committee subject to the requirements of FACA." *Lentini*, Am. Compl. ¶ 98 (cleaned up) (ellipsis in original). But that is legally wrong. The Supreme Court has specifically admonished that FACA does not apply to "every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Pub. Citizen*, 491 U.S. at 453–54. For their amended complaint to survive a motion to dismiss, the *Lentini* Plaintiffs at the very least needed to allege facts showing that "DOGE" is a structured, fixed body that meets semi-regularly and that deliberates and advises as a unit. They do not allege facts showing close to any of this.

The *Lentini* Plaintiffs plead no specific facts showing that formal, semi-regular DOGE meetings have ever been held. They fleetingly mention a meeting only once, in a conclusory and vague statement that "DOGE . . . meets and intends to meet again." *See Lentini*, Am. Compl. ¶ 143. That kind of conclusory statement is insufficient to survive a motion to dismiss. *See L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017) (To survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Lentini* Plaintiffs also identify no set membership. They list a few names—Musk, Ramaswamy, Andreessen, and McGinley—but do not allege any facts showing that these

---

[3] It appears that the USDS is the "relevant government office" that Plaintiffs are referring to here.

individuals ever met together, engaged in collective deliberation, or advised as a unified group. *See Lentini*, Am. Compl. ¶ 40–57.

Turning to the *APHA* complaint, these Plaintiffs claim that, before inauguration, a group they call DOGE began "meeting with staffers at more than a dozen federal agencies." *APHA*, Compl. ¶ 70 (citation omitted). They also name individuals, beyond Musk and Ramaswamy, who were allegedly associated with the idea of DOGE theorized before President Trump's inauguration. *Id.* ¶¶ 46–54 (naming Williams McGinley, Katie Miller, Steve Davis, and Brad Smith). Even if these allegations are true, they do not establish the existence of an advisory committee for at least two reasons.

First, these pre-inauguration allegations are irrelevant.[4] At most, these allegations indicate that a group may have provided advice to a president-elect. But what matters for purposes of FACA is conduct during a President's actual term in office, as FACA does not apply to a group advising a president-elect. *See* 5 U.S.C. § 1001(2)(A).

Second, even if these pre-inauguration meetings had occurred during President Trump's term in office (which they did not) or if Plaintiffs are attempting to claim that then-President Biden and his agencies were seeking advice from DOGE, these allegations still do not show the existence of an advisory committee. The *APHA* Plaintiffs fail to plead that the named individuals ever met together as a group, ever created collaborative work product, or ever were tasked with providing advice as a unified group. *See Grigsby Brandford & Co. v. United States*, 869 F. Supp. 984, 1002 (D.D.C. 1994) ("ad hoc, unstructured meeting[s] [are] specifically exempted from FACA's

---

[4] As stated earlier, the *APHA* Plaintiffs filed their still unamended complaint on inauguration day, essentially before President Trump had done anything, which underscores the premature nature of their whole case. It seems that Plaintiffs here were so eager to challenge what they speculated might become an advisory committee, but did not wait even a single day to see if the facts bore out their speculation.

ambit"); *CREW v. Leavitt*, 577 F. Supp. 2d 427, 432 (D.D.C. 2008) (group is not an advisory committee subject to FACA when "no group report or other collaborative work product," "there were only two meetings," and "it is not clear that there was any overlap in membership of the groups that attended the meetings").

In sum, both Plaintiffs fail on the second essential criterion of a true FACA. The basic element of structure is simply missing from the face of their complaints. This is another reason that this Court should dismiss all the mandamus claims from both consolidated actions.

### C. Plaintiffs fail to allege that "DOGE" includes non-federal employees with a vote or veto over the group's conclusions.

As discussed above, FACA does not apply to groups composed only of federal officials or employees. 5 U.S.C. § 1001(2)(B)(i). When determining whether a committee is composed of any non-federal employees, a non-federal employee must have a "vote in or, if the committee acts by consensus, a veto over the committee's decisions." *In re Cheney*, 406 F.3d at 728 (en banc). "[P]articipation in committee meetings or activities, even influential participation, . . . [is] not enough to make someone a member of the committee." *Id.*

The D.C. Circuit has made clear that "[s]eparation-of-powers concerns strongly support this interpretation of FACA," at least with respect to Presidential advice, as "[i]n making decision on personnel and policy, and in formulating legislative proposals, the President must be free to seek confidential information from many sources, both inside the government and outside." *Cheney*, 406 F.3d at 728 (citations omitted); *see also id.* ("In light of the severe separation-of-powers problems in applying FACA on the basis that private parties participated in, or influenced, or were otherwise involved with a committee in the Executive Office of the President, we must construe the statute strictly.").

Here, for at least two independent reasons, the operative complaints in both cases fail to show that any non-federal employee has ever held a vote or veto over DOGE's actions.

First, as outlined above in Part II.B., neither set of Plaintiffs pleads that regular "DOGE" meetings or discussions ever took place among a set group of people. Nor do they show that a group ever rendered collective advice to President Trump or one of his agencies. Without that, they cannot establish that any non-federal employee ever voted or vetoed anything, because their complaints do not even establish that a fixed collection of individuals ever specifically did anything. So, even if the Plaintiffs name individuals who are allegedly not federal employees or officers, they fail to show that any of these individuals wielded a vote or veto over DOGE's actions.

Second, both sets of Plaintiffs focus much of their pleadings on Elon Musk, claiming he is an influential component of what they call DOGE. *See, e.g.*, *Lentini*, Am. Compl. ¶¶ 90–97; *APHA*, Compl. ¶¶ 43, 46, 57. Even if Mr. Musk were part of whatever they believe DOGE to be, neither set of Plaintiffs pleads plausible facts showing that Mr. Musk is not a federal employee as of January 20, 2025. The *APHA* Plaintiffs allege that Elon Musk is a "private citizen." *APHA*, Compl. ¶ 46. But their unamended complaint and allegations are outdated and not facially plausible, as it was filed the day of President Trump's inauguration. Absent a crystal ball, Plaintiffs could not have plausibly known before or on inauguration day who would or would not be a federal employee under President Trump's administration. Thus, this pre-inauguration allegation cannot be facially credited. *See Iqbal*, 556 U.S. at 678 (holding that allegations in a complaint must be facially plausible to survive a motion to dismiss, and they are facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference"). On the other hand, the *Lentini* Plaintiffs seem to concede that Elon Musk is a federal employee or officer: they cite an

article in their amended complaint indicating that Elon Musk has a "job" at the White House and has a "White House access badge as of January 20." *Lentini*, Am. Compl. ¶ 95.

And as a factual matter, Elon Musk is a federal employee or officer, a fact of which this Court can take judicial notice. *See Van Beek v. AG-Credit Bonus Partners*, No. C05-475RJB, 2008 WL 1701738, at *2 n.1 (D. Idaho Apr. 9, 2008) (finding that "[t]he court can take judicial notice of . . . federal employee status based upon on Evidence Rule 201"), *aff'd*, 316 F. App'x 554 (9th Cir. 2008); *Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico*, 437 F. Supp. 3d 119, 126 n.2 (D.P.R. 2020) (taking "judicial notice of the fact that the State Plant Health Director for Puerto Rico is a federal employee"); *Hooranian v. Anderson*, No. CV 10-6286-VBF MAN, 2011 WL 717158, at *3 n.2 (C.D. Cal. Feb. 4, 2011) ("Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the fact that . . . both men are federal employees."). Mr. Musk is a senior advisor to the President. *See* Ex. A (Feb. 17, 2025 Declaration of Joshua Fisher, *New Mexico v. Elon Musk*, Case No. 1:25-cv-429 (D.D.C.), ECF No. 24-1 ("Fisher Decl.")). That position qualifies him as a federal employee or officer for purposes of FACA. *See AAPS*, 997 F.2d at 903–4, 909, 915 (holding that the meaning of "officer or employee" as used in FACA is construed in light of the statute's purpose and holding that FACA was not intended to apply to "communications with the President" or "to discussions between his *senior advisers*" (emphasis added)). Thus, the fact that Mr. Musk, acting as a federal employee, allegedly exerted influence over DOGE does not help Plaintiffs plead a valid FACA violation.

Plaintiffs' failure to plead that a non-federal employee wielded a vote or veto over DOGE's decisions is yet a third fatal deficiency in their efforts to establish jurisdiction or to state a claim under FACA.

An additional consideration is the interplay between mandamus and APA claims. Both require Plaintiffs to demonstrate the absence of an adequate alternative remedy. *See Dunlap*, 944 F.3d at 949; 5 U.S.C. § 704. As such, the two are mutually exclusive of each other. Here, because Plaintiffs claim that the agency Defendants are subject to the APA, they necessarily acknowledge the existence of an alternative remedy. This, in turn, precludes the availability of mandamus relief against the agency Defendants.

In sum, Plaintiffs have failed to establish on the face of their operative complaints that what they refer to as "DOGE" meets any of the necessary criteria for an advisory committee subject to FACA. This Court should thus dismiss for lack of jurisdiction and for failure to state a claim.

## III. Plaintiffs fail to allege final agency action or the existence of an advisory committee and have thus not stated a valid claim under the APA.

Plaintiffs in both actions bring APA claims and allege that by failing to comply with FACA, Defendants have acted arbitrarily and capriciously, not in accordance with law, and without observation of procedure required by law, in violation of the APA. *See* 5 U.S.C. § 706(2)(A), (D) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . (D) without observance of procedure required by law").

Before a Court can determine whether a defendant has violated the APA, it must find that two prerequisites are met: (1) the APA claims are brought against an agency or an agency official, and (2) there is final agency action being challenged. *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 34–41 (D.D.C. 2002).

Here, Plaintiffs in both cases have improperly named non-agency defendants for APA claims, and they have also failed to establish final agency action. But as outlined above in Part II, Plaintiffs have failed to adequately allege that a de facto advisory committee called DOGE exists

and meets the criteria for an advisory committee.  Thus, even if this Court were to reach the merits

of Plaintiffs' APA claims, they fail and should be dismissed.

### A.  Non-agency defendants are improper defendants for APA claims.

In addition to naming certain agencies and agency heads as Defendants, Plaintiffs also

name as Defendants: the Executive Office of the President, Donald Trump, Elon Musk, and DOGE.

*See Lentini*, Am. Compl. ¶¶ 10, 11, 14; *APHA*, Compl. ¶ 22.  But those Defendants are not subject

to suit under the APA.

- **The Executive Office of the President.**  The Executive of the President, as a whole, is not

an agency under the APA.  *See United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998) ("[I]t

has never been thought that the whole Executive Office of the President could be considered a

discrete agency."); *Am. Oversight*, 2021 WL 4355576, at *6 ("[O]ur Circuit has rejected the claim

that the Executive Office of the President, as such, is an agency under the APA.").  Thus, the

Executive Office of the President, as a whole, is an improper defendant for purposes of APA

review and should be dismissed with respect to Plaintiffs' APA claims.

- **President Donald Trump.**  Similarly, the President is not an agency subject to APA review

and should be dismissed.  *See Dalton v. Specter*, 511 U.S. 462, 467–68 (1994) ("[T]he APA does

not apply to the President."); *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992); *Zaidan v.

Trump*, 317 F. Supp. 3d 8, 22 (D.D.C. 2018) ("[T]he President is not an agency within the meaning

of the APA.").

- **DOGE.**  Both sets of Plaintiffs claim that "DOGE" is an advisory committee subject to

FACA.  In so doing, they must also concede that whatever Plaintiffs mean by DOGE, it is not an

agency subject to the APA.  *See Freedom Watch*, 807 F. Supp. 2d at 33 (citing a long list of cases

for the proposition that "[a]n entity cannot be at once both an advisory committee and an agency");

*but see Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 119 (D.D.C. 2020) (holding that a "Commission" could be both an agency under FOIA and an advisory committee subject to FACA).

- **Elon Musk.** Elon Musk is a senior advisor to President Trump who sits organizationally within the White House Office.  *See* Ex. A (Fisher Decl.).  And in the FOIA context, the Supreme Court has held that "staff or units in the Executive Office whose sole function is to advise and assist the President are not included within the term agency."  *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (citation omitted); *see also Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 225 (D.C. Cir. 2013); *Sculimbrene v. Reno*, 158 F. Supp. 2d 26, 36 (D.D.C. 2001) (holding that "agency," as defined in  the Privacy Act, does not apply to the White House Office); *Competitive Enter. Inst. v. Podesta*, 643 F. Supp. 3d 121, 126 (D.D.C. 2022) ("[I]ndividuals are not agencies.").  Thus, Elon Musk, acting as a senior advisor to the President, is not an agency subject to APA review and should be dismissed.

### B.  Plaintiffs fail to allege reviewable final agency action.

Only "final agency action" is reviewable under the APA.[5]  5 U.S.C. § 704.  Such an action must be a "discrete" act, as plaintiffs are prohibited from leveling a "broad programmatic attack" on an agency's actions.  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  An agency action is "final" when (1) the action "mark[s] the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature"; and (2) the action must be one by which "rights or obligations have been determined," or from which "legal consequences

---

[5]  In this Circuit, the "final agency action" requirement is not jurisdictional and so is reviewed as part of a plaintiff's burden to state a valid APA claim.  *See Jud. Watch, Inc.*, 219 F. Supp. 2d at 36; *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184 (D.C. Cir. 2006); *but see Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (In the Fourth Circuit, the inquiry is jurisdictional.), *petition for cert. docketed*, No. 24-693 (U.S. Dec. 30, 2024).

will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted).  The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]."  5 U.S.C. § 704.

This Court in another FACA context found that the plaintiffs had sufficiently pleaded in their complaint final agency action, because the complaint showed that the "agency defendants . . . and private individuals acted collectively to make the decisions to hold meetings that were not open to the public, to hold meetings for which minutes were not kept and were not made public, to hold meetings for which no notice was published in the Federal Register, to create draft reports and other records that were not made public, and to meet and work on policy recommendations without filing an advisory committee charter."  *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 40 (D.D.C. 2002).

Here, Plaintiffs in both actions have failed to establish a final agency action by either OMB or OPM.

The *AMPA* Plaintiffs rely exclusively on pre-inauguration public statements, actions, and ideas to argue that President Trump and his agencies are illegally using a de facto advisory committee called DOGE.  *See AMPA,* Compl. ¶¶ 1–98.  But pre-inauguration conduct by private citizens does not count as final agency action.  Regardless, because there is not a single post-January 20, 2025, allegation, the *AMPA* Plaintiffs fail to show that any of these pre-inauguration plans or ideas ever materialized into a concrete, agency decision that established any legal rights or obligations.  The Plaintiffs focus entirely on early-stage plans, ideas, and proposals associated with a then-presidential transition team.  At most, these allegations fall within the realm of "preliminary" and "tentative" action, which is expressly outside the scope of APA review.

Similarly, the *Lentini* Plaintiffs also fail to show final agency action.  Their amended complaint, much like the *AMPA* Complaint, largely consists of statements, actions, and ideas from

before January 20, 2025, and thus fail for the same reasons. *Lentini*, Am. Compl. ¶¶ 1–82. Although the *Lentini* amended complaint does include some post-January 20, 2025, allegations, those allegations are minimal and fail to bridge the gap between preliminary discussions during a President-elect's transition and final agency action. *Id.* ¶¶ 83–102. None of the post-inauguration allegations detail how or whether the named agency defendants engaged with or acted upon advice from a de facto advisory committee called DOGE operating outside the government. *Id.*

In contrast to *Judicial Watch*, where the plaintiffs showed collective action and meetings between the alleged advisory committee and the agency defendants, the Plaintiffs here have not alleged any collective action or meetings on or after January 20, 2025. 219 F. Supp. 2d at 40. As such, both the *AMPA* and *Lentini* Plaintiffs have failed to demonstrate final agency action and thus their complaints do not satisfy the requirements for judicial review under the APA. The Court should dismiss all the APA claims.

### C. Plaintiffs fail to adequately allege a violation of the APA for all the same reasons that their mandamus claims failed.

Even if this Court found final agency action, which it should not, the APA claims in both consolidated cases should still be dismissed because the Plaintiffs have failed to establish that any advisory committee subject to FACA exists. In both cases, the Plaintiffs base their entire APA theory on the assertion that by not following FACA, Defendants are acting arbitrarily and capriciously and not in accordance with the law. *See Lentini*, Am. Compl. ¶¶ 147–156; *APHA*, Compl. ¶¶ 99–122. For this theory to hold up, Plaintiffs must first demonstrate that a de facto committee called DOGE exists and is subject to FACA.

But as outlined in Parts II.A–C, above, Plaintiffs have not demonstrated that this supposed entity meets any of the necessary criteria for FACA to apply. They have not shown that "DOGE" was ever established or utilized as a committee, that it possesses sufficient structure, or that it

includes any non-federal employees with a vote or veto over its decisions. This failure undercuts all of their APA claims, as Plaintiffs have not demonstrated on the face of their complaints that Defendants are obligated to comply with FACA's requirements. Consequently, even considering the merits of their APA claims, the claims in both cases should be dismissed for failure to state a claim.

## IV. Plaintiffs' claims are nonjusticiable and unconstitutionally impinge on the President's Article II powers.

### A. FACA's fair balance and inappropriate influence provisions are not justiciable.

Plaintiffs in both actions contend that "DOGE" violates FACA's fair balance and improper influence requirements. *See e.g.*, *Lentini*, Am. Compl. ¶ 124; *APHA*, Compl. ¶ 79. And Plaintiffs assert that courts should determine whether the composition of "DOGE" is "fairly balanced" and without "inappropriate[] influence." *See Lentini*, Am. Compl. Count I; *AMPA* Compl. Counts I, III; 5 U.S.C. § 1004(b)(2), (3).

That language, however, affords no basis for judicial review. Under the APA, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). When a legislative goal is announced "in such broad terms," courts properly infer that Congress intended to "commit[]" decisionmaking to the agency's "discretion," leaving no room for judicial second- guessing. *Id.* That is the case here. Congress not only declined to provide any express mechanism for judicial review under FACA; it also declined, in the text of sections 1004(b)(2) and 1004(b)(3), to enact any judicially manageable standards that could serve as a basis for review of substantive membership decisions under the APA. *See Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Food* ("*Microbiological*"), 886 F.2d 419, 426, 430–31 (D.C. Cir. 1989) (Silberman, J., concurring in the judgment).

25

First, the "fair balance" provision in 5 U.S.C. § 1004(b)(2) does not define "fairly balanced," nor does it specify how a "fairly balanced" membership on an advisory committee is to be achieved, in terms of either the type of representatives or the functions such representatives perform.  As an initial matter, "even before the points of view on an advisory committee can be balanced at all— 'fairly' or otherwise—it must first be determined which points of view should be balanced." *Microbiological*, 886 F.2d at 426 (Silberman, J., concurring).  And there is no "principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees." *Id*.  The "relevant points of view on issues to be considered by an advisory committee are virtually infinite." *Id*.; *see also Doe v. Shalala*, 862 F. Supp. 1421, 1430 (D. Md. 1994).

There is similarly no "principled way" to determine whether those views are fairly balanced.  *Microbiological*, 886 F.2d at 428 (Silberman, J., concurring).  Such a determination would require the court to make "arbitrary judgments" about "which organizations or individuals qualified as bona fide" representatives of particular policy views.  *Id.* at 428–29; *see also Fertilizer Inst. v. EPA*, 938 F. Supp. 52, 54 (D.D.C. 1996) (finding the "fair balance" provision nonjusticiable because it would raise "difficult questions" such as, "What qualifications must someone have in order to be deemed an adequate representative of the chemical producers? What if there is a diversity of views among different chemical producers—whose views would then represent the industry?").  Such a task is a "hopelessly manipulable" political question that is "best left to the executive and legislative branches of government."  *Ctr. for Pol'y Analysis on Trade & Health v. Off. of U.S. Trade Representative*, 540 F.3d 940, 945 (9th Cir. 2008).

Although the D.C. Circuit has yet to squarely addressed these justiciability questions, at least three judges in this district have followed Judge Silberman's concurrence in *Microbiological*

and concluded that claims alleging violations of the fair balance requirement are nonjusticiable. *See Physicians for Soc. Resp. v. Wheeler*, 359 F. Supp. 3d 27, 44 (D.D.C. 2019) (McFadden, J.), *rev'd on other grounds*, 956 F.3d 634 (D.C. Cir. 2020); *Fertilizer Inst.*, 938 F. Supp. at 54 (Sporkin, J.) (same); *Pub. Citizen v. HHS*, 795 F. Supp. 1212, 1220 (D.D.C. 1992) (Hogan, J.) (same); *see also Shalala*, 862 F. Supp. at 1430–31  (same).

Nor is the "inappropriate influence" provision in FACA justiciable.  Congress also did not define "inappropriately influenced" or "special interest," nor did it specify any procedures to assure that the "advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest," within the meaning of section 1004(b)(3).  This Court lacks meaningful standards to measure if this requirement has been met. 5 U.S.C. § 1004(b)(3); *see id*. § 1004(c) (providing that "[t]o the extent they are applicable, the guidelines set out in subsection (b) shall be followed by the President, agency heads, or other Federal officials in creating an advisory committee").

To determine whether an advisory committee's advice and recommendations have been inappropriately influenced by the appointing authority or special interests, a reviewing court would need to answer at least three questions.  First, the Court must determine "when an interest is 'special' as opposed to 'general[.]'"  *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring). But a court does not "have any way to determine what [special interest] means for purposes of judicial review [as] . . . virtually anyone in the United States . . . [c]ould have . . . a special interest with regard to some—perhaps all—advisory committees."  *Id*. at 430–31.  Second, a court must be able to determine when a special interest (or the appointing authority) exerted "inappropriate influence."  *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1231 (10th Cir. 2004) (per curiam).  But "[t]he statute does not give us any guidance as to when the line is crossed between appropriate and

inappropriate influence." *Id*. Third, section 1004(b)(3) "on its face, is directed to the establishment of procedures to prevent 'inappropriate' external influences on an already constituted advisory committee by outside special interests or the appointing body." *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring). A court would thus need to put itself in the shoes of the President or agency administrator and determine how, preemptively, to prevent special interests (which are not defined) from exerting inappropriate influence (which is not defined). Courts are ill-suited to craft the necessary safeguards out of whole cloth, as doing so is "really an executive branch function." *Fertilizer Inst*., 938 F. Supp. at 55.

In sum, neither FACA nor its implementing regulations provides this Court with meaningful standards to determine whether any alleged committee is unfairly balanced or inappropriately influenced, as Plaintiffs allege. Accordingly, Plaintiffs' claims that are premised on violations of these provisions are nonjusticiable.

### B. Ruling in the Plaintiffs' favor would interfere with the President's Article II right to confidentially receive advice and information.

If Plaintiffs' claims are allowed to proceed, they would unconstitutionally encroach on the President's Article II power to obtain confidential advice and information.

Article II of the United States Constitution authorizes the President to "require the Opinion, in writing, of the principal Officer in each of the executive Departments" and "recommend to [Congress's] Consideration such Measures as he shall judge necessary and expedient." U.S. Const. art. II, § 2, cl. 1; *id*. § 3. Moreover, the Constitution requires the President to report to Congress on the State of the Union and "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. To fulfill these enumerated duties, the President must be able to consult with his chosen advisor and to obtain their candid guidance and expertise. As one legal commentator has noted, "gathering information is the first, crucial step in the presidential policymaking process. The

operation of FACA threatens to disturb this process and thereby disrupt a fundamental function that is unquestionably the province of the President making executive decisions."  Michael J. Mongan, *Fixing FACA: The Case for Exempting Presidential Advisory Committees from Judicial Review Under the Federal Advisory Committee Act*, 58 Stan. L. Rev. 895, 906 (2005).

Constitutional concerns with FACA are not new.  Indeed, courts have long recognized that FACA potentially raises separation of powers problems and could interfere with a President's Article II powers.  *See, e.g., Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 370 (2004) ("Special considerations control when the Executive's interest in maintaining its autonomy and safeguarding its communications' confidentiality are implicated."); *AAPS*, 997 F.2d at 910 ("A statute interfering with a President's ability to seek advice directly from private citizens as a group, intermixed, or not, with government officials, . . . raises Article II concerns.").  And the Supreme Court has instructed courts to interpret FACA narrowly to as to avoid these constitutional problems.  *See Pub. Citizen*, 491 U.S. at 452.   The D.C. Circuit has recognized that FACA does not override the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties; the importance of this confidentiality is too plain to require further discussion."  *AAPS*, 997 F.2d at 909 (quoting *United States v. Nixon*, 418 U.S. 683, 705–06 (1974)).  "Article II not only gives the President the ability to consult with his advisers confidentially, but also, as a corollary, it gives him the flexibility to organize his advisers and seek advice from them as he wishes." *Id.*

Here, even assuming the existence of the advisory committee that they claim exists, Plaintiffs' claims pose a constitutional conflict by compromising core executive functions.  The relief they seek would interfere with the President's enumerated Article II duties by intruding on

his ability to freely seek advice and gather information. The Plaintiffs' claims raise at least two constitutional concerns.

First, Plaintiffs seek to compel an uncertain, shifting number of private individuals—who may have advised the President during his transition period—to publicize their communications and meetings with the President, and to require them to be open to the public. This would make it impossible for the President to receive honest, forthright, and accurate advice. The government officials and industry leaders from whom the President may seek advice would be less likely to provide such advice if there was a risk that their constituents, colleagues, or stockholders could read a transcript of their comments the next day. This chilling effect of FACA's application to this case would run afoul of the Constitution by disrupting the President's ability to obtain the advice and information he needs to make fully informed decisions.

Second, Plaintiffs ask the Court to control the composition of the President's advisory circle. By alleging that they are injured by not being chosen to be a part of "DOGE", they imply that the law entitles them (or someone like them) to a seat at the table. But courts should not be in the business of deciding from whom the President can seek advice—as that would raise serious separation of powers concerns.

Ultimately, Plaintiffs' claims as applied to the President are constitutionally problematic. Still, the Court need not reach these difficult questions. Both sets of Plaintiffs have failed to plead the facts necessary to establish the existence of a de facto advisory committee to establish mandamus jurisdiction or to plead a viable APA claim. These defects justify dismissal, which avoids these constitutional questions. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple

interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice both actions in their entirety for lack of jurisdiction and for failure to state a claim.

DATED: April 11, 2025    Respectfully submitted,

          YAAKOV M. ROTH
          Acting Assistant Attorney General
          Civil Division

          ELIZABETH J. SHAPIRO
          Deputy Director
          Federal Programs Branch

          BRADLEY P. HUMPHREYS
          Senior Trial Counsel

          */s/ Samuel S. Holt*
          SAMUEL S. HOLT
          Trial Attorney
          U.S. Department of Justice
          Civil Division, Federal Programs Branch
          1100 L Street, N.W.
          Washington, D.C. 20005
          Telephone: (202) 674-9761
          Fax: (202) 616-8470
          Samuel.Holt2@usdoj.gov

          *Counsel for Defendants*