UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERALD LENTINI, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 1:25-cv-00164 (JMC) |
| DEPARTMENT OF GOVERNMENT EFFICIENCY, *et al.*, | * |
| Defendants. | * |

* * * * * * * * * * * * *

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**[1]

In 2020, the National Association for the Advancement of Colored People Legal Defense and Educational Fund ("NAACP") filed a lawsuit in this district against Attorney General William Barr, arguing in part that the Presidential Commission on Law Enforcement and the Administration of Justice was not fairly balanced or free from inappropriate influence as required by the Federal Advisory Committee Act, 5 U.S.C. § 1001 *et seq. See generally NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116 *passim* (D.D.C. 2020) [hereinafter *NAACP*]. In that case, the Government's lead counsel was Bradley Humphreys of the Department of Justice Civil Division, Federal Programs Branch. Mr. Humphreys argued that the case should be dismissed because the "fairly balanced" and "inappropriate influence" provisions of FACA were non-justiciable, relying primarily on Judge Silberman's concurrence in *Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods*, 886 F.2d 419

---

[1] On 21 May 2025, Plaintiffs filed an emergency motion asking the Court to stay all briefing of Defendants' Motion to Dismiss pending the Supreme Court's resolution of the Government's Application for a Stay in *In re. U.S. DOGE Service*, No. 24A1122. Because the Court has not acted on that motion, Plaintiffs are filing this simplified Opposition, but they respectfully request that the Court still grant the requested stay and allow them to file a more thorough Opposition after the Supreme Court issues its decision.

(D.C. Cir. 1989) [hereinafter *Microbiological*], "in which he opined that there is 'no principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees' or 'which organizations or individuals qualif[y] as bona fide' representatives of those views." *See NAACP*, 496 F. Supp. 3d at 132.

Despite this argument, Judge Bates held that "Judge Silberman's views did not carry the day" and that, to the extent that "[t]he government contend[ed] that Judge Edwards and Judge Friedman, too, 'concluded that FACA provides no meaningful standards by which to determine whether an advisory committee is 'fairly balanced' in terms of the viewpoints represented,' *[t]hat is simply wrong*." *Id.* at 132-33 (citation omitted) (emphasis added). Yet in this case, five years after Judge Bates soundly rejected this argument, Mr. Humphreys is before this Court again, making the same meritless argument. While Judge Bates patiently heard out Mr. Humphreys before issuing a *very* thorough ruling, this Court should summarily reject this transparent attempt to relitigate *NAACP* and *Microbiological* and question whether the Government is litigating this case in good faith.

Once the Court has disposed of the frivolous justiciability arguments, it is left only with three primary remaining arguments, none of which hold up to close scrutiny. First, the Government points to its own conclusory claims to support its argument that the advisory committee Plaintiffs refer to as the "Department of Government Efficiency" or "DOGE"—in contrast to the United States DOGE Service ("USDS")—exists, while disregarding the ample publicly available evidence to the contrary. Then, the Government argues that even if DOGE exists, it is comprised solely of federal employees and therefore excluded from FACA, while ignoring the D.C. Circuit's precedent establishing that merely designating the non-Government members of a group as Special Government Employees ("SGE") does not exclude the group

from FACA. Lastly, the Government argues that FACA cannot be applied to Presidential advisory committees, despite the clear statutory language to the contrary.

While one or more of these arguments *might* prevail after the Court has had the benefit of discovery and summary judgment briefing, none of them are sufficient to carry the day in a motion to dismiss, and the Court should deny the Government's Motion and order the parties to commence discovery as previously requested.

## ARGUMENT

### I.   FACA IS JUSTICIABLE

As noted above, the Government made exactly the same arguments in *NAACP* as it is making here, and Judge Bates not only reviewed the briefs but also held a 106-minute motion hearing to give the Government a chance to make its case. For the Court's ease of review, a copy of the transcript of that 17 September 2020 hearing has been attached as Ex. A, and Plaintiffs commend it to the Court's attention to demonstrate the attention to detail that Judge Bates brought to the controversy.

Specifically, Plaintiffs draw the Court's attention to two aspects of this hearing, each of which informed the final decision in favor of NAACP. First, NAACP's counsel explained how the Government was grossly mischaracterizing the Circuit's decision in *Microbiological* and how the other Circuits to have considered the opinion interpreted it the same way that the plaintiffs did:

> I think that it is very, very clear from Judge Friedman and Judge Edwards' opinions where they both apply the same standard, and that is how, as I noted before, the Ninth Circuit, the Tenth Circuit, the First Circuit, the Fifth Circuit have all understood the law of the circuit to be.

\*\*\*

> [T]he other courts have understood the law of the D.C. Circuit to be that fairly balanced claims are justiciable in light of both *National Anti-Hunger Coalition* and *Microbiological*. And the reason why those claims are justiciable is that the fairly balance standard is not the rare situation where there is no law to apply, and it's only when there is no law to apply that a claim would be nonjusticiable.
>
> I think the First Circuit's decision in the *Concerned Scientists* case from earlier this year is especially instructive. The court there very clearly held that a claim like this is justiciable, and in so doing, it said that concepts of fairness, balance, and influence are not foreign to the court.
>
> And in doing that, I think it also got at a point you were raising earlier about, well, is some representation enough; how much representation does there need to be? And one of the things the Court of Appeals of the First Circuit said was that, at a minimum, courts are in a position to police the outer boundaries of those standards, which is similar to a point that Judge Edwards made in *Microbiological* and has been recognized by other courts, and that's the lack of mathematical precision is not a basis for finding that there's no law to apply.

Ex. A at 12:10-13:18 (citing *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020); *Ctr. for Pol'y Analysis on Trade & Health v. Office of U.S. Trade Representative*, 540 F.3d 940 (9th Cir. 2008); *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221 (10th Cir. 2004); *Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999); *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071 (D.C. Cir. 1983)).

Of particular note is the fact that all of the cases to which NAACP's counsel referred were expressly cited by Judge Bates in his opinion as the reason that even though "a few judges in this District have nonetheless deemed FACA's fair balance requirement nonjusticiable, favorably citing Judge Silberman's opinion[,] . . . this Court will not." *See NAACP*, 496 F. Supp. 3d at 132-37. Judge Bates explained as much to the Government in the hearing itself: "[E]ven though Judge Friedman didn't explicitly stage out a view on justiciability, he went forward to the merits of the fair balance question, which means that he agreed with Judge Edwards that the case was justiciable." Ex. A at 33:14-17. He further pressed the Government:

4

> So from FACA and the regulation, you can certainly draw a requirement that when an agency establishes an advisory committee in selecting members for that committee, it must consider a cross-section of those directly affected, interested, qualified as appropriate to the nature and functions of the advisory committee as part of that effort by the agency to attain fairly balanced membership. And that's drawing from the language of the regulation.
>
> That's quite a bit of information to help in crafting a meaningful standard. It goes a lot further than terms like "in the interest of justice," but why isn't that enough for a meaningful standard to apply in this context?

*Id.* at 39:23-40:9. And he ultimately stated over the Government's objection what Plaintiffs are stating now—but should not have to:

> In the *Microbiological* case, I understand Judge Silberman's concurrence; but Judge Edwards disagreed with Judge Silberman, and Judge Friedman, in effect, even if not expressly, disagreed as well because Judge Friedman and Judge Edwards went to the merits of the fair balance issue. That's necessarily a conclusion that it was justiciable.
>
> How can I reject that? How can I adopt Judge Silberman's perspective when the D.C. Circuit, in the *Microbiological* case, reached the merits of the fair balance question, i.e., that it's justiciable?
>
> MR. HUMPHREYS: Well, as the Court has pointed out, Judge Friedman obviously did not find that there was a violation of the fair balance provision.
>
> THE COURT: Well, that's the merits. That's not the justiciability issue.
>
> MR. HUMPHREYS: I think that it is a fair reading of the opinion that both Judge Silberman and Judge Friedman thought that it is not -- that judges are not well suited to look at the individual viewpoints of commissioners and make a determination as to what's fair and balanced.
>
> I grant you, of course, Your Honor, that Judge Friedman did reach the merits. But we don't think that the D.C. Circuit has foreclosed a finding that such claims are not justiciable, and, at a minimum, the discussion in that case strongly weighs in favor of the defendants on the merits.
>
> THE COURT: Judge Friedman, as you've said, might have said that the determination of how fairly balanced membership should be achieved is largely within the discretion of the official who appoints the committee, but he didn't say that that determination was unreviewable. In fact, he reviewed it. And his conclusion, because the committee's function involved highly technical and

5

scientific studies, a fair balance would be achieved. I mean, he went into the merits and made the decision on the fair balance. That's finding it's justiciable, because he did judge it.

MR. HUMPHREYS: Well, I take your point that --

THE COURT: I don't see how you could say that Judge Friedman agreed with Judge Silberman when he went and addressed the merits. I just don't see how you can say that.

*Id.* at 41:18-43-7.

Judge Bates did not see any merit in the Government's argument five years ago because there was none, as he thoroughly explained in his opinion. This Court should follow suit, because there is, in Judge Bates's words, no way to "see how [the Government] can say that."

## II.   DOGE EXISTS AND IS NOT COMPRISED OF FULL-TIME EMPLOYEES

Notwithstanding the Government's attempts to characterize the ample public evidence in the record about DOGE as "speculation about DOGE that circulated during the transition period" (Defs.' Mem. of Law Supp. Defs.' Mot. Dismiss, Dkt. #33-1, at 4 (filed Apr. 11, 2025) [hereinafter Defs.' Mem.]), it is uncontroverted that much of the evidence came from the proverbial horse's mouth, in the form of public statements by Elon Musk ("Musk"), President-Elect Trump ("Trump"), and similarly authoritative sources. Moreover, as the Government concedes, much of the evidence cited in the First Amended Complaint is statements made by Musk and Trump well after the establishment of USDS, when Musk was constantly claimed in court filings to have no official role in USDS. In fact, the Government's application in the *In re U.S. DOGE Service* case specifically highlights this fact: "In any event, the court did not address the government's explanation that the cited press reports do not refer to USDS activities; they mention Elon Musk (a White House advisor, who is not part of USDS), agency activities (which would be activities of Agency DOGE Teams or Team Leads, not of USDS), or refer generally to

'DOGE,' an umbrella term for the executive-wide initiative and not USDS specifically."
Application to Stay Orders of U.S. Dist. Ct. for D.C. Pending Certiorari or Mandamus & Req.
Immediate Admin. Stay (filed May 21, 2025), *In re. U.S. DOGE Serv.*, No. 24A1122, at 17 (filed
May 21, 2025), *at*

http://www.supremecourt.gov/DocketPDF/24/24A1122/359271/20250521095150101_In%20re%20USDS%20Stay%20Application_final%20a.pdf (last accessed May 22, 2025).

If neither Musk nor "Agency DOGE Teams or Team Leads" are part of USDS but are instead part of "the executive-wide initiative" known as "DOGE," that is federal advisory committee comprised of, at the very least, USDS staff, Agency DOGE Teams, and Musk. The only question is, is it a federal advisory committee comprised solely of full-time Government employees? The Government argues that it is, citing to a declaration—the reliability of which is currently being considered by the Supreme Court—that says that Musk is a "senior advisor to the President." (Defs.' Mem. at 19.) However, while brazenly asking the Court to take judicial notice of this assertion, the Government elides over the critical distinction that Musk "holds that position as a non-career Special Government Employee ("SGE")." (Fisher Decl., Dkt. #33-2, ¶ 3 (filed Apr. 11, 2025).) As this Circuit has explained, an SGE is not the same as a full-time Government employee in the eyes of FACA in a few ways.

First, the statute only excludes "a committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government." 5 U.S.C. § 1001(2)(B)(i). An SGE is not a "full-time, or permanent part-time" officer or employee. An SGE is, in pertinent part, "an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without

7

compensation, *for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis*." 18 U.S.C. § 202(a) (emphasis added). In other words, Musk is, by statute, a *temporary* employee.

Second, in response to the Government's arguments that this statutory language included the term "full-time," this Circuit already rejected that reading, stating, "FACA would be rather easy to avoid if an agency could simply appoint 10 private citizens as special government employees for two days, and then have the committee received the section [1001(2)] exemption as a body composed of full-time government employees." *Ass'n of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 915 (D.C. Cir. 1993) [hereinafter *AAPS*]. Just as the Government is trying to relitigate the 36-year-old *Microbiological* justiciability decision, it is now trying to relitigate a 23-year-old case on this issue, and the Court should not seriously consider this line of argument.

The Government highlights that, other than Musk, Plaintiffs can "identify no set membership" for DOGE. (Defs.' Mem. at 15.) However, this is not for lack of trying, and the Court should decline to find that Plaintiffs have failed to state a cause of action because they were not allowed to take the discovery that they requested. Plaintiffs concede that DOGE—and even USDS—is extraordinarily secretive about its membership, and argued as much in their First Amended Complaint. However, it would be manifestly unjust to reward an illegal advisory committee for illegally hiding its membership, its meetings, its structure, and the like by dismissing a case because the plaintiffs were not able to include that very hidden information in their pleadings. In any case, this is a moot point, because all that Plaintiffs have to do at this stage of the litigation is plausibly allege that *one* member of the committee is not a full-time Government employee, and that one member is undeniably Musk.

## III.  PRESIDENTIAL ADVISORY COMMITTEES ARE COVERED BY FACA

FACA explicitly covers presidential advisory committees. "The term 'advisory committee' means a committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee") that is established or utilized to obtain advice or recommendations *for the President* or one or more agencies or officers of the Federal Government and that is—(i) established by statute or reorganization plan; (ii) established or utilized *by the President*; or (iii) established or utilized by one or more agencies." 5 U.S.C. § 1001(2)(A) (emphasis added). For the purposes of a motion to dismiss, that should be the end of the discussion.

However, to the extent the Court is inclined to consider the Government's separation of powers argument, it should first allow discovery to flesh out what role, if any, the President actually plays vis-à-vis DOGE. As many courts have found, DOGE and Musk are exercising significant authority and not actually advising the President, and in fact much if not all of the advice DOGE is providing is to *agencies*. Therefore, it is premature to address this argument, since it may be moot or it may not even be applicable, depending on the results of the discovery.

## IV.  THE GOVERNMENT'S OTHER ARGUMENTS ALSO LACK MERIT

The Government makes a collection of less central arguments, none of which warrant close attention by the Court. However, Plaintiffs will briefly address them herein in roughly the order in which they were made.

First, it argues that there is no "clear and indisputable" right to mandamus relief, based largely on the contention that Plaintiffs have not proven that DOGE exists. The key support for this argument is the Circuit's observation that "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch."

9

*AAPS*, 997 F.2d at 914. However, as noted above, the *AAPS* opinion did not favor the Government. In fact, the Circuit directed the district court to order expedited discovery "before [it] can confidently decide whether the working group is a FACA committee." *Id.* at 915-16. This is what Plaintiffs previously requested, and it is what they continue to request.

Second, the Government curiously argues that "because Plaintiffs claim that the agency Defendants are subject to the APA, they necessarily acknowledge the existence of an alternative remedy" to mandamus. (Defs.' Mem. at 20.) The Government appears to be confused by the idea of arguing in the alternative, but to make it clear, Plaintiffs agree with the Government that the Administrative Procedure Act ("APA") applies to this case as far as the agency Defendants are concerned. However, in the instance that the Court disagrees with this assessment, it should find that Plaintiffs are entitled to mandamus relief.

Third, the Government argues that Plaintiffs have failed to establish a final agency action for the purposes of the APA, but it then proceeds to explain exactly why there *has been* final agency action. (*Id.* at 23.) The crux of the Government's argument again appears to be based on the fact that, because DOGE has been so clandestine about its inner workings, Plaintiffs should be penalized for not being able to pierce that veil of secrecy. However, as ably demonstrated in the First Amended Complaint, it is quite clear how "the named agency defendants engaged with or acted upon advice" from DOGE (*id.* at 24), if only through the numerous ways in which Musk publicly touted his role in decisions made by those agencies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied and the Court should order expedited discovery to facilitate the resolution of the lingering factual

questions in this case. Only then can it "confidently decide whether [DOGE] is a FACA committee." *AAPS*, 997 F.2d at 916.

Date:   May 23, 2025

                                        Respectfully submitted,

                                        <u>/s/ Kelly B. McClanahan</u>
                                        Kelly B. McClanahan, Esq.
                                        D.C. Bar #984704
                                        National Security Counselors
                                        1451 Rockville Pike
                                        Suite 250
                                        Rockville, MD  20852
                                        501-301-4672
                                        240-681-2189 fax
                                        Kel@NationalSecurityLaw.org

                                        *Counsel for Plaintiffs*