# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERALD LENTINI , *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-00164-JMC |
| DEPARTMENT OF GOVERNMENT EFFICIENCY , *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    Neither in their amended complaint nor opposition have Plaintiffs established that
      what they call "DOGE" exists or functions as an advisory committee subject to
      FACA... ....................................................................................................................... 2

II.   Plaintiffs' claims premised on the fair balance and inappropriate influence
      requirements are nonjusticiable. ............................................................................... 9

III.  Plaintiffs' claims will unconstitutionally encroach on the President's Article II
      powers. ......................................................................................................................11

IV.   The rest of Plaintiffs' arguments in opposition fail......................................... 12

CONCLUSION.................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Ala.-Tombigbee Rivers Coal. v. Dep't of Interior*,
    26 F.3d 1103 (11th Cir. 1994) ...........................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 3, 6

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
    997 F.2d 898 (D.C. Cir. 1993).............................................................................. 5, 6, 7, 9

*Bennett v. Spear*,
    520 U.S. 154 (1997)...................................................................................................... 14

*Carter v. DeKalb Cnty., Ga.*,
    521 F. App'x 725 (11th Cir. 2013) ................................................................................. 3

*Ctr. for Pol'y Analysis on Trade & Health v. Off. of U.S. Trade Representative*,
    540 F.3d 940 (9th Cir. 2008)........................................................................................ 10

*Cunningham v. Cornell Univ.*,
    604 U.S. ----, No. 23-1007, 2025 WL 1128943 (Apr. 17, 2025) ................................. 3

*Diulus v. Am. Express Travel Related Servs. Co.*,
    823 F. App'x 843 (11th Cir. 2020) ................................................................................. 3

*Doe v. Shalala*,
    862 F. Supp. 1421 (D. Md. 1994) ................................................................................ 10

*Fertilizer Inst. v. EPA*,
    938 F. Supp. 52  (D.D.C. 1996) ................................................................................... 10

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C.Cir.1996)......................................................................................... 2

*Food & Water Watch v. Trump*,
    357 F. Supp. 3d 1 (D.D.C. 2018) ...........................................................................5, 7, 11

*In re Musk*,
    No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025)......................................... 3

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018).................................................................................................... 12

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
   219 F. Supp. 2d 20 (D.D.C. 2002) ................................................................. 13, 14

*Kaplan v. Cal. Pub. Emps.' Ret. Sys.*,
   No. C 98-1246 CRB, 1998 WL 575095 (N.D. Cal. Sep. 3, 1998),
   *aff'd*, 221 F.3d 1348 (9th Cir. 2000) ........................................................... 3

*Kaylor v. Fields*,
   661 F.2d 1177 (8th Cir. 1981) ....................................................................... 4

*Lorillard, Inc. v. U.S. Food & Drug Admin.*,
   No. CIV. 11-440 (RJL), 2012 WL 3542228 (D.D.C. Aug. 1, 2012) ........................... 11

*Montgomery v. Rosen*,
   No. CV 20-3261 (RDM), 2021 WL 75754 (D.D.C. Jan. 8, 2021) ............................ 10

*Mt. Emmons Min. Co. v. Babbitt*,
   117 F.3d 1167 (10th Cir. 1997) ...................................................................... 13

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ......................................................................... 3

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*,
   496 F. Supp. 3d 116 (D.D.C. 2020) ................................................................. 11

*Olaniyi v. Dist. of Columbia*,
   763 F. Supp. 2d 70 (D.D.C. 2011) ................................................................. 2

*Physicians for Soc. Resp. v. Wheeler*,
   359 F. Supp. 3d 27 (D.D.C. 2019),
   *rev'd on other grounds*, 956 F.3d 634 (D.C. Cir. 2020) ..................................... 10

*Pub. Citizen v. HHS*,
   795 F. Supp. 1212 (D.D.C. 1992) ................................................................. 10

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria* for *Food*,
   886 F.2d 419 (D.C. Cir. 1989) ...................................................................... 10

*Pub. Citizen v. U.S. Dep't of Just.*,
   491 U.S. 440 (1989) ................................................................................ 7, 11

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*,
   264 F. Supp. 3d 262 (D.D.C. 2017) ............................................................... 8

*U.S. Doge Serv. v. CREW*,
   No. 24-1246, 2025 WL 1602338 (S. Ct. June 6, 2025) ....................................... 12

*Vaz v. Neal*,
   33 F.4th 1131 (9th Cir. 2022) ................................................................................... 13

**Statutes**

5 U.S.C. § 1001 ....................................................................................................... 4, 6

18 U.S.C. Chapter 11 ................................................................................................. 8

18 U.S.C. § 202 ........................................................................................................... 8

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 1

**INTRODUCTION**

Plaintiffs spend most of their opposition attempting, but failing, to combat arguments on justiciability and constitutionality—arguments this Court need not even reach. *See generally* Plfs.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 39 ("Opp'n"). Defendants' lead argument for dismissal is that Plaintiffs have failed to plead that what Plaintiffs call the Department of Government Efficiency (or "DOGE") exists or meets the elements of an advisory committee subject to the Federal Advisory Committee Act ("FACA"), which if the Court agrees would obviate the need to even reach the justiciability and constitutionality issues. *See* Memo. of Law ISO Defs.' Mot. to Dismiss at 9–33, ECF 33-1 ("Mot. to Dismiss").[1] But Plaintiffs spend little time addressing this argument. *See generally* Opp'n at 1–11. Instead, Plaintiffs fill pages of their Opposition with long block quotes from a different case's hearing, trying to convince this Court that the fair balance and inappropriate influence requirements are justiciable. *See id.* at 3–6 (nearly three pages filled with block quotes).

But to recenter this dispute on the core problem, Plaintiffs essentially concede that their amended complaint fails to allege facts establishing the existence of an advisory committee called "DOGE" that is operating in secrete separate and distinct from the U.S. DOGE Service ("USDS"). *See* Opp'n at 8. Instead, they attempt to excuse that failure by claiming a need for discovery. *Id.* But it is Plaintiffs' obligation to plead first a factually sufficient complaint; they cannot fancifully theorize and then embark on a fishing expedition to try to find facts to support a claim. The Federal Rules require at a minimum that a complaint provide facts showing that "the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[1] To clarify, Defendants cite ECF page numbers at the top of all filings—and not page numbers at the bottom or elsewhere.

Specifically, Plaintiffs do not plead plausible facts showing (1) that President Trump, while in office, or any of his agencies established or utilized such an advisory committee called "DOGE"; (2) that "DOGE" has a formal structure, fixed membership, and provides collective advice; or (3) that "DOGE" contains any non-employee with a right to vote or veto the group's collective decisions. *See* Mot. to Dismiss at 9–33. And Plaintiffs' opposition brief offers little to combat this reality.

Even if the Court were to reach the lack of justiciability and unconstitutionality of Plaintiffs' claims, their claims fall short for those reasons as well. This case should be dismissed— and with prejudice—because Plaintiffs have shown by their deficient amended complaint and now deficient opposition brief that any further amendment to the pleadings would be futile. *See Olaniyi v. Dist. of Columbia*, 763 F. Supp. 2d 70, 85 (D.D.C. 2011) ("If the Court finds that the plaintiffs have failed to allege all the material elements of their cause of action, then the Court may dismiss the complaint . . . with prejudice, provided that the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[.]" (cleaned up) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir.1996)).

## ARGUMENT

### I.    Neither in their amended complaint nor opposition have Plaintiffs established that what they call "DOGE" exists or functions as an advisory committee subject to FACA.

In their opposition, Plaintiffs raise five arguments for why their claims should not be dismissed under Rule 12 for lack of jurisdiction and/or for failure to state a claim. All five arguments fail.

**1.** Plaintiffs seem to concede that they have failed to identify a set membership or a formal structure for "DOGE." *See* Opp'n at 8 ("The Government highlights that, other than Musk, Plaintiffs can 'identify no set membership' for DOGE . . . However, this is not for lack of

2

trying[.]").  But Plaintiffs argue that "the Court should decline to find that Plaintiffs have failed to state a cause of action because they were not allowed to take the discovery that they requested." *Id.*  But Plaintiffs' argument runs head long into the established principle that a plaintiff must adequately plead jurisdiction and state a valid claim in the operative complaint before a court can unlock the doors to discovery and let the case proceed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009) (when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise" because "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions"); *Cunningham v. Cornell Univ.*, 604 U.S. ----, No. 23-1007, 2025 WL 1128943, at *8 (Apr. 17, 2025)  (instructing that when plaintiffs bring "barebones" suits, district courts should use "tools at their disposal to screen out meritless claims before discovery"); *In re Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) (staying discovery because "the district court was required to decide [defendants'] motion to dismiss before allowing discovery"); *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 847 (11th Cir. 2020) (per curiam) (unpublished) ("[B]ecause their complaint failed to state a claim, they were not entitled to discovery."); *Carter v. DeKalb Cnty.*, Ga., 521 F. App'x 725, 728 (11th Cir. 2013) ("[F]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins."); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it.").

Were the Court to accept Plaintiffs' invitation to allow the case to proceed into discovery, even though Plaintiffs have admittedly failed to plead the necessary elements of the cause of action, any future plaintiff could use a facially deficient complaint to open the door to discovery in hopes of finding a claim against a defendant.  S*ee Kaplan v. Cal. Pub. Emps.' Ret. Sys.*, No. C 98-1246

3

CRB, 1998 WL 575095, at *6 (N.D. Cal. Sep. 3, 1998) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under federal discovery rules."), *aff'd*, 221 F.3d 1348 (9th Cir. 2000); *Kaylor v. Fields,* 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint.  It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

    **2.**  Plaintiffs argue that the existence of DOGE is "uncontroverted" because the "evidence came from the proverbial horse's mouth, in the form of public statements of Elon Musk . . . President-Elect Trump . . . and similarly authoritative sources."  Opp'n at 6.  But Plaintiffs do not cite where in their amended complaint they plead all this "evidence."  In fact, most of the factual allegations in the amended complaint predate January 20, 2025.  *See* Am. Compl. ¶¶ 83–98, *Lentini v. Dep't of Gov. Efficiency,* No. 1:25-cv-00166 (JMC) (D.D.C. Feb. 13, 2025) (dedicating only 16 paragraphs out of 166 to "activities since January 20").  The date of the allegations is legally significant for purposes of FACA.  FACA applies only to advisory committees that are established or utilized by a sitting President or a federal agency—not to groups that may (or may not) have existed for the benefit of a President-Elect.[2]  *See* 5 U.S.C. § 1001(2)(A).

    As already noted, Plaintiffs devote much of their amended complaint alleging facts that, at best, show certain individuals advising President-Elect Trump.  But they fail to plead a factual connection between those pre-inauguration events (even assuming they are true) and any actions taken by an advisory committee during President Trump's time in office.  For example, Plaintiffs

---

[2]  To sharpen the point, a plaintiff cannot simply allege that some group of individuals out there is advising a private citizen and thereby trigger FACA.  Yet, even viewing the amended complaint in its most favorable light, that is effectively what Plaintiffs allege—a group of individuals allegedly advising someone who was not yet President.

list a few names beyond Mr. Musk who were allegedly associated with the idea of "DOGE" before President Trump's inauguration, including Mr. Ramaswamy, Mr. Andreessen, and Mr. McGinley. *See* Am. Compl. ¶¶ 40–57 (providing sources and dates that all predate January 20, 2025). But Plaintiffs never plead facts indicating that any of these individuals ever met together on a regular basis, engaged in collective deliberation, and collectively advised the President or an agency before, on, or after President Trump's inauguration. That failure is fatal to Plaintiffs' claims. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, ("*AAPS*"), 997 F.2d 898, 913–14 (D.C. Cir. 1993); *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 11 (D.D.C. 2018)*.*

Plaintiffs go on to claim that, "as the Government concedes, much of the evidence cited in the First Amended Complaint is statements made by Musk and Trump well after the establishment of USDS[.]" Opp'n at 6. But Defendants argued quite the opposite. *See* Mot. to Dismiss at 21 ("The *Lentini* Plaintiff[s], for their part, did amend their complaint to include some allegations post January 20, 2025 . . . But those allegations are cursory and irrelevant."). To reiterate, the post-inauguration allegations in the amended complaint fall into three general categories—none of which plausibly establishes that what Plaintiffs' call "DOGE" exists or functions like an advisory committee.

    a) Plaintiffs describe the creation of USDS and the related executive order. *See* Am. Compl. ¶¶ 83–85. But these allegations are irrelevant to pleading the existence of an entity operating separate and distinct from USDS, which is Plaintiffs' theory of the case. *See id.* ¶ 7 ("DOGE—as referred to herein—is separate and distinct from the United States DOGE Service[.]").

    b) Plaintiffs allege in the amended complaint that "numerous individuals claiming to be affiliated with DOGE have entered numerous government agencies, made numerous

recommendations on numerous topics to the leadership of those agencies and the White House[.]" *Id.* ¶ 86. Yet Plaintiffs fail to identify who these "individuals" are, which agencies they allegedly "entered," or what "recommendations" they made. Indeed, Plaintiffs concede that they are unable to identify members of the supposed committee. *See* Opp'n at 8. The amended complaint's vague assertions do not plausibly or reasonably suggest the existence of a de facto committee secretly advising the President or federal agencies. *See Iqbal*, 556 U.S. at 678 (holding that allegations in a complaint must be facially plausible to survive a motion to dismiss, and they are facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference").

c) The rest of Plaintiffs' post-inauguration allegations attempt to connect Mr. Musk to the President's efforts to reduce government spending. *Id.* ¶¶ 91–98. As outlined in Defendants' motion to dismiss, these allegations do not show that an advisory committee was ever established or utilized, as Mr. Musk alone cannot constitute a one-man advisory committee. *See AAPS*, 997 F.2d at 911, 913 (indicating that an advisory committee must include a group of people); 5 U.S.C. § 1001(2)(A) (defining "advisory committee" as "a committee, board, commission, council, conference, panel, task force, or other similar group, or a subcommittee or other subgroup thereof"). Notably, in their post-inauguration allegations, Plaintiffs fail to identify any other individual besides Mr. Musk who is allegedly affiliated with this supposed advisory committee that Plaintiffs claim was established or utilized post-inauguration. *See* Am. Compl. ¶¶ 83–102.

3. Plaintiffs argue that, "[i]f neither Musk nor 'Agency DOGE Teams or Team Leads' are part of USDS but are instead part of 'the executive-wide initiative' known as 'DOGE,' that is

federal advisory committee [sic] comprised of, at the very least, USDS staff, Agency DOGE Teams, and Musk." Opp'n at 7. Plaintiffs do not provide any authority for this conclusion. And Plaintiffs are wrong in any event. They skip over the prerequisite steps of first pleading the necessary elements of an advisory committee and instead jump straight to the conclusion that a vague collection of mostly unnamed individuals somehow qualifies as a de facto advisory committee. That is not the law. *See Food & Water Watch*, 357 F. Supp. 3d at 10 ("To determine whether a de facto FACA advisory committee exists, courts look to whether the purported committee has been 'asked to render advice or recommendations, as a group, and not as a collection of individuals.'" (citing *AAPS*, 997 F.2d at 913)); *AAPS*, 997 F.2d at 914 ("In order to implicate FACA, the President, or his subordinates, must create an advisory group that has, in large measure, an organized structure, a fixed membership, and a specific purpose."). As outlined in Defendants' motion to dismiss, Plaintiffs do not plead any of these necessary elements establishing that "DOGE" is an advisory committee subject to FACA—and unsupported conclusions in Plaintiffs' opposition do not rebut that.

**4.** Plaintiffs claim that all they have "to do at this stage of the litigation is plausibly allege that one member of the committee is not a full-time Government employee[.]" Opp'n. at 8. But, again, Plaintiffs incorrectly construe the law. As outlined above, Plaintiffs must plead that a committee exists and meets all the necessary elements of a true advisory committee, which Plaintiffs have not done. *See also Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 453–54 (1989) (holding that FACA does not apply to "every formal and informal consultation between the President or an Executive agency and a group rendering advice."). Plaintiffs in opposition do not even address whether they have sufficiently pled that "DOGE" provides collective advice or that

formal, semi-regular "DOGE" meetings have ever been held.  *See generally* Opp'n at 1–11 (no mention of "collective advice" or specific "DOGE" meetings).

    **5.**  Plaintiffs argue that Mr. Musk is neither a full-time nor a permanent part-time employee, and thus "DOGE" falls outside the all-employee exception to FACA outlined in 5 U.S.C. § 1001(2)(B)(i).  But Plaintiffs are wrong there too.

    Plaintiffs label Defendants' request for judicial notice of Mr. Musk's employment status as "brazen[]," yet they cite no authority to suggest how or why it is improper.  Opp'n at 7.  By contrast, Defendants cited numerous cases in which courts have taken judicial notice of similar facts, *see* Mot. to Dismiss at 27 (citing cases), and thus can be considered as part of a motion to dismiss, *see Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 264 (D.D.C. 2017) (finding that a court can consider judicially noticeable facts when deciding a motion to dismiss). The Court may properly take judicial notice that Mr. Musk was a senior advisor to the President at the time Plaintiffs filed their amended complaint—a fact Plaintiffs do not seem to dispute in any event.[3]  *See* ECF 33-2 (Declaration of Joshua Fisher, *New Mexico v. Elon Musk*, No. 1:25-cv-429 (D.D.C. Feb. 17, 2025), ECF No. 24-1).

    Plaintiffs then point to the uncontested fact that Mr. Musk held the designation of a special government employee ("SGE") at the time Plaintiffs filed the amended complaint.  *See* Opp'n at 7–8 (citing 18 U.S.C. § 202(a)).  They claim that this establishes that Mr. Musk is not a full-time or permanent part-time federal employee.  *Id.*  But Plaintiffs misunderstand the law on this point. SGE is not an employment status but an ethics classification under federal conflicts-of-interest statutes.  *See* 18 U.S.C. § 202; *see generally* 18 U.S.C. Chapter 11, Part I.  Regardless, the D.C.

---

[3]  Plaintiffs question whether Mr. Musk counts as a full-time or permanent part-time government employee.  *See* Opp'n at 6–8.  But Plaintiffs never dispute in their opposition that Mr. Musk was a senior advisor to the President at the time they filed their amended complaint.  *Id.*

Circuit has directed courts not to construe the meaning of FACA's all-employee exception based on other U.S. Code provisions, including 18 U.S.C. § 202. *See AAPS*, 997 F.2d at 915 ("Just as we did not read 5 U.S.C. §§ 2104, 2105 to govern the question of whether Mrs. Clinton is a federal officer or employee, we do not think that Title 18's definitions should necessarily control FACA."). Rather, courts are to construe the meaning of FACA's all-employee exception "in light of its purpose to regulate the growth and operation of advisory committees." *Id.*

The D.C. Circuit has also indicated that communications between the President and his senior advisors are protected by Article II and are, therefore, outside the bounds of FACA's purposes. *See id.* at 909–911. In *AAPS*, one reason the D.C. Circuit construed the terms "full-time officer or employee" under FACA to include the First Lady—so as to avoid constitutional concerns—was that she served as one of the President's "closest advisors" akin to a "senior advisor[]." *Id.* Under that framework, FACA's all-employee exception also applies to Mr. Musk acting as a senior advisor to the President.

Plaintiffs have also not plausibly alleged that Mr. Musk had the right to vote on or veto "DOGE's" collective decisions, another necessary element Plaintiffs needed but failed to plead. In their opposition, Plaintiff do not even address or oppose this part of Defendants' motion to dismiss. *See generally* Opp'n at 1–11 (no mention of the vote or veto requirement). In any event, the Court need not reach the issue of how SGEs fit within the FACA analysis. Plaintiffs fail to meet any of FACA's threshold requirement, and failure of any one element itself merits dismissal.

## II.    Plaintiffs' claims premised on the fair balance and inappropriate influence requirements are nonjusticiable.

Plaintiffs accuse Defendants of raising a "frivolous" and "meritless" argument in asserting that FACA's fair balance and inappropriate influence provisions are not justiciable. *See* Opp'n at 1–6. Yet, this supposedly "frivolous" argument has prevailed in the Ninth Circuit, with the

majority of judges in this district, with judges in other districts, and with at least one judge on the
D.C. Circuit.  *See Physicians for Soc. Resp. v. Wheeler*, 359 F. Supp. 3d 27, 44 (D.D.C. 2019)
(McFadden, J.), *rev'd on other grounds*, 956 F.3d 634 (D.C. Cir. 2020); *Fertilizer Inst. v. EPA*,
938 F. Supp. 52, 54  (D.D.C. 1996) (Sporkin, J.); *Pub. Citizen v. HHS*, 795 F. Supp. 1212, 1220
(D.D.C. 1992) (Hogan, J.); *Doe v. Shalala*, 862 F. Supp. 1421, 1430–31 (D. Md. 1994); *Ctr. for
Pol'y Analysis on Trade & Health v. Off. of U.S. Trade Representative*, 540 F.3d 940, 945 (9th Cir.
2008); *Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Food*
("*Microbiological*"), 886 F.2d 419, 426, 430–31 (D.C. Cir. 1989) (Silberman, J., concurring in the
judgment) (same).

 Plaintiffs seem to argue that the D.C. Circuit in *Microbiological* issued a binding decision
on the justiciability issue and that this Court is required to follow it.  *See* Opp'n at 1–6.  But
*Microbiological* was a fractured, three-opinion decision that ultimately resulted in an affirmance of
the district court's dismissal of a FACA suit. 886 F.2d at 419–240 (per curiam).

 As a result, three judges in this district have found that *Microbiological* did not result in
binding precedent on the justiciability question.  *See Wheeler*, 359 F. Supp. 3d at 44; *Fertilizer
Inst.*, 938 F. Supp at 54; *Pub. Citizen*, 795 F. Supp. at 1220; *see also Montgomery v. Rosen*, No.
CV 20-3261 (RDM), 2021 WL 75754, at *7 (D.D.C. Jan. 8, 2021) (in a different context finding
that though "competing opinions" from the D.C. Circuit offered "helpful guidance, none is
binding").  Those three judges went on to find that FACA's fair balance and inappropriate influence
provisions not justiciable.  *See Wheeler*, 359 F. Supp. 3d at 44; *Fertilizer Inst.*, 938 F. Supp. at 54;
*Pub. Citizen*, 795 F. Supp. at 1220.  Judge Hogan in *Public Citizen* spent many pages of his decision
canvassing D.C. Circuit law on the question and concluded that "none of the [D.C. Circuit] cases
establish binding precedent on [the] issue."  795 F. Supp. at 1214–1221.

By contrast, two judges in this district have found those two requirements justiciable. *See Lorillard, Inc. v. U.S. Food & Drug Admin.*, No. CIV. 11-440 (RJL), 2012 WL 3542228, at *2 (D.D.C. Aug. 1, 2012) (Leon, J.); *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 132 (D.D.C. 2020) (Bates, J.). [4]

In the end, a slim majority of judges in this district who have confronted the issue have held that the fair balance and inappropriate influence provisions are not justiciable. And this Court should follow that majority, to the extent the Court even reaches this question.

## III. Plaintiffs' claims will unconstitutionally encroach on the President's Article II powers.

As to the constitutionality of this case, Plaintiffs cite the definition of "advisory committee" as outlined in 5 U.S.C. § 1001(2)(A) and conclude that "[f]or the purposes of a motion to dismiss, that should be the end of the discussion." Opp'n at 9. But Plaintiff do not explain why. Presumably, by citing the definition of advisory committee, Plaintiffs are trying to argue that FACA's ambit is broad. But that conclusion is incorrect under this Circuit's precedent. *See Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 452 (1989) (directing courts to interpret FACA narrowly to avoid constitutional problems); *Food & Water Watch*, 357 F. Supp. 3d at 10 (finding that courts "narrowly" interpret FACA's reach). And even if it were correct (which it is not), it would actually support, rather than undermine, Defendants' constitutionality argument.

If the Court were to apply FACA broadly to cover Mr. Musk, a senior advisor to the President, and to the President's advisory circle more generally, which is what Plaintiffs ask this

---

[4] As the court in *NAACP* noted, the majority approach in the circuits is that the fair balance and inappropriate influence requirements are justiciable. *See NAACP*, 496 F. Supp. 3d at 135 (citing decisions from the First, Fifth, and Tenth Circuits finding the requirements justiciable); *see also Ala.-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1106–07 (11th Cir. 1994) (conducting review under FACA's fair balance provision, though not expressly addressing a challenge to its reviewability).

Court to do, that would stretch FACA beyond its constitutional limits and run into Article II. *See* Mot. to Dismiss at 36–39. And if the Court were to allow Plaintiffs' claims to proceed to discovery to investigate the extent of the President's involvement, as Plaintiffs propose in their opposition, that also underscores the constitutional problem with Plaintiffs' case. Such discovery itself would improperly intrude on the President's constitutional right to receive confidential advice. *See U.S. Doge Serv. v. CREW*, No. 24-1246, 2025 WL 1602338, at *1 (S. Ct. June 6, 2025) ("[S]eparation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications.").

Again, however, the Court need not reach the constitutionality or justiciability questions because Plaintiffs have failed to plead facts necessary to establish the elements of a de facto advisory committee subject to FACA. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

## IV.    The rest of Plaintiffs' arguments in opposition fail.

Plaintiffs raise two additional arguments in opposition to the motion to dismiss. Neither addresses the central deficiency in the case—Plaintiffs' failure to plead the existence of an advisory committee subject to FACA. Nonetheless, Defendants address both arguments in turn.

First, Plaintiffs take issue with Defendants' assertion that "because Plaintiffs claim that the agency Defendants are subject to the APA, they necessarily acknowledge[d] the existence of an alternative remedy." Opp'n at 10. Plaintiffs at first seem to agree with this statement but then go on to say that if the Court "disagrees" that the APA applies to this case, then "it should find that Plaintiffs are entitled to mandamus relief." *Id.*

But no one disputes that the APA applies to FACA suits against agency defendants so long as a plaintiff sufficiently pleads that a group meets all the elements of an advisory committee and that the agency defendant has sufficient control over the advisory committee to ensure compliance with FACA.  *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 40 (D.D.C. 2002).  What Plaintiffs seem to be arguing is that they want not only an "adequate alternative remedy," but also a successful alternative remedy.  And that is where Plaintiffs go wrong.  Although the D.C. Circuit has not decided this specific question, other circuits have.  *See Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) ("The availability of a remedy under the APA technically precludes Mt. Emmons' alternative request for a writ of mandamus[.]"); *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (same).  In *Vaz*, the Ninth Circuit held that "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the court] may elect to analyze the APA claim only elect to analyze the APA claim only." 33 F.4th at 1135.  Notably, there, the *Vaz* court reviewed only the Plaintiff's APA claim and rejected it on the merits, without proceeding thereafter to consider whether mandamus relief might be available.  *Id.* at 1138–39.  This necessarily implies that the mere failure of a plaintiff's APA claim does not establish the absence of an adequate alternative remedy.  Instead, an adequate alternative remedy exists so long as a potential remedy is available for a properly pleaded cause of action.  Here, Plaintiffs may invoke the APA in a FACA claim against an agency defendant if they adequately allege jurisdiction and state a valid claim—neither of which they have done.

Second, Plaintiffs claim that they have established final agency action because "[t]he crux of the Government's argument again appears to be based on the fact that, because DOGE has been so clandestine about its inner workings, Plaintiffs should be penalized for not being able to pierce

that veil of secrecy." Opp'n at 10.[5] But the alleged "clandestine" nature of "DOGE" has no relevance to pleading final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (outlining the two-part test for establishing final agency action).

Plaintiffs next argue that they have established final agency action because the amended complaint "ably demonstrate[s]" that the agency defendants acted upon advice from "DOGE" because "Musk publicly touted his role in decisions made by those agencies." Opp'n at 10. But even if that were true, agency interaction with Mr. Musk does not establish that the agency took any final action in forming or utilizing an advisory committee subject to FACA. *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 40 (D.D.C. 2002) (holding that plaintiffs had sufficiently pleaded final agency action in a FACA suit because the complaint showed that the "agency defendants . . . and private individuals acted collectively to make the decisions to hold meetings that were not open to the public, to hold meetings for which minutes were not kept and were not made public, to hold meetings for which no notice was published in the Federal Register, to create draft reports and other records that were not made public, and to meet and work on policy recommendations without filing an advisory committee charter.").

## CONCLUSION

In sum, Plaintiffs' opposition brief is deficient and does not save their equally deficient amended complaint. Much of their filing is devoted to block quotes on justiciability, personal attacks on Defendants and their counsel, and unsupported and unexplained conclusions.

---

[5] Defendants never argued or implied that Plaintiffs should be penalized because "DOGE" is just too "clandestine" to pierce. *See generally* Mot. to Dismiss (no argument about "DOGE" being "so clandestine"). Rather, Defendants argued that Plaintiffs have not plausibly established in their amended complaint that some entity called "DOGE" operating separate and distinct from USDS exists or functions like an advisory committee. *See generally* Mot. to Dismiss.

By contrast, Defendants' main argument remains straightforward and unrefuted: Plaintiffs have failed to plead the existence of an advisory committee subject to FACA under this Circuit's standards.  For that reason, the Court should dismiss this case with prejudice.

DATED:  June 11, 2025                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         ELIZABETH J. SHAPIRO
                                         Deputy Director
                                         Federal Programs Branch

                                         BRADLEY P. HUMPHREYS
                                         Senior Trial Counsel

                                         /s/ Samuel S. Holt
                                         SAMUEL S. HOLT
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, D.C. 20005
                                         Telephone: (202) 674-9761
                                         Samuel.Holt2@usdoj.gov

                                         Counsel for Defendants

15