**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JERALD LENTINI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF GOVERNMENT EFFICIENCY, *et al.*,<br><br>Defendants. | Case No. 25-cv-164 (JMC)<br>Case No. 25-cv-166 (JMC) |

**MEMORANDUM OPINION**

This case concerns the so-called Department of Government Efficiency, or DOGE. Plaintiffs sued DOGE and several affiliated parties, claiming that DOGE is subject to the provisions of the Federal Advisory Committee Act (FACA). That law creates certain procedural requirements that "advisory committees"—as statutorily defined—must follow. Plaintiffs say that DOGE is not following those requirements. The Plaintiffs ultimately seek an order directing DOGE to adhere to its purported duties under FACA.

Defendants moved to dismiss. Because the Court agrees that Plaintiffs have not adequately pled that DOGE is an "advisory committee" under FACA, the Court will grant the motion.[1]

# I. BACKGROUND

## A. Statutory Background

This case concerns the application of the Federal Advisory Committee Act. 5 U.S.C. §§ 1001–1014. The Court provides some brief background on that statute.

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

Because the executive branch enforces a large range of diverse laws, it sometimes relies on "committees, boards, commissions, councils, and similar groups" to "advise officers and agencies" on recommended governance. 5 U.S.C. § 1002(a). In enacting FACA, Congress acknowledged that groups of this nature—which Congress termed "advisory committees"—can provide genuine benefits to the executive branch. *See id.* But Congress also determined that without oversight, there was risk that advisory committees would be unaccountable or would waste government resources. *See id.* § 1002(b); *see also Pub. Citizen v. DOJ*, 491 U.S. 440, 453, 459 (1989) (explaining FACA's "principal purpose"). FACA aimed to remedy that lack of oversight by setting strict procedural rules for advisory committees. *See Pub. Citizen*, 491 U.S. at 453. In particular, FACA requires that advisory committees (1) file charters, (2) keep detailed minutes of their meetings, (3) only meet in the presence of a designated federal officer or employee, and (4) make certain records available to the public. *See id.* at 446–47; *see also* 5 U.S.C. §§ 1008–1009.

FACA does not apply to any and every coalition of executive-branch advice-givers. Instead, Congress only extended the procedural requirements of FACA to groups that qualify as "advisory committees" under a statutory definition. That definition is as follows:

> The term "advisory committee" means a committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee") that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government and that is— (i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies.

5 U.S.C. § 1001(2)(A). Congress also carved out from that definition any committee that is comprised solely of officers or employees of the federal government, as well as any committee that is created by the National Academy of Sciences or National Academy of Public Administration. *Id.* § 1001(2)(B).

**B. Factual Background**

On a motion to dismiss, all well-pleaded factual allegations in the complaint are assumed to be true. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024). The Court briefly summarizes the relevant allegations as pled in Plaintiffs' first amended complaint. No. 25-cv-166, ECF 10.

Shortly after he was elected president, Defendant Donald Trump stated publicly that he intended to create a new "Department of Government Efficiency ('DOGE')" to "provide advice and guidance from outside of Government." No. 25-cv-166, ECF 10 ¶ 32. President Trump said that he would tap Defendant Elon Musk and former defendant Vivek Ramaswamy to lead this organization. *Id.*

In the weeks leading up to the inauguration, Musk and Ramaswamy made multiple public statements about their vision for DOGE. For instance, they claimed that DOGE would "work with legal experts" and "[use] advanced technology" to identify regulations that they would recommend be "review[ed]" and "resci[nded]" by President Trump. No. 25-cv-166, ECF 10 ¶ 37. They further claimed that they would "cut the Federal Government down to size," *id.* ¶ 35, in part by working to reduce employee headcounts at agencies, *id.* ¶ 38. To fulfill these ambitions and start "ramping up [DOGE] operations," Musk and Ramaswamy "brought on board" certain "venture capitalists affiliated with the tech industry." *Id.* ¶ 40. At least one of these venture capitalists publicly acknowledged DOGE's role as an "advisory commission." *Id.* ¶ 43.

Once President Trump was inaugurated, he issued an Executive Order which "establish[ed] and implement[ed] the President's 'Department of Government Efficiency.'" No. 25-cv-166, ECF 10 ¶ 83; *see also* Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025). That Executive Order took an already existing agency—the United States Digital Service—and renamed it the

United States DOGE Service (USDS). No. 25-cv-166, ECF 10 ¶ 84. The Executive Order gave USDS a "mandate" to engage in software modernization and related tasks. No. 25-cv-166, ECF 10 ¶ 85. The new USDS was relocated to the Executive Office of the President. *Id.*

Plaintiffs allege that the USDS (which is not a Defendant here) and DOGE (which is) are different organizations. No. 25-cv-166, ECF 10 ¶ 104. In particular, while the USDS is a DOGE-related organization created by executive order, Plaintiffs allege that "the group established by Musk, Ramaswamy, and Trump in November 2024" still "continues to operate outside of USDS." *Id.* That latter group is what Plaintiffs refer to as DOGE. *See id.* As evidence for the fact that DOGE and the USDS are not the same, Plaintiffs point to that fact that while (at the time of the complaint) the USDS did not have an administrator, *see id.* ¶¶ 95–96, Musk himself purported to be the "head" of DOGE, *id.* ¶¶ 94–95; *see also id.* ¶¶ 105, 107. And Plaintiffs also allege that "numerous individuals claiming to be affiliated with DOGE have entered numerous government agencies" and taken several actions that are inconsistent with the USDS mandate of software modernization. *See id.* ¶¶ 86–89, 106–07. Plaintiffs ultimately say that this more shadowy group of advisers—the actual DOGE, not the USDS—is failing to fulfill any of the statutory requirements for advisory committees that FACA creates. *Id.* ¶¶ 99–102.

Musk is the only individual who Plaintiffs identify as an active member of DOGE post-inauguration. *See* No. 25-cv-166, ECF 10 ¶¶ 83–98. *But see id.* ¶¶ 32, 40–41, 47 (identifying Ramaswamy, Marc Andreessen, William Joseph McGinley, and Vinay Hiremath as being involved with DOGE pre-inauguration). Plaintiffs also allege that they know "little" about DOGE's "structure or membership" because of the organization's "lack of transparency." *Id.* ¶ 49. And while Plaintiffs do make generalized allegations about the sort of people DOGE tends to hire,

*see id.* ¶¶ 50–52, 57–61, they make no allegations about the manner in which those people work together or offer advice to the executive branch.

### C. Procedural Background

Plaintiffs Jerald Lentini, Joshua Erlich, and National Security Counselors sued several Defendants who are allegedly related to DOGE.[2] Plaintiffs bring six causes of action, all of which turn on the applicability of FACA. The first four causes of action seek mandamus relief for failure to comply with FACA's procedural requirements. No. 25-cv-166, ECF 10 ¶¶ 103–46. The fifth cause of action alleges that DOGE's failure to comply with FACA violates the APA. *Id.* ¶¶ 147–56. And the sixth cause of action requests a declaratory judgment that Defendants have violated or are violating FACA. *Id.* ¶¶ 157–66.

Plaintiffs' case was consolidated with two other cases—Nos. 25-cv-164 and 25-cv-167—which also alleged that DOGE had violated or was violating FACA. *See* No. 25-cv-164, Min. Order, Feb. 18, 2025. The plaintiffs in those other cases voluntarily withdrew their claims. *See* No. 25-cv-164, ECF 21, ECF 35. The three *Lentini* plaintiffs are thus the only plaintiffs in this case with remaining claims. As relevant here, Defendants moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). No. 25-cv-164, ECF 33.

## II. LEGAL STANDARD

A 12(b)(6) motion seeks to dismiss the complaint because it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Those Defendants are the Department of Government Efficiency; the Office of Management and Budget; the Office of Personnel Management; the Executive Office of the President; Elon Musk; Russell Vought; Charles Ezell; and Donald Trump. *See* No. 25-cv-166, ECF 10. All individual Defendants are sued in their official capacity only. *Id.* ¶¶ 11–14.

(2009). A claim is facially plausible when the plaintiff pleads factual content that is more than "merely consistent with a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" to provide "grounds" of "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a 12(b)(6) motion, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true. *Id.*

When, as here, a complaint is predicated on violations of FACA, dismissal under Rule 12(b)(6) is appropriate if the complaint fails to plausibly allege that the subject organization qualifies as an "advisory committee" under the statute. *See, e.g.*, *Read v. Council of the Inspectors Gen. on Integrity and Efficiency*, No. 24-cv-1808, 2026 WL 2905364, at *5 (D.D.C. Sept. 28, 2026); *Am. Oversight v. Biden*, No. 20-cv-716, 2021 WL 4355576, at *7 (D.D.C. Sept. 24, 2021).

## III. ANALYSIS

The Court concludes that Plaintiffs have not plausibly pled that DOGE is an advisory committee subject to FACA. And because all of Plaintiffs' claims are predicated on FACA, dismissal is required.[3]

### A. Courts Construe the Bounds of FACA Narrowly.

An organization qualifies as an "advisory committee" under FACA if it is a "committee, board, commission, council, conference, panel, task force, or other similar group" that "obtain[s] advice or recommendations for the President or one or more agencies or officers of the Federal

[3] The Court emphasizes that it does not make any conclusive ruling that DOGE, as it exists or existed in the world, is not an "advisory committee" under FACA. Instead, the Court holds only that the Plaintiffs' complaint has failed to allege as much.

Government," and was "established or utilized" by the President or any agency. 5 U.S.C. § 1001(2). While that definition seems, at first blush, to be rather broad, courts have interpreted it narrowly.[4]

First, in *Public Citizen v. DOJ*, the Supreme Court held that while the word "utilized" is a "woolly verb" whose contours are seemingly broad and "undefined," Congress must not have intended that statutory term to be read "literal[ly]," because a literal reading would cause "every formal and informal consultation" between the executive and "a group rendering advice" to be an "advisory committee." 491 U.S. 440, 452–54 (1989). The Court concluded that such an unbounded reading would cause the statute to "catch far more groups and consulting arrangements than Congress could conceivably have intended," *id.* at 464, and could even conceivably raise constitutional issues, *id.* at 465–67. While the Court in *Public Citizen* did not go on to assign a more precise definition to "utilized," the D.C. Circuit, in *Food Chemical News v. Young*, concluded that the word "utilized" in FACA applies when a group is organized by a nongovernmental entity, but is still so "closely tied" to the executive "as to be amenable to strict management" by that branch. 900 F.2d 328, 333 (D.C. Cir. 1990); *see also Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994) (even if agency "exercise[d] significant influence" over group's deliberations, agency did not "control" group, and thus did not "utilize[]" group under FACA).

And second, the D.C. Circuit has glossed FACA to require that a group have certain characteristics before it qualifies as an "advisory committee" under the statute. In particular, FACA is only implicated when a group "has, in large measure, an organized structure, a fixed

---

[4] *See Stark v. U.S. Election Assistance Comm'n*, No. 21-cv-1864, 2026 WL 2546904, at *2 (D.D.C. Aug. 28, 2026) ("In short, courts construe FACA narrowly . . . ."); *Nat. Res. Def. Council v. EPA*, 806 F. Supp. 275, 277 (D.D.C. 1992) ("Recognizing the Pandora's Box that could erupt if FACA were construed broadly, the Supreme Court has adopted a restrictive interpretation of FACA[.]").

membership, and a specific purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993). To be an advisory committee, the group must also "render advice or recommendations[] *as a group*, and not as a collection of individuals." *Id.* at 913. The D.C. Circuit has recently referred to these different elements as "requirements" of a complaint at the motion-to-dismiss stage. *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021); *see also Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 181 (D.D.C. 2022) ("This Court reads *VoteVets* as requiring plaintiffs in FACA cases to show that the putative advisory committee has (1) an organized structure, (2) a fixed membership, and (3) a fixed purpose, and that (4) it offers advice as a group rather than a collection of individuals.").

Where a plaintiff fails to plead these elements in a complaint predicated on FACA, the complaint is subject to dismissal. *See, e.g.*, *Am. Oversight v. Biden*, No. 20-cv-716, 2021 WL 4355576, at *7 (D.D.C. Sept. 24, 2021).

**B. Plaintiffs' Amended Complaint Lacks Required Allegations.**

Plaintiffs' complaint lacks allegations sufficient to plausibly allege that DOGE, as Plaintiffs define it, is an advisory group under FACA. In particular:

(1) <u>Plaintiffs do not allege that DOGE is "utilized" by the executive branch</u>.

A group is only an advisory committee under FACA if it is (i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies. 5 U.S.C. § 1001(2). Plaintiffs make no allegation that DOGE was established by statute. *See generally* No. 25-cv-166, ECF 10. And notably, Plaintiffs also do not make any allegation that DOGE was "established" by the President or any executive agency. To the contrary, Plaintiffs allege that DOGE was "established by [Ramaswamy], . . . [Musk,] and President-Elect Donald Trump on 12 November 2024." *Id.* ¶ 7; *see also id.* (alleging that DOGE "is separate and distinct from the [USDS]"). None of those persons was President or was otherwise

in charge of an agency on that date. *See id.*; *see also* 5 U.S.C. § 1001(2) (stating that presidents can establish an advisory committee, but saying nothing about presidents-elect).

Thus, the only avenue for Plaintiffs' complaint to plead the existence of an advisory committee is to plead that the executive branch "utilizes" DOGE. And the complaint contains no facts which plausibly make that assertion. While the complaint alleges that President-*elect* Trump was involved in the creation of DOGE (such that he could conceivably "control" the organization in November 2024, *see Wash. Legal Found.*, 17 F.3d at 1451), the complaint says nothing about *current* President Trump's involvement with DOGE, *see generally* No. 25-cv-166, ECF 10 ¶¶ 83–98. The complaint also says nothing about any agencies' involvement with or control over DOGE, other than conclusory statements that the Office of Management and Budget, Office of Personnel Management, and Executive Office of the President "utilize[]" DOGE. *Id.* ¶¶ 7–10; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation."). It may be the case that DOGE is, in reality, so "closely tied" to the executive branch as to be "amenable" to strict management by that branch. *Food Chem. News v. Young*, 900 F.2d at 333. But Plaintiffs' complaint does not plead as much.

(2) <u>Plaintiffs do not allege that DOGE has an organized structure, fixed membership, or that it offers advice as a group.</u>

Plaintiffs also needed to plead that the version of DOGE they allege exists "has, in large measure, an organized structure, a fixed membership, and a specific purpose," and that it "render[s] advice or recommendations[] *as a group*, and not as a collection of individuals." *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 913–14. While Plaintiffs have plausibly alleged that DOGE has a "specific purpose," they have made no allegations related to the other three criteria at all, much less any plausible ones. *See* No. 25-cv-166, ECF 10; *accord id.* ¶ 49 ("Due to DOGE's lack

of transparency, little is publicly known about its structure or membership."). At most, Plaintiffs allege that Musk is or was in charge of DOGE shortly after the start of the second Trump Administration, and that certain other individuals may have been involved in helping organize the group in November 2024. *See id.* ¶¶ 32, 40–41, 47, 94–95. But no "fixed membership" is alleged, nor are any structural details provided. And while the complaint contains some details of actions DOGE members have allegedly taken, including the giving of "recommendations" to the executive branch, *see id.* ¶ 86, the complaint says nothing about whether these actions were taken as a "group." *Contra Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 913. In fact, where the complaint alleges that "recommendations" were given, Plaintiffs allege that those recommendations were made by "numerous *individuals* claiming to be affiliated with DOGE"—not by DOGE as a collective. No. 25-cv-166, ECF 10 ¶ 86 (emphasis added).

While the Court does not go so far as to suggest that, to get past a motion to dismiss, Plaintiffs should have come armed with a full roster of DOGE's staff, an organizational chart, or something of the like, Plaintiffs at least needed to offer more than they have here, which is next to nothing. *Cf. VoteVets*, 992 F.3d at 1104–05 (plaintiffs alleged existence of FACA advisory committee where they pleaded the identities of three individuals who were the "fixed members[]" of the committee, then alleged that these members "described themselves as a group or team," participated in "in-person meetings, emails, and phone calls," "jointly offer[ed] their recommendations" to an agency, and all worked towards a shared "specific purpose"); *Am. Oversight*, 2021 WL 4355576, at *8 (dismissing post-*VoteVets* case because "detailed allegations indicating collaboration and the provision of collective advice" were "conspicuously absent"). Even though the Court draws all plausible inferences in Plaintiffs' favor, Plaintiffs have given the Court almost nothing to draw from in the first instance.

Plaintiffs essentially concede this point, but argue that the Court "should decline to find that Plaintiffs have failed to state a cause of action because they were not allowed to take the discovery that they requested." No. 25-cv-164, ECF 39 at 8. That argument misstates the order of operations. "In order to proceed to discovery, a plaintiff must [first] state a claim to relief that is plausible on its face." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026); *see also Prince v. District of Columbia*, No. 22-7165, 2023 WL 6938135, at *2 (D.C. Cir. Oct. 19, 2023) ("A plaintiff who fails to plead a legally cognizable claim is not entitled to discovery . . . ."). Plaintiffs are simply "not entitled to discovery without first putting forth a factual basis for [their] claim[s], something [they] ha[ve] not done." *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 71 (D.D.C. 2011).

* * *

Plaintiffs' complaint lacks the allegations necessary to plead that DOGE, as specifically defined by Plaintiffs, is an advisory committee under FACA. The Court does not opine on whether the USDS or any other DOGE-related entity could or could not be pleaded as an "advisory committee" under a different complaint—the Court only concludes that the allegations in this case do not suffice. Defendants' motion to dismiss, ECF 33, is **GRANTED.** A separate order accompanies this memorandum opinion.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: October 31, 2026